# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| In re<br><br>7677 EAST BERRY AVENUE ASSOCIATES, L.P.,<br><br>EIN: 20-2138800<br><br>Debtor. | Case No. 09-28000<br><br>Chapter 11 |

## MOTION FOR APPROVAL OF POST-PETITION FINANCING

7677 East Berry Avenue Associates, L.P. (the "Debtor") moves this Court for an order pursuant to sections 364(c) and (d) of Title 11 of the United States Code (the "Bankruptcy Code"), Fed. R. Bankr. Pro. 4001(c), and L.B.R. 202, authorizing the Debtor to obtain post-petition financing in the form of a term loan (the "DIP Facility") of up to $15,000,000 (the "Post-Petition Financing") to the Debtor from Carmel Landmark, LLC as the debtor-in-possession lender (the "Lender").  In support of the Motion, the Debtor states as follows:

### Introduction

1.     As set forth in greater detail below, the Lender has agreed to fund the Debtor's post-petition operations with a loan of up to $15,000,000 secured by a first priority deed of trust on certain of the Debtor's property, pursuant to a proposed Debtor-in-Possession Loan Agreement (the "Agreement," a copy of which is attached as Exhibit 1), and the attached form of order (the "Order," a draft copy of which is attached as Exhibit 2).[1]  The proposed loan provides necessary and sufficient funding for the Debtor to operate in bankruptcy, make important expenditures, preserve its assets, and formulate and implement a reorganization plan or other transaction that maximizes value for the benefit of all stakeholders.

### The Debtor's Operations and Need for Post-Petition Financing

2.     The Debtor is a Delaware limited partnership that develops and operates a luxury residential, retail, and entertainment development in Greenwood Village, Colorado (the "Project").  The Debtor has assets with a total value of approximately $160 million, including two residential condominium towers, The Landmark and The Meridian, and retail and entertainment space called The Village Shops, which contain approximately 185,000 square feet.  Of the 276 total residences at the Project, 163 have been sold or are under contract and range in size from 800 to 2,500 square feet.  The Debtor broke ground on the Project in 2004 and opened The Landmark in 2006 and The Meridian in 2007.

---

[1] The Debtor and the Lender have not completed all exhibits and schedules to the Agreement.  Such documents will be provided upon request when completed.

10732\26\1306475.4

3.  EDC Denver I, LLC (the "General Partner") is the general partner of the Debtor. Everest Holdings, LLC ("Everest") is the sole member of the General Partner. On August 28, 2009, Everest and the General Partner each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, Case Nos. 09-27906 and 09-27907, respectively. The three debtors have filed motions to have their Chapter 11 cases jointly administered under Everest's case number.

4.  The Debtor's goal is to market and sell its unsold condominium residences and lease its remaining retail space at the best possible prices based on current market conditions, enabling it to pay off its debts and to achieve profitability. To accomplish this goal, however, the Debtor must be able to continue operating in Chapter 11 for some time and that, in turn, requires post-petition financing.

5.  Absent the monies available under the Agreement, the Debtor's projected revenues will be insufficient to conduct ordinary business operations, complete its real estate development, and preserve the value of the Debtor's estate. The Debtor is unable to secure alternate sources of post-petition borrowing. The Debtor has not been able to obtain sufficient credit on an unsecured or junior lien basis.

**Summary of Material Provisions**

6.  The Agreement is the result of arms' length negotiations between the Debtor and the Lender. The following summarizes the terms of the Agreement.

- Amount. $15,000,000 maximum principal. (Agreement at § 2.1).

- Use of funds. Proceeds from the DIP Facility will be used to provide working capital for the Debtor and to pay costs of Chapter 11 administration. (Agreement at § 2.2).

- Liens. Perfected first-priority lien on all previously unencumbered assets of the Debtor pursuant to Bankruptcy Code § 364(c)(2) and perfected first priority lien on all assets of the Debtor subject to a lien on the petition date (other than the Carve-Out, as defined below), except a certain lien by FirsTier Bank that encumbers that certain Sales Tax Rebate Agreement dated November 22, 2005 between the City of Greenwood Village and the Debtor, pursuant to Bankruptcy Code § 364(d). Pursuant to the Court's order, the liens granted in favor of the Lender will be perfected without the recordation of any UCC financing statements, notices of lien, deeds of trust, or other instruments of mortgage or assignment. (Agreement at § 2.7-2.8; Order at ¶¶ 3 and 6).

- Priority. Super-priority status pursuant to Bankruptcy Code § 364(c)(1), having priority over all administrative expense claims, subject only to the Carve-Out. (Agreement at §§ 2.7-2.8 and 2.11; Order at ¶¶ 3 and 6).

- Interest. The DIP Facility will accrue interest at a fixed annual rate of 12%. During an event of default interest will accrue at 18%. (Agreement at § 2.4; Order at ¶¶ 10 and 13).

▪ <u>Fees</u>.  A closing fee of $300,000 (2% of the total DIP Facility) will be payable in full on the closing date from the proceeds of the first advance under the DIP Facility. (Agreement at § 2.1).

▪ <u>Limitation of Rights Under Bankruptcy Code § 506(c)</u>.  Except for the Carve-Out (as defined below), no costs or expenses of administration of the Debtor's Chapter 11 case or any future proceeding or case which may result therefrom (including in any superseding Chapter 7 case), including, without limitation, professional fees allowed and payable under Bankruptcy Code §§ 330 and 331 that have been or might be incurred in these cases, shall be charged against the assets encumbered pursuant to the Loan Documents, pursuant to Bankruptcy Code §§ 105, 506(c), 552(b) or otherwise, without the prior written consent of the Lender.  (Agreement at § 8.4; Order at ¶ 5).

▪ <u>Representations/Covenants</u>.  Usual and customary.  (Agreement at §§ 3, 5-6).

▪ <u>Term/Maturity</u>.  The earlier of (a) January 31, 2011 (unless extended pursuant to section 2.10 of the Agreement), (b) the date of indefeasible prepayment in full by the Debtor, (c) thirty days following the petition date if a final order approving the DIP Facility has not been entered by the Court, (d) the date of substantial consummation of a reorganization plan confirmed by the Court, (e) date of a sale of the Debtor's assets for aggregate consideration greater than or equal to $40,000,000, (f) conversion to Chapter 7 or appointment of a Chapter 11 trustee, (g) dismissal of the Debtor's bankruptcy case, (h) the occurrence of a material adverse effect, (i) any person is granted relief from the automatic stay to pursue or foreclose on any of the collateral having a value of $100,000 or more, (j) the Debtor contests the validity, priority or enforceability of the Lender's liens or any provision of the loan documents, (k) the Debtor refuses to defend when any person contests the validity, priority or enforceability of the Lender's liens or any provision of the loan documents, (l) the Lender's acceleration of the DIP Facility upon the occurrence of an event of default, or (m) the Lender's break-up fee and expense reimbursement has not been approved by an order of this Court within seven days following the petition date.  (Agreement at §§ 1.1 and 2.3).

▪ <u>Events of Default</u>.  Ordinary and customary events of default for a DIP loan of this type.  (Agreement at § 7.1).

▪ <u>Conditions Precedent</u>.  Conditions include (a) execution and delivery to the Lender of the loan documents, (b) entry by the Court of a final order, (c) no material adverse change, (d) approval of the Debtor's budget, (e) provision of title insurance to Lender, (f) approval by this Court of the break-up fee within seven days of the petition date, and (g) an order of this Court authorizing use of the cash collateral.  (Agreement at § 4.1).

▪ <u>Mandatory Escrow</u>.  The Debtor will be required to fund the net proceeds of certain liquidity events into an escrow account established as a separate deposit account of the Debtor, with respect to which the Debtor and the Lender will have joint signature authority and no funds will be disbursed therefrom without both signatures.  The liquidity events include (a) insurance proceeds applicable to any of the collateral, (b) net proceeds after deduction of transaction costs from asset sales, and (c) net proceeds from any debt

or equity issuance. Funds from the mandatory escrow will be used for a working capital reserve up to $5,000,000, a loan repayment reserve up to 110% of the outstanding loans from the Lender, and the excess funds will be released to the Debtor. (Agreement at §§ 2.15-2.16).

**The Pre-Petition Secured Debt**

7. Hypo Real Estate Capital Corporation ("Hypo") has a first-priority secured debt (the "Hypo Debt") with a currently outstanding principal amount of approximately $98,000,000, secured by a deed of trust and an assignment of rents on the Debtor's property.

8. Beck Development, Goldsmith Gulch Sanitation District, Milender White Construction, Overhead Door Company of Denver, Project One Integrated Services, Sedita Manufacturing, Bighorn Door & Hardward, OLC C&M LLC, The Wine Loft, Legacy Mechanical and Ken Caryl Glass (the "Lien Creditors" and together with Hypo, the "Secured Creditors") have filed liens against the Debtor's property. The aggregate amount of the Lien Creditors' claims totals approximately $3,000,000 (together with the Hypo debt, the "Pre-Petition Secured Debt").

**The Post-Petition Financing Meets the Requirements of § 364(c) and (d)**

9. The Debtor proposes to grant a § 364(c) superpriority claim to secure the DIP Facility. This is a standard DIP Facility protection and necessary to secure the loan. Pursuant to § 364(c)(2), the Debtor also proposes a lien in the unencumbered assets of the estate. Such a lien is necessary to secure the DIP Facility, and reasonable in this case.

10. Further, the Debtor seeks to grant a lien on its assets that is senior to the liens of the Secured Creditors. Bankruptcy Code § 364(d) provides authority for a debtor to obtain post-petition credit secured by a senior or priming lien:

> (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In any hearing on this subsection, the trustee has the burden of proof on the issue of adequate protection.

11. The Debtor has been unable to obtain other credit under Bankruptcy Code § 364(b) or (c). Bankruptcy Code § 364(d)(1)(A) does not impose upon a debtor-in-possession the onerous duty to seek credit from every possible lender before concluding that such credit is unavailable. Bray v. Shenandoah Fed. Sav. and Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (7th Cir. 1986); see In re Stanley Hotel, Inc., 15 B.R. 660, 663 (D. Colo. 1981) (two

lenders refused to grant unsecured loans). Instead, the debtor need only make a good faith effort to obtain less burdensome credit. In re Snowshoe Co., 789 F.2d at 1088.

12. The Debtor's decision to obtain the Post-Petition Financing represents an exercise of its sound business judgment in the continued operation of its business and the beginning of the process to consummate a reorganization plan. Like most business decisions, the Debtor's decision to enter into a post-petition credit agreement involves tradeoffs, but the proposed loan is the mechanism that is most likely to allow the Debtor to operate efficiently in bankruptcy, increase the value of its assets, and reorganize. See In re Simasko Production Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985) (debtor used its sound business judgment in obtaining secured financing pursuant to § 364(d)).

13. The Debtor's attempts to obtain credit pursuant to Bankruptcy Code § 364(c) or otherwise proved futile. The Debtor was unable to find unsecured credit sufficient to fund its operations. The Lender has agreed to fund the Debtor only if it is given the added protections and benefits provided by Bankruptcy Code § 364(d).

### The Secured Creditors Are Adequately Protected

14. The Secured Creditors are adequately protected because of a significant equity cushion that will be preserved as the Debtor uses the additional capital provided by the Lender. The loan will fund capital expenditures, interim operations, and related expenditures needed to improve the value of the Project which constitutes the collateral securing the Pre-Petition Secured Debt. As a result, the value of the collateral will be enhanced by the proposed lending.

15. Section 364(d) provides that a pre-petition secured creditor's lien may be subordinated to a post-petition lender so long as the creditor "receives the value for which the creditor bargained prebankruptcy." MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1397 (10th Cir. 1987). "Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value and is made on a case-by-case basis." In re Gunnison Ctr. Apts., LP, 320 B.R. 391, 396 (Bankr. D. Colo. 2005).

16. The Tenth Circuit has provided clear and powerful direction to bankruptcy courts applying the adequate protection standard, especially in the early stages of a case:

> Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the **purpose of enhancing the prospects of reorganization**. This quest is the ultimate goal of Chapter 11. Hence, **the Debtors' efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end.** Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.
>
> The first effort of the court must be to insure the value of the collateral will be preserved. Yet, prior to confirmation of a plan of reorganization, the test of that protection is not by

the same measurements applied to the treatment of a secured creditor in a proposed plan. **In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard.** In doing so, however, care must be exercised to insure that the vested property rights of the secured creditor and the values and risks bargained for by that creditor prior to bankruptcy are not detrimentally affected.

In re O'Connor, 808 F.2d at 1397-98 (emphasis added) (citations omitted). The flexible adequate protection standard is no different in the context of § 364(d) financing. See The Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 555-56 (3d Cir. 1994) (citing In re O'Connor).

17.  This flexible standard is manifested in the fact that courts have held that, so long as the valuation is not based upon an unreasonably risky venture, a pre-petition lender is adequately protected if it is expected that the value of its position will remain constant or increase as a result of the § 364(d) financing. See, e.g., Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.), 193 B.R. 713, 716-18 (Bankr. D. Del. 1996); In re 495 Central Park Ave. Corp., 136 B.R. 626, 631-32 (Bankr. S.D.N.Y. 1992); In re Sky Valley, Inc., 100 B.R. 107, 115-16 (Bankr. N.D. Ga. 1988). Here, the proposed lending is necessary to protect and preserve the value of the collateral.

**Carve-Outs**

18.  The Lender has agreed that its liens, security interests and super-priority administrative expense claims will be subject to and subordinate only to (a) amounts payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Court (collectively, the "UST/Clerk Fees"), and (b) allowed, unpaid fees and expenses of attorneys, accountants, and other professionals retained in these cases by the Debtor or by any statutory committee of creditors appointed in this case (the "Professionals") pursuant to Bankruptcy Code §§ 327, 328, and 1103; provided, however, that the amount entitled to such priority will not exceed $300,000 outstanding in the aggregate at any time (plus any retainers held by such professionals at the time) (together with the UST/Clerk Fees, the "Carve-Out"). (Order at ¶ 6).

19.  Additionally, the Carve-Out will not include, apply to, or be available for any fees or expenses incurred by any party, including the Debtor, in connection with (i) a request for authorization to obtain additional post-petition financing or other financial accommodations pursuant to Bankruptcy Code § 364(c) or (d) that does not repay in full in cash the DIP Term Loan or (ii) any act which has the effect of adversely modifying or compromising the rights and remedies of the Lender as set forth in the Loan Documents, or which results in the occurrence of an Event of Default under the Loan Documents. The Carve-Out will be free and clear of all liens, claims and encumbrances granted pursuant to the Order and will be subject only to the allowed claims of the Professionals for such fees and expenses as may be awarded by the Court under Bankruptcy Code §§ 327 or 328. (Order at ¶ 6).

**WHEREFORE**, the Debtor requests that the Court enter an Order approving the proposed lending as outlined in this Motion and granting such other relief as is just and proper.

Dated this 30th day of August, 2009.

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

/s Daniel J. Garfield
Michael J. Pankow, #21212
Daniel J. Garfield, #26054
410 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
mpankow@bhfs.com
dgarfield@bhfs.com

*Proposed Attorneys for the Debtor*

# CERTIFICATE OF MAILING

      I hereby certify that on this 30th day of August, 2009, a true and correct copy of the **DEBTOR'S MOTION FOR APPROVAL OF POST-PETITION FINANCING** was sent via U.S. mail, postage prepaid, and properly addressed to the following:

7677 East Berry Avenue Associates, LP
585 S. FM 1138
Nevada, TX  75173

7677 East Berry Avenue Associates, LP
5500 Greenwood Plaza Blvd., Suite 230
Greenwood Village, CO 80111

EDC Denver I, LLC
585 S. FM 1138
Nevada, TX  75173

EDC Denver I, LLC
5500 Greenwood Plaza Blvd., Suite 230
Greenwood Village, CO 80111

Everest Holdings, LLC
585 S. FM 1138
Nevada, TX  75173

Everest Holdings, LLC
5500 Greenwood Plaza Blvd., Suite 230
Greenwood Village, CO 80111

Office of the U.S. Trustee
999 – 18th Street, Suite 1551
Denver, CO  80202

Cadwalader, Wickersham & Taft, LLP
Attention:  Steven M. Herman, Esq.
One World Financial Center
New York, NY 10281-0006

Hunton & Williams LLP
Attention: Howard Schreiber, Esq.
1445 Ross Avenue
Dallas, TX  75202

Highland Capital Real Estate Fund, LP
c/o Strand Advisors, Inc.
Attention: Davis Deadman
13455 Noel Road, Suite 2220
Dallas, TX  75240

Locke Lord Bissell & Liddell LLP
Attention: Jeffrey D. Wallace
2200 Ross Avenue, Suite 2200
Dallas, TX  75201

Craig Christensen
Lindquist & Vennum, PLLP
600 – 17th Street, Suite 1800 South
Denver, CO  80202

Carmel Landmark, LLC
c/o:  Ron Zeff
1000 Sansome Street, Suite 180
San Francisco, CA  94111

Gallegos Masonry, Inc.
P. O. Box 821
Vail, CO  81658

Beck Development, LLC
100 Technology Drive, #315
Broomfield, CO  80021

Beck Residential, LLC
5553 Greenwood Plaza Blvd.,
Greenwood Village, CO  80111

Rogers & Sons, Inc.
4775 Fox Street
Denver, CO  80216

Hydro-Dynamic Services, LLC
2207 Lake Avenue
East Lake, CO  80614

BT Construction Inc.
9885 Emporia Street
Henderson, CO  80640

Milender White Construction Co.
13050 W. 43rd Drive
Golden, CO  80403

Bighorn Door & Hardware, LLC
5849 Tennyson Street
Arvada, CO  80003-6902

Overhead Door Company
3291 Peoria Street
Aurora, CO  80010

Project One Integrated Services, LLC
9785 Maroon Circle, Suite 380
Englewood, CO  80112

Legacy Mechanical, Inc.
5161 Ward Road
Wheat Ridge, CO  80033

Hoss Electric Corp.
5130 Parfet Street
Wheat Ridge, CO  80033

Integrated Builders
Attn: Karl Hirschey
302 N. Market Street, Suite 305
Dallas, TX  75202

Bohannan Houston, Inc.
Meridian One
9785 Maroon Circle, Suite 140
Englewood, CO  80112

Blue Architects, PC
2256 Larimer Street
Denver, CO  80205

Davis Partnership, PC
Brit Probst
2301 Blake Street, Suite 100
Denver, CO  80205

Powder Networks, LLC
d/b/a Soltice Multimedia
4601 Quebec Street, Unit C2
Denver, CO  80216

D.H. Ruggles & Associates, PC
3200 Cherry Creek South Drive, Suite 410
Denver, CO  80209-5417

Sedita Manufacturing
Peter J. Piccone
6333 East 56th Avenue
Commerce City, CO  80022
Fax: 303-288-9598

Superior Roofing
14700 E. 39th Avenue
Denver, CO  80011

OLC C&M LLC
7841 S. Wheeling Court
Englewood, CO  80112

Ken Caryl Glass Inc.
12450 Mead Way
Littleton, CO  80125

Code Fire LLC
4896 Van Gordon Street
Wheat Ridge, CO  80033

Armor Paving, LLC
P. O. Box 1190
Commerce City, CO  80022

Ceco Concrete Construction, LLC
7808 Cherry Creek Drive, South, Ste 211
Denver, CO  80231

Ascent Group, Inc.
4940 Pearl East Circle, Suite 202
Boulder, CO  80301


/s Dean C. Stalnaker