## DEED OF TRUST AND SECURITY AGREEMENT

**THIS DEED OF TRUST AND SECURITY AGREEMENT** (this "**Security Instrument**") is made as of this _____ of September, 2009, by **7677 EAST BERRY AVENUE ASSOCIATES, L.P.**, a Delaware limited partnership, having its principal place of business at 7677 East Berry Avenue, Greenwood Village, Colorado 80111, as trustor ("**Borrower**"), to **THE PUBLIC TRUSTEE OF ARAPAHOE COUNTY**, having an address at 2329 West Main Street, Littleton, Colorado 80120, as trustee ("**Trustee**") for the benefit of **CARMEL LANDMARK, LLC** ("**CLLLC**"), a Colorado limited liability company, having its principal address at 1000 Sansome Street, Suite 180, San Francisco, California 94111 ("**Lender**"), as beneficiary ("**Beneficiary**").

### WITNESSETH:

WHEREAS, this Security Instrument is given to secure a loan (the "**Loan**") in the principal sum of Fifteen Million Dollars ($15,000,000.00) or so much thereof as may be advanced pursuant to that certain Debtor-in-Possession Loan Agreement, dated _____ _____, by and among Borrower and the Lender (as the same may be amended, restated, extended, replaced, supplemented, consolidated or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by that certain Promissory Note, dated the date hereof, made by Borrower to the Lender (such Note or Notes, together with all extensions, renewals, replacements, restatements, consolidations or modifications thereof are collectively referred to as the "**Note**");

WHEREAS, Borrower desires to secure the payment of all sums due and owing pursuant to the Note (the "**Debt**") and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents; and

WHEREAS, this Security Instrument is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Security Instrument (the Loan Agreement, the Note, this Security Instrument, that certain Assignment of Leases and Rents of even date herewith made by Borrower in favor of Beneficiary (the "**Assignment of Leases**") and all other documents evidencing or securing the Debt or delivered in connection with the making of the Loan are hereinafter referred to collectively as the "**Loan Documents**").

NOW THEREFORE, in consideration of the making of the Loan by the Lenders, the covenants, agreements, representations and warranties set forth in this Security Instrument, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Borrower, Borrower hereby represents, warrants, covenants and agrees as follows:

1

# ARTICLE 1
# GRANTS OF SECURITY

**Section 1.1** **Property Conveyed**. Borrower does hereby irrevocably grant, bargain, sell, pledge, assign, warrant, transfer and convey to Trustee and its successors and assigns, in trust, with Power of Sale for the benefit of Beneficiary as beneficiary in trust, the following property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "**Property**"):

(a)     Land. The real property described in Exhibit A attached hereto and made a part hereof (the "**Land**");

(b)     Additional Land.  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or deed of trust or otherwise be expressly made subject to the lien of this Security Instrument;

(c)     Improvements.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

(d)     Easements.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, at law, in equity or otherwise of Borrower of in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)     Appurtenances.  All of Borrower's right and interest in and to (i) all streets, avenues, roads, alleys, passages, places, sidewalks, strips and gores of land and ways, existing or proposed, public or private, adjacent to the Land, and all reversionary rights with respect to the vacation of said streets, avenues, roads, alleys, passages, places, sidewalks and ways in the land lying thereunder; (ii) all air, light lateral support, development, drainage, oil, gas, and mineral rights, options to purchase or lease, waters, water course and riparian rights now or hereafter pertaining to or used in connection with the Land and! or the Improvements; (iii) all and singular, the tenements, hereditaments, rights of way, easements, appendages and appurtenances and property now or hereafter belonging or in any way appertaining to the Land and/or the Improvements; and (iv) all estate, right, title, claim or demand whatsoever, either at law or in equity, in possession or expectancy, of, in and to the Land and/or the Improvements (collectively, the "**Appurtenances**");

Doc# 3060428\2

(f)     Equipment.  All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code, now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**"). Notwithstanding the foregoing, "Equipment" shall not include any property belonging to Tenants under Leases except to the extent that Borrower shall have any right or interest therein;

(g)     Fixtures.  All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**"). Notwithstanding the foregoing, "Fixtures" shall not include any property which Tenants are entitled to remove pursuant to Leases except to the extent that Borrower shall have any right or interest therein;

(h)     Personal Property.  All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever (as defined in and subject to the provisions of the Uniform Commercial Code), other than Fixtures, which are now or hereafter owned by Borrower and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

3

(i)   Leases and Rents.  All "leases" and "lease provisions" (as defined in Exhibit B) and other agreements affecting the use, enjoyment or occupancy of the Land and the Improvements heretofore or hereafter entered into, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. § 101 et seq., as the same may be amended from time to time (the "**Bankruptcy Code**") (collectively, the "**Leases**") and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all "rents" (as defined in Exhibit B), additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(j)   Condemnation Awards.  All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(k)   Insurance.  All of Borrower's right, title and interest in and to all unearned premiums paid under insurance policies now or hereafter obtained by Borrower to the extent the same insure the Property and any other insurance policies is required to be maintained pursuant to Section 5.3 of the Loan Agreement to the extent the same insure the Property, including, without limitation, liability insurance policies and Borrower's interest in and to all proceeds of the conversion and the interest payable thereon, voluntary or involuntary, of the Property, or any part thereof, into cash or liquidated claims including, without limitation, proceeds of casualty insurance, title insurance or any other insurance maintained on or with respect to the Property (other than liability insurance) and judgments, or settlements made in lieu thereof;

(l)   Tax Certiorari.  All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(m)   Rights.  The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding which Beneficiary, in its discretion, decides should be brought to protect its interest in the Property;

(n)   Agreements.  All agreements including, without limitation, the Interest Rate Protection Agreement, that certain Sales Tax Rebate Agreement dated November 22, 2005 between The city of Greenwood Village, Colorado, a Colorado home rule municipal corporation (the "**City of Greenwood**") and Borrower, that certain Development Improvement Agreement Relating to The Landmark dated as of November 22, 2005 between the City of Greenwood and Borrower, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into by Borrower or its predecessors in interest, and all rights therein and thereto now owned or hereafter acquired, respecting or pertaining to the

4

use, occupation, construction, management, or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any Event of Default hereunder, to receive and collect any sums payable to Borrower thereunder;

(o)     Trademarks.  All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(p)     Accounts.  Subject to the terms of the Loan Agreement, the Accounts including the Escrow Account (as defined in the Loan Agreement) and any funds in such Accounts from time to time (it being understood that at such time as Borrower shall withdraw any amounts from any Accounts in accordance with the provisions of the Loan Agreement, the same shall cease to constitute part of the Property);

(q)     Proceeds.  All proceeds of any of the foregoing, including, without limitation, proceeds of insurance and condemnation awards, whether cash, liquidation or other claims or otherwise;

(r)     Interest Rate Protection Agreement.  All of Borrower's right, title and interest in, to and under any ISDA Master Agreement and the Confirmation thereof by and between Borrower and the related counterparty (collectively, the "**Agreement**"), and all of Borrower's right, title and interest in, to and under all other documents executed and/or delivered in connection with and/or secured by the Agreement, including, without limitation, all of Borrower's right, title and interest in any collateral, demands, causes of action, bank accounts, other accounts, investment property, general intangibles and supporting obligations, and any other collateral or documents arising out of and/or executed and/or delivered with respect to the Agreement, all rights and benefits of Borrower related to the Agreement, and such claims and choses in action related to the Agreement and such documents, and all of Borrower's rights, title and interests therein and thereto; and

(s)     Other Rights.  Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (r) above.

AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Security Instrument be deemed conclusively to be real estate and conveyed hereby.

**Section 1.2**     **Assignment of Rents**. Borrower hereby absolutely and unconditionally assigns to Beneficiary all of Borrower's right, title and interest in and to all current and future

Doc# 3060428\2

Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only, subject to the terms of the Assignment of Leases. Beneficiary, however, grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

**Section 1.3    Security Agreement**.  This Security Instrument is both a real property deed of trust and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property. By executing and delivering this Security Instrument, Borrower hereby grants to Beneficiary, as security for the Obligations (defined below), a security interest in the Fixtures, the Equipment, the Personal Property and other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (such portion of the Property so subject to the Uniform Commercial Code being called the "**Collateral**"). If an Event of Default shall occur and be continuing, Beneficiary, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Beneficiary may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Beneficiary after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Beneficiary at a convenient place (at the Land if tangible property) reasonably acceptable to Beneficiary. Borrower shall pay to Beneficiary on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Beneficiary and any Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Beneficiary with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) business days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Beneficiary to the payment of the Debt in such order, priority and proportions as Beneficiary in its discretion shall deem proper.

**Section 1.4    Fixture Filing**.  Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, described or referred to in this Security Instrument, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of the Uniform Commercial Code upon such of the Property that is or may become fixtures.

**Section 1.5    Pledges of Monies Held**.  Borrower hereby pledges to Beneficiary any and all monies now or hereafter held by Beneficiary or on behalf of Beneficiary in connection with the Loan, including, without limitation, any sums deposited in the Accounts (as defined in the Loan Agreement) and Net Proceeds, as additional security for the Obligations until expended or applied as provided in the Loan Documents.

Doc# 3060428\2

## CONDITIONS TO GRANT

**TO HAVE AND TO HOLD** the above granted and described Property unto and to the use and benefit of Trustee and its successors and assigns, forever;

**IN TRUST, WITH THE POWER OF SALE**, to secure payment to Beneficiary of the Obligations at the time and in the manner provided for its payment in the Note and in this Security Instrument.

**PROVIDED, HOWEVER**, these presents are upon the express condition that, if Borrower shall well and truly pay to Beneficiary all amounts due pursuant to the Note at the time and in the manner provided in the Note, the Loan Agreement and this Security Instrument, shall well and truly perform the Other Obligations as set forth in this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void and be released to Borrower; <u>provided</u>, <u>however</u>, that partial releases of the Property shall be delivered in accordance with Section 2.14 of the Loan Agreement; <u>provided</u>, <u>however</u>, that Borrower's obligation to indemnify, defend and hold harmless the Indemnified Parties pursuant to the provisions hereof shall survive any such payment or release.

## ARTICLE 2
## WARRANTY

**Section 2.1** **Title**. Borrower represents and warrants that it owns good, indefeasible and insurable fee simple title to the Property, as specified in the title insurance policy insuring the lien of this Security Instrument, subject only to the Permitted Encumbrances. This Security Instrument, upon its due execution and proper recordation, is and will remain a valid and enforceable (and, with respect to all personalty in which a security interest can be perfected by the filing of UCC financing statements, upon proper recordation and the filing of a financing statement) perfected first Lien on and security interest in Borrower's right, title and interest in and to the Property, subject to the Permitted Encumbrances.

**Section 2.2** **All Property**. The Property constitutes all of the real property, personal property, equipment and fixtures currently (i) owned or leased by Borrower or (ii) used in the operation of the business located on the Property, other than items owned by Manager or any Tenants.

**Section 2.3** **Enforceability of Security Instrument**. This Security Instrument is the legal, valid and binding obligation of Borrower, enforceable against Borrower in accordance with its terms.

## ARTICLE 3
## DEBT AND OBLIGATIONS SECURED

**Section 3.1** **Debt**. This Security Instrument and the grants, assignments and transfers made in Article 1 are given for the purpose of securing the Debt.

**Section 3.2     Other Obligations**.  This Security Instrument and the grants, assignments and transfers made in Article 1 are also given for the purpose of securing the following (the "**Other Obligations**"):

        (a)      the performance of all other obligations of Borrower contained herein;

        (b)      The performance of each obligation of Borrower contained in the Loan Agreement and any other Loan Document; and

        (c)      the performance of each obligation of Borrower contained in any renewal, extension, amendment, restatement, modification, consolidation, supplement, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

**Section 3.3     Debt and Other Obligations**.  Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "**Obligations**."

## ARTICLE 4
## BORROWER COVENANTS

Borrower covenants and agrees that:

**Section 4.1     Payment of Debt**.  Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Instrument.

**Section 4.2     Incorporation by Reference**.  All the covenants, conditions and agreements contained in (a) the Loan Agreement , (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

**Section 4.3     Insurance**.  Borrower shall obtain and maintain, in full force and effect at all times, insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

**Section 4.4     Maintenance of Property**.  Borrower shall cause the Property to be maintained in a good and safe condition and repair. Subject to the terms of the Loan Agreement, the Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Beneficiary. Subject to the terms of the Loan Agreement, Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land, subject to Beneficiary's release of insurance proceeds and any undisbursed Loan proceeds.

**Section 4.5     Waste**.  Borrower shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of

fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Security Instrument. Borrower will not, without the prior written consent of Beneficiary, permit any drilling or exploration for or extraction, removal, or production of any minerals, of which Borrower has any right, title or interest, from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

>    **Section 4.6**    **Payment for Labor and Materials**.  Borrower will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials incurred in connection with the Property and, subject to Section 6.2 of the Loan Agreement, never permit to exist beyond the due date thereof in respect of the Property or any part thereof any Lien or security interest, even though inferior to the Liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional Lien or security interest other than the Liens or security interests hereof.

>    **Section 4.7**    **Performance of Other Agreements**.  Borrower shall observe and perform each and every term, covenant and agreement to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

### ARTICLE 5
### OBLIGATIONS AND RELIANCES

>    **Section 5.1**    **Relationship of Borrower, Beneficiary and each Lender**.  The relationship between Borrower, and Beneficiary and Lender is solely that of debtor and creditor, and Beneficiary and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Loan Agreement, the Note, this Security Instrument and the other Loan Documents shall be construed so as to deem the relationship between Borrower and Beneficiary and Lender to be other than that of debtor and creditor.

>    **Section 5.2**    **No Reliance on Beneficiary or any Lender**.  Borrower is not relying on Beneficiary's or Lender's expertise, business acumen or advice in connection with the Property.

>    **Section 5.3**    **No Beneficiary or Lender Obligations**.  (a)  Notwithstanding the provisions of Sections 1.1(i) and (n) or Section 1.2, none of Beneficiary or Lender is undertaking the performance of (i) any obligations under the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

>        (b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Beneficiary pursuant to this Security Instrument, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, none of Beneficiary or Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or

approval thereof shall not constitute any warranty or affirmation with respect thereto by Beneficiary or any Lender.

**Section 5.4**    **Reliance**. Borrower recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, Beneficiary and Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 3 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Beneficiary or any Lender; that such reliance existed on the part of Beneficiary and Lender prior to the date hereof; that the warranties and representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and Beneficiary would not be willing to accept this Security Instrument in the absence of the warranties and representations as set forth in Section 3 of the Loan Agreement.

## ARTICLE 6
## FURTHER ASSURANCES

**Section 6.1**    **Recording of Security Instrument, etc**. Borrower shall, immediately upon the execution and delivery of this Security Instrument and thereafter, from time to time, cause this Security Instrument and any of the other Loan Documents creating a Lien or security interest or evidencing the Lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future Requirements of Law in order to publish notice of and fully to protect and perfect the Lien or security interest hereof upon, and the interest of Beneficiary in, the Property. Borrower shall pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note, deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where Borrower is prohibited by law from paying same.

**Section 6.2**    **Further Acts, etc**. Borrower shall, at the cost of Borrower, and without expense to Beneficiary or Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Beneficiary shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Beneficiary the property and rights hereby deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Trustee or Beneficiary, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Legal Requirements. Borrower, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Beneficiary to execute in the name of Borrower or without the

10

signature of Borrower to the extent Beneficiary may lawfully do so, one or more financing statements (including, without limitation, initial financing statements and amendments thereto and continuation statements) with or without the signature of Borrower as authorized by applicable law, to evidence more effectively the security interest of Beneficiary in the Property. Borrower also ratifies its authorization for Beneficiary to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Security Instrument. Borrower grants to Beneficiary an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting from and after an Event of Default any and all rights and remedies available to Beneficiary at law, in equity or otherwise, including, without limitation, such rights and remedies available to Beneficiary pursuant to this Section. To the extent not prohibited by applicable law, Borrower hereby ratifies all acts Beneficiary has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

**Section 6.3     Chances in Tax, Debt, Credit and Documentary Stamp Laws**.  (a) If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Beneficiary's and any Lender's interest in the Property, Borrower shall pay the tax, with interest and penalties thereon, if any. If Beneficiary is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Beneficiary or any Lender or unenforceable or provide the basis for a defense of usury then Beneficiary shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

(b)     Borrower shall not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Debt. If such claim, credit or deduction shall be required by Legal Requirements, Beneficiary shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(c)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other Loan Documents or impose any other tax or charge on the same, Borrower shall pay for the same, with interest and penalties thereon, if any.

**Section 6.4     Splitting of Security Instrument**.  This Security Instrument and the Note shall, at any time until the same shall be fully paid and satisfied, at the sole election of Beneficiary, be split or divided into two or more notes and two or more security instruments, each of which shall cover all or a portion of the Property to be more particularly described therein. To that end, Borrower, upon written request of Beneficiary, shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered by the then owner of the Property, to Beneficiary and/or its designee or designees substitute notes and security instruments in such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing substantially the same terms, provisions and clauses as those

11

contained herein and in the Note, and such other documents and instruments as may be required by Beneficiary.

**Section 6.5     Replacement Documents**.  Upon receipt of an affidavit of an officer of Beneficiary as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Borrower will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in substantially the same form and the same principal amount thereof.

## ARTICLE 7
## DUE ON SALE/ENCUMBRANCE

**Section 7.1     Beneficiary Reliance**. Borrower acknowledges that Beneficiary and Lender has examined and relied on the experience of Borrower and its general partners, members, principals and beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Other Obligations. Borrower acknowledges that Beneficiary and Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Other Obligations, Beneficiary and Lender can recover the Debt by a sale of the Property.

**Section 7.2     No Transfer**.  Borrower shall not permit or suffer any transfer or sale of any Collateral to occur, unless specifically permitted by Section 2.14 of the Loan Agreement or unless Beneficiary shall consent thereto in writing.  Upon a transfer or sale without Beneficiary's prior written consent (other than as expressly permitted pursuant to Section 2.14 of the Loan Agreement), Beneficiary may declare the Debt immediately due and payable. Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon a transfer or sale without Beneficiary's prior written consent. This provision shall apply to every transfer or sale, other than any transfer or sale permitted pursuant to the Loan Agreement, regardless of whether voluntary or not, by operation of law or otherwise or whether or not Beneficiary has consented to any previous transfer or sale.

## ARTICLE 8
## RIGHTS AND REMEDIES UPON DEFAULT

**Section 8.1     Remedies**.  Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Beneficiary may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property by Beneficiary, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Beneficiary:

Doc# 3060428\2

(a)     declare the entire unpaid Debt to be immediately due and payable;

(b)     institute or cause the Trustee to institute a proceeding or proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or maimer in each case as determined by Beneficiary. Borrower agrees that if the Land is comprised of more than one parcel, then the parcels constituting the Land in the aggregate are integrated with each other and are intended to be used, owned and operated as one project and that each Lender is advancing the Loan and entering into the transaction contemplated hereby on that basis; consequently, Beneficiary shall have the right (but not the obligation) to sell the Land as one parcel and Borrower waives all rights, if any, at law, in equity or otherwise to object to same and all rights, if any, to the marshalling of assets and collateral for the Loan secured hereby;

(c)     with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute or cause the Trustee to institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing Lien and security interest of this Security Instrument for the balance of the Debt not then due, unimpaired and without loss of priority;

(d)     sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to the power of sale contained herein or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

(f)     recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

(g)     apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower or any guarantor or indemnitor with respect to the Loan, or of any Person liable for the payment of the Debt;

(h)     the license granted to Borrower pursuant to the Assignment of Leases shall automatically be revoked and Beneficiary may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom and thereupon Beneficiary may to the maximum extent permitted under applicable law take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Beneficiary upon demand, and thereupon Beneficiary, to the maximum extent permitted under applicable law, may (i) use, operate, manage, control, insure, maintain, repair,

13

restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Beneficiary deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict Tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Beneficiary or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Beneficiary shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Beneficiary, its counsel, agents and employees;

(i)     exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and the Personal Property, or any part thereof~, and to take such other measures as Beneficiary may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and the Personal Property, and (ii) request Borrower at its request to assemble the Fixtures, the Equipment and the Personal Property and make it available to Beneficiary at a convenient place acceptable to Beneficiary. Any notice of sale, disposition or other intended action by Beneficiary with respect to the Fixtures, the Equipment and/or the Personal Property sent to Borrower in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(j)     apply any sums then deposited or held in escrow or otherwise by or on behalf of Beneficiary in accordance with the terms of the Loan Agreement, this Security Instrument or any other Loan Document.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of Property, this Security Instrument shall continue as a Lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

**Section 8.2     Application of Proceeds**.  The purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Beneficiary pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such order, priority and proportions as Beneficiary in its sole and absolute discretion shall deem proper.

**Section 8.3     Actions and Proceedings**.  Beneficiary, in the name and on behalf of Borrower, has the right to appear in and defend any action or proceeding brought with respect to

14

the Property and to bring any action or proceeding which Beneficiary, in its discretion, decides should be brought to protect its interest in the Property.

**Section 8.4    Recovery of Sums Required To be Paid**.  Beneficiary shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Beneficiary thereafter to bring an action of foreclosure, or any other action, for a Default or Defaults by Borrower existing at the time such earlier action was commenced.

**Section 8.5    Beneficiary's Right to Perform**.  Upon the occurrence and during the continuance of an Event of Default with respect to the performance of any of the Obligations contained herein, Beneficiary may, without waiving or releasing Borrower from any Obligation or Default under this Security Instrument, but shall not be obligated to, at any time perform the Obligations giving rise to such Event of Default, and the cost thereof, with interest at the Default Rate from the date of payment by Beneficiary to the date such amount is paid by Borrower, shall immediately be due from Borrower to Beneficiary and the same shall be secured by this Security Instrument and shall be a lien on the Property prior to any right, title to, interest in claim upon the Property attaching subsequent to the Lien of this Security Instrument. No payment or advance of money by Beneficiary under this Section 8.5 shall be deemed or construed to cure Borrower's Event of Default or waive any right or remedy of Beneficiary hereunder.

**Section 8.6    Specific Performance**.  Beneficiary in its sole and absolute discretion, may institute an action, suit or proceeding at law or in equity for the specific performance of any covenant, condition or agreement contained herein or in the Note or any other Loan Document, or in aid of the execution of any power granted hereunder or for the enforcement of other appropriate legal or equitable remedy.

**Section 8.7    Sale of Property**. (i) Trustee may adjourn from time to time any sale by it to be made under or by virtue of this Security Instrument by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Trustee, without further notice or publication, may make such sale at the time and place to which such sale shall be so adjourned.

(ii)    Upon the completion of any sale or sales pursuant hereto, Trustee or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Trustee is hereby irrevocably appointed the true and lawful attorney-in-fact of Borrower, to act in its name and stead (such power of attorney being coupled with an interest, and irrevocable), to make all necessary conveyances, assignments, transfers and deliveries of the Property and rights so sold and for that purpose Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, Borrower hereby ratifying and confirming all that its attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any sale or sales made under this Section, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and

demand whatsoever, whether at law or in equity, of Borrower in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Borrower and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Borrower.

(iii)     Upon any sale made under or by virtue of this Section, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Beneficiary is authorized to deduct under this Security Instrument.

**Section 8.8     Other Rights. Etc**.  (a) The failure of Beneficiary or Trustee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (1) the failure of Beneficiary or Trustee to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Beneficiary or any Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.

(b)     It is agreed that the risk of loss or damage to the Property is on Borrower, and none of Beneficiary or any Lender shall have any liability whatsoever for any decline in value of the Property, for any damage to the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate for the risks insured, whether in connection with Beneficiary's exercise of rights and remedies under the Loan Documents or otherwise. Possession of the Property or any part or portion thereof by Beneficiary shall not be deemed an election ofjudicial relief, if any such possession is requested or obtained, with respect to any of the Property or collateral not in Beneficiary's possession.

(c)     Beneficiary may resort for the payment of the Debt to any security held by Beneficiary in such order and manner as Beneficiary, in its sole and absolute discretion, may elect. Beneficiary or Trustee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Beneficiary or Trustee thereafter to foreclose this Security Instrument.

**Section 8.9     Right to Release Any Portion of the Property**.  Beneficiary may release any portion of the Property for such consideration as Beneficiary may require without, as to the remainder of the Property, in any way impairing or affecting the Lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Beneficiary for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Beneficiary may require without being

accountable for so doing to any other lienholder. This Security Instrument shall continue as a Lien and security interest in the remaining portion of the Property.

      **Section 8.10**   **Choice of Remedies**. Notwithstanding any other provision of this Security Instrument or the Loan Agreement, Beneficiary is entitled to enforce the obligations of Borrower, any guarantor and indemnitor contained without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure, exercise of a power or sale or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Beneficiary commences a foreclosure action against the Property, Beneficiary is entitled to pursue a deficiency judgment with respect to such obligations against Borrower and any guarantor or indemnitor with respect to the Loan. Nothing herein shall inhibit or prevent Beneficiary from foreclosing or exercising a power of sale pursuant to this Security Instrument or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Borrower whether or not action is brought against any other Person or whether or not any other Person is joined in the action or actions.

**ARTICLE 9**
**NOTICES**

      All notices or other written communications hereunder shall be delivered in accordance with Section 9.2 of the Loan Agreement.

**ARTICLE 10**
**APPLICABLE LAW; WAIVER OF JURY TRIAL**

      **Section 10.1**   **GOVERNING LAW. (A) THIS SECURITY INSTRUMENT WAS NEGOTIATED IN THE STATE OF COLORADO, AND MADE BY BORROWER AND ACCEPTED BY BENEFICIARY IN THE STATE OF COLORADO, AND THE PROCEEDS OF THE NOTE SECURED HEREBY WERE DISBURSED FROM THE STATE OF COLORADO, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS SECURITY INSTRUMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF COLORADO APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS WITH RESPECT TO THE PROPERTY SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT**

17

PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF COLORADO SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS, AND THIS SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF COLORADO.

(B)      ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BENEFICIARY, ANY BENEFICIARY OR BORROWER ARISING OUT OF OR RELATING TO THIS SECURITY INSTRUMENT MAY AT BENEFICIARY'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY AND COUNTY OF DENVER, COLORADO, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

Section 10.2   Provisions Subject to Applicable Law. All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof shall be invalid, illegal or unenforceable in any respect, the remainder of this Security Instrument shall be construed without such provision and this Security Instrument and any other application of the term shall not be affected thereby.

Section 10.3   TRIAL BY JURY. BORROWER, BENEFICIARY AND BACH LENDER EACH HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, SUIT, COUNTERCLAIM, CROSSCLAIM OR OTHERWISE, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS SECURITY INSTRUMENT, THE NOTE OR THE OTHER LOAN DOCUMENTS, THE PROPERTY OR ANY ACTS OR OMISSIONS OF BENEFICIARY OR ANY LENDER, AND EACH OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, BENEFICIARY AND EACH LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. BORROWER, BENEFICIARY AND EACH LENDER ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

## ARTICLE 11
## DEFINITIONS; CONSTRUCTION

All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form and the word "**Borrower**" shall include any subsequent owner or owners of the Property or any part thereof or any interest therein, the word "**Beneficiary**" shall mean "Beneficiary and any successor Agent pursuant to the Loan Agreement", the word "**Lender**" shall mean "each Lender and each and any subsequent holder(s) of the Note or any part thereof," the word "**Note**" shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument," the word "**Property**" shall include any portion of the Property and any interest therein, and the phrases "**attorneys' fees**", "**legal fees**" and "**counsel fees**" shall include any and all attorneys', paralegal, legal assistant and law clerk fees and disbursements, whether retained firms, the reimbursement for the expenses of in-house staff or otherwise, and, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Beneficiary or any Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder. Wherever pursuant to this Security Instrument it is provided that Borrower shall pay any costs and expenses, such costs and expenses shall include, but not be limited to, legal fees as defined above. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. All references to sections, subsections, paragraphs, schedules and exhibits are to sections, subsections, paragraphs, schedules and exhibits in or to this Security Instrument unless otherwise specified. The Schedules and Exhibits annexed hereto are hereby incorporated herein as a part of this Security Instrument with the same force and effect as if set forth in the body hereof The headings and captions of various Articles and Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof. Unless otherwise specified, the words "hereof", "herein" and "hereunder" and words of similar import when used in this Security Instrument shall refer to this Security Instrument as a whole and not to any particular provision of this Security Instrument. The words "includes", "including" and similar terms shall be construed as if followed by the words "without limitation". Whenever in this Security Instrument any consent, approval, determination or decision of Lender is to be made by Lender, or any matter is to be satisfactory to Lender, then unless expressly provided to the contrary, such provision shall be deemed to mean that such consent, approval, determination or decision of Lender or determination whether a matter is satisfactory shall be made by Lender in its sole and absolute discretion for any or no reason and shall be final and conclusive. In the event that a claim or adjudication is made that Lender or its agents have acted unreasonably or unreasonably delayed (or refrained from) acting in any case where, by law or under this Security Instrument or the other Loan Documents, Lender or such agent, as the case may be, has an obligation to act reasonably or promptly, neither Lender nor its agents shall be liable for any monetary damages, and Borrower's sole remedy shall be limited to commencing an action seeking injunctive relief or declaratory judgment. Any action or proceeding to determine whether Lender has acted reasonably shall be determined by an action seeking declaratory judgment. Any reference in this Security Instrument or in any other Loan Document to any Loan Document shall be deemed to include references to such documents as the same may hereafter be amended, modified,

Doc# 3060428\2

supplemented, extended, replaced and/or restated from time to time (and, in the case of any note or other instrument, to any instrument issued in substitution therefor). The parties hereto acknowledge that they were represented by counsel in coimection with negotiation and drafting of this Security Instrument and that this Security Instrument shall not be subject to the principle of construing its meaning against the party which drafted same.

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

**Section 12.1    Conflict of Terms**.  In case of any conflict between the terms of this Security Instrument and the terms of the Loan Agreement, the terms of the Loan Agreement shall govern and control.

**Section 12.2    No Oral Change**.  This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, restated, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower, Beneficiary or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, restatement, change, discharge or termination is sought. Beneficiary may execute any such modification, amendment, waiver, extension, change, discharge or termination and Lender's execution thereof shall not be required.

**Section 12.3    Successors and Assigns**.  This Security Instrument shall be binding upon Borrower and Beneficiary and inure to the benefit of Borrower, Beneficiary and each Lender and their respective successors and permitted assigns forever. Nothing contained in this Section shall be construed to alter or change any requirement contained herein or in the Loan Agreement which requires Borrower to obtain Beneficiary's prior consent to any Transfer.

**Section 12.4    Entire Agreement**.  The Note, the Loan Agreement, this Security Instrument and the other Loan Documents constitute the entire understanding and agreement between Borrower and Beneficiary and any Lender with respect to the transactions arising in connection with the Debt and supersede all prior written or oral understandings and agreements between Borrower and Beneficiary and any Lender with respect thereto. Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Beneficiary or Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Security Instrument and the other Loan Documents.

**Section 12.5    Delay Not a Waiver**.  Neither any failure nor any delay on the part of any party hereto in insisting upon strict performance of any term, condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder, or any other document or instrument entered into or delivered in connection herewith or pursuant hereto, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege. A waiver of one default with respect to any Person shall not be construed to be a waiver of any subsequent default

with respect to such Person or any other Person or to impair any remedy, right or power consequent thereon.

**Section 12.6**   **No Joint Venture or Partnership; No Third Party Beneficiaries**. (a) Borrower, Beneficiary and Lender intend that the relationships created hereunder and under the other Loan Documents be solely that of lender and borrower. Nothing herein or therein is intended to create a joint venture, partnership, tenancy-in-common, or joint tenancy relationship between Borrower, Beneficiary and the Lenders nor to grant Beneficiary or the Lenders any interest in the Property other than that of assignee, secured party, beneficiary and lender.

(b)   This Security Instrument and the other Loan Documents are solely for the benefit of Beneficiary and the Lender and nothing contained in this Security Instrument or the other Loan Documents shall be deemed to confer upon anyone other than Beneficiary and Lender any right to insist upon or to enforce the performance or observance of any of the obligations contained herein or therein. All conditions to the obligations of Lender to make Advances under the Loan Documents are imposed solely and exclusively for the benefit of Beneficiary and Lender and no other Person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Beneficiary or Lender will refuse to make Advances in the absence of strict compliance with any or all thereof and no other Person shall under any circumstances be deemed to be a beneficiary of such conditions, any or all of which may be freely waived in whole or in part by Beneficiary on behalf of Lender if, in Beneficiary's sole discretion, Beneficiary deems it advisable or desirable to do so. In addition, none of Beneficiary or Lender is the agent or representative of Borrower and unless and until Beneficiary takes possession of the Property through foreclosure or otherwise, this Security Instrument shall not make Beneficiary or Lender liable to any Person for goods delivered to or services performed by them upon the Property, or for debts or claims accruing to such parties against Borrower and there is no contractual relationship, either express or implied, between any Agent and/or Lender and any Person supplying any work, labor or materials for the Improvements.

**Section 12.7**   **Limitation on Beneficiary's Responsibility**.   No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Beneficiary or Lender, nor shall it operate to make Beneficiary or Lender responsible or liable for any waste committed on the Property by the Tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any Tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Beneficiary or Lender a "mortgagee in possession."

**Section 12.8**   **Subrogation**.   If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Beneficiary shall be subrogated to all of the rights, claims, Liens, titles, and interests existing against the Property heretofore held by, or in favor of the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Beneficiary and are merged with the Lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the Loan

21

Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

**Section 12.9**   **Joint and Several Liability**.  If Borrower is comprised of more than one Person, all representations, warranties, covenants (both affirmative and negative) and all other obligations hereunder shall be the joint and several obligation of each entity making up Borrower and a default or event of default by any such Person shall be deemed a default or event of default by all such entities and Borrower.

**Section 12.10**  **Time of the Essence**.  Time is of the essence with respect to the performance by Borrower of its obligations pursuant to this Security Instrument.

## ARTICLE 13

## INTENTIONALLY OMITTED

## ARTICLE 14
## STATE-SPECIFIC PROVISIONS

**Section 14.1**   **Principles Of Construction**.  In the event of any inconsistencies between the terms and conditions of this Article 14 and the other terms and conditions of this Security Instrument, the terms and conditions of this Article 14 shall control and be binding.

**Section 14.2**   **Maturity Date**.  The initial maturity date of the Note is January 31, 2011, which initial maturity date is subject to extension as set forth in the Loan Agreement.

**Section 14.3**   **Fixture Filing**.  This Security Instrument constitutes a fixture filing, and as such, covers all items of the Property which are or become fixtures on the Land and the Improvements.

**Section 14.4**   **Foreclosure**.  Notwithstanding anything to the contrary contained in this Security Instrument, the following provisions shall apply with respect to foreclosure proceedings:

(a)   Power of Sale.  Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall file with Trustee a written notice of election and demand for sale and all other documents, certificates and affidavits as are required by applicable law. Thereupon, Trustee shall cause a copy of the notice of election and demand for sale to be recorded in the Clerk and Recorder's Office of the county in which the Land is located. Trustee shall then give such notices as are required by law and shall conduct the foreclosure sale of the Property in accordance with applicable law. Trustee shall sell and dispose of the Property (en masse or in separate parcels, as Trustee may think best) and all the right, title and interest of Borrower and its successors and assigns therein, at public auction at any place permitted by applicable law. Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. When the sale is

Doc# 3060428\2

held, Trustee shall execute and deliver to the purchaser of the Property or portions thereof at such sale a certificate of purchase as required by applicable law. Thereafter, following the expiration of all applicable redemption periods and satisfaction of any other requirements prescribed by law, Trustee shall execute and deliver a deed for the Property to the person entitled thereto, which deed shall be in such form as is required by law. Such sale and said deed shall be a perpetual bar, both in law and equity, against Borrower and its successors and assigns, and all other persons claiming the Property or any part thereof by, through, from or under Borrower.

(b)     Beneficiary may, by following the procedures and satisfying the requirements prescribed by applicable law, foreclose on only a portion of the Property and, in such event, said foreclosure shall not affect the lien of this Security Instrument on the remaining portion of the Property not foreclosed.

At the option of Beneficiary, this Security Instrument shall be effective as a mortgage as well as a deed of trust and upon the occurrence of a default hereunder which has not been cured within any applicable cure period, this Security Instrument may be foreclosed as to any of the Property in any manner permitted by the laws of the State of Colorado or of any other state in which any part of the Property is situated, and any foreclosure suit may be brought by Trustee or by Beneficiary. In the event a foreclosure hereunder shall be commenced by Trustee, Beneficiary may at any time before the sale of the Property direct Trustee to abandon the sale, and may then institute suit for the collection of amounts owing under the Note, the other Loan Documents and the other secured indebtedness and for the foreclosure of this Security Instrument. It is agreed that if Beneficiary should institute a suit for the collection of amounts owing under any other secured indebtedness and for the foreclosure of this Security Instrument, Beneficiary may at any time before the entry of a final judgment in said suit dismiss the same, and require Trustee to sell the Property in accordance with the provisions of this Security Instrument.

(c)     <u>Judicial Foreclosure</u>. Beneficiary may foreclose this Security Instrument, insofar as it encumbers the Property, by way of a judicial foreclosure by appropriate proceedings in any court of competent jurisdiction pursuant to Rule 105 of the Colorado Rules of Civil Procedure and the applicable provisions of Title 38, Article 38, Colorado Revised Statutes, as currently in effect, as amended, or in any other manner then permitted by law. If this Security Instrument encumbers more than one parcel of real estate, foreclosure may be by separate parcel or en masse, as Beneficiary may elect in its sole discretion. Foreclosure will be initiated by Beneficiary's delivering a copy of the judgment and decree of foreclosure to the county sheriff together with the sheriffs sale documents as required by law. Upon the delivery of such judgment and decree of foreclosure and/or necessary sheriff's sale documents, the sheriff shall promptly comply with all notice and other requirements of the laws of Colorado then in force with respect to such sales, and shall give four (4) weeks' public notice (at least one day for five (5) successive weeks) of the time and place of such sale by advertisement weekly in some newspaper of general circulation then published in the County or City and County in which the Property is located.

(d)     <u>Expenses of Foreclosure</u>.  All fees, costs and expenses of any kind incurred by Beneficiary in connection with foreclosure of this Security Instrument, including, without limitation, the costs of any appraisals of the Property obtained by Beneficiary, all costs of any receivership for the Property advanced by Beneficiary, and all attorneys' and consultants'

23

fees incurred by Beneficiary, appraisers' fees, outlays for documentary and expert evidence, stenographers' charges, publication costs and costs (which may be estimates as to items to be expended after entry of the decree) of procuring all such abstracts of title, title searches and examination, title insurance policies and similar data and assurances with respect to title, as Beneficiary may deem necessary either to prosecute such suit or to evidence to bidders at the sales that may be had pursuant to such proceedings the true conditions of the title to or the value of the Property, together with and including a reasonable compensation to sheriff, shall constitute a part of the Debt and may be included as part of the amount owing from Borrower to Beneficiary at any foreclosure sale.

(e)    Proceeds of Foreclosure Sale.  The proceeds of a foreclosure sale of the Property shall be distributed and applied in the following order of priority: first, on account of all costs and expenses incident to the foreclosure proceedings; second, all other items which, constitute obligations additional to that evidenced by the Note, with interest on such items as provided in the Loan Agreement; third, to interest remaining unpaid upon the Note; fourth, to the principal remaining unpaid upon the Note; and lastly, to Borrower and its successors or assigns, as their rights may appear.

(f)    Insurance Upon Foreclosure.  In case of an insured loss after judicial foreclosure or power of sale proceedings have been instituted, the proceeds of any insurance policy or policies, if not applied to rebuilding or restoring the buildings or improvements, shall be used to pay the amount due upon the Debt. In the event of judicial foreclosure, Beneficiary is hereby authorized, without the consent of Borrower, to assign any and all insurance policies to the purchaser at the sale, or to take such other steps as Beneficiary may deem advisable to cause the interest of such purchaser to be protected by any of the said insurance policies.

(g)    No Conflict.  Nothing in this Section 14.4 dealing with foreclosure procedures or specifying particular actions to be taken by Beneficiary or by sheriff or any similar officer shall be deemed to contradict or add to the requirements and procedures now or hereafter specified by Colorado law, and any such inconsistency shall be resolved in favor of Colorado law applicable at the time of foreclosure.

**Section 14.5    Additional Waivers**.  To the full extent that the covenants and waivers contained in this Section 14.5 are permitted by law, but not otherwise, (a) Borrower hereby waives any and all rights under, and covenants and agrees that it will not at any time insist upon or plead or in any manner whatsoever claim or take advantage of, any stay, exemption, moratorium or extension law hereafter in effect or any law now or hereafter in effect providing for the valuation or appraisement of the Property or any part thereof prior to any sale or sales thereof and Borrower will not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power or remedy herein or otherwise granted or delegated to Trustee or Beneficiary, but will suffer and permit the execution of every such right, power and remedy as though no such law or laws have been made or enacted; and (b) Borrower hereby waives, and subordinates to the lien of this Security Instrument, any rights that Borrower may have in or to the Property as a homestead exemption under existing law or under any similar law that may hereafter be enacted, such waiver and subordination to be effective in connection with either a trustee's or foreclosure sale under this Security Instrument or Beneficiary's redemption

of the Property in the case of a trustee's or foreclosure sale to enforce an encumbrance prior in right to that of this Security Instrument.

**Section 14.6**   **Waiver Of Homestead And Other Exemptions**.  To the extent permitted by law, Borrower hereby waives all rights to any homestead or other exemption to which Borrower would otherwise be entitled under any present or future constitutional, statutory, or other provision of applicable state or federal law.

**Section 14.7**   **Partial Releases**.  Any release of Units and Retail Components and the related furniture, Personal Property, Fixtures and Equipment from the lien of this Security Instrument shall be made solely in accordance with and upon the terms and conditions set forth in Section 2.14 of the Loan Agreement.

**[NO FURTHER TEXT ON THIS PAGE]**

Doc# 3060428\2

**IN WITNESS WHEREOF**, this Security Instrument has been executed by Borrower as of the day and year first written above.

BORROWER:

7677 EAST BERRY AVENUE ASSOCIATES, L.P.,
a Delaware limited partnership

By:   EDC Denver I, LLC,
      a Delaware limited liability company,
      its General Partner

By: _____
Name: Zachary M. Davidson
Title:   Manager

**ACKNOWLEDGMENT**

STATE OF COLORADO      )
                       )ss.
COUNTY OF  DENVER      )

     The foregoing instrument was acknowledged before me this _____ day of _____, 2009, by Zachary M. Davidson as Manager of EDC Denver I, LLC, a Delaware limited liability company, which is the General Partner of 7677 East Berry Avenue Associates, L.P., a Delaware limited partnership.

     Witness my hand and official seal.

                                    _____
                                      Notary Public

My commission expires: _____

[Seal]

## EXHIBIT A

## LEGAL DESCRIPTION

PARCEL A:

LOTS 6 AND 7, THE LANDMARK FILING NO. 1 AMENDED PLAT, COUNTY OF
ARAPAHOE, STATE OF COLORADO.


PARCEL B:

CONDOMINIUM UNITS 3, 4 AND 5,
LANDMARK LOT 2 RETAIL CONDOMINIUM, ACCORDING TO THE CONDOMINIUM
MAP RECORDED APRIL 29, 2008 UNDER RECEPTION NO. B8049373, AND AS
DEFINED AND DESCRIBED IN THE CONDOMINIUM DECLARATION OF LANDMARK
LOT 2 RETAIL CONDOMINIUM RECORDED APRIL 29, 2008 UNDER RECEPTION NO.
B8049374, COUNTY OF ARAPAHOE, STATE OF COLORADO.

PARCEL C:

ALL OF THE LANDMARK TOWERS CONDOMINIUMS,
ACCORDING TO THE CONDOMINIUM MAP THEREOF, RECORDED ON MAY 5, 2008
UNDER RECEPTION NO. B8051568, AS SUPPLEMENTED BY THAT CERTAIN
CONDOMINIUM MAP OF LANDMARK TOWERS CONDOMINIUM SUPPLEMENT NO.
1, RECORDED DECEMBER 26, 2008 UNDER RECEPTION NO. B8139382, ALL IN THE
RECORDS OF THE OFFICE OF THE CLERK AND RECORDER OF THE COUNTY OF
ARAPAHOE, COLORADO, AND AS DEFINED AND DESCRIBED IN THE LANDMARK
TOWERS CONDOMINIUM DECLARATION RECORDED ON MAY 5, 2008 UNDER
RECEPTION NO. B8051569, AND ALL AMENDMENTS AND/OR SUPPLEMENTS
THEREOF, IN SAID RECORDS, AND SUBJECT TO THE AMENDED AND RESTATED
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS OF THE
LANDMARK VILLAGE CENTER MASTER COMMUNITY RECORDED MARCH 26, 2008
UNDER RECEPTION NO. B8035117, AND ALL AMENDMENTS AND/OR
SUPPLEMENTS THEREOF, IN THE RECORDS OF THE OFFICE OF THE CLERK AND
RECORDER OF THE COUNTY OF ARAPAHOE, COLORADO,

EXCEPT THE FOLLOWING UNITS:

403 THROUGH 409, 411 THROUGH 416 AND 418,
501, 504 THROUGH 506, 508 THROUGH 513, 515 THROUGH 516 AND 518,
601, 603, 605 THROUGH 616 AND 618,
701, 703 THROUGH 710, 712 THROUGH 714 AND 718,
801, 804, 806 THROUGH. 807, 809, 811, 813, 815 AND 818,
901, 904, 906, 909, 911, 913 THROUGH 914, 916 AND 918,
1003 THROUGH 1004, 1006 THROUGH 1007, 1009, 1012 AND 1014 THROUGH 1015,
1101, 1104, 1106 THROUGH 1107, 1109, 1111 AND 1113 THROUGH 1114,

1201, 1203, 1206 THROUGH 1207, 1209, 1211, 1213 THROUGH 1214, 1216 AND 1218,
1403 THROUGH 1404, 1407, 1409, 1411, 1413 THROUGH 1414, 1416 AND 1418,
506-2 THROUGH 507-2 AND 513-2,
602-2, 605-2, 611-2 AND 613-2,
705-2, 711-2, 713-2 AND 715-2,
801-2 AND 810-2,
901-2, 912-2 AND 915-2,
1005-2, 1007-2 AND 1009-2,
1112-2,
1202-2, 1206-2 AND 1212-2,
1615-2,

AND EXCEPTING THE EXCLUSIVE RIGHT TO USE PARKING SPACES, 212, 213, 232,
234, 442 AND 443,

AND EXCEPTING THE EXCLUSIVE RIGHT TO USE STORAGE SPACES 219, 229 AND
415.

COUNTY OF ARAPAHOE, STATE OF COLORADO.

# EXHIBIT B

## DEFINITIONS OF LEASES AND RENTS

As used in Subsection 1.1(a), the term "leases" shall mean all leases, subleases, licenses, franchises, concessions or grants of other possessory interests, tenancies, and any other agreements entered into by Assignor or its predecessor-in-interest affecting the use, possession or occupancy of the Property or any part thereof (including, without limitation, guest rooms, restaurants, bars, conference and meeting rooms, and banquet halls and other public facilities), whether now or hereafter existing or entered into (including, without limitation, any use or occupancy arrangements created pursuant to Section 365(d) of the Bankruptcy Code or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or occupant of any portion of the Property) and all amendments, modifications, supplements, extensions or renewals thereof, whether now or hereafter existing and all amendments, modifications, supplements, extensions or renewals thereof. As used in Subsection 1.1(a) the term "lease provisions" shall mean the right to enforce, whether at law or in equity or by any other means, all terms, covenants and provisions of the Leases.

As used in Subsection 1.1(c), the term "rents" shall mean all rents, issues, profits, royalties (including all oil and gas or other hydrocarbon substances), earnings, receipts, revenues, accounts, account receivable, security deposits and other deposits (subject to the prior right of the tenants making such deposits) and income, including, without limitation, fixed, additional and percentage rents, and all operating expense reimbursements, reimbursements for increases in taxes, sums paid by tenants to Assignor to reimburse Assignor for amounts originally paid or to be paid by Assignor or Assignor's agents or affiliates for which such tenants were liable, as, for example, tenant improvements costs in excess of any work letter, lease takeover costs, moving expenses and tax and operating expense pass-throughs for which a tenant is solely liable, parking, maintenance, common area, tax, insurance, utility and service charges and contributions, proceeds of sale of electricity, gas, heating, air-conditioning and other utilities and services, deficiency rents and liquidated damages, and other benefits now or hereafter derived from any portion of the Property or otherwise due and payable or to become due and payable as a result of any ownership, use, possession, occupancy or operation thereof and/or services rendered, goods provided and business conducted in connection therewith (including any payments received pursuant to Section 502(b) of the Bankruptcy Code or otherwise in arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any tenant or other occupants of any portion of the Property and all claims as a creditor in connection with any of the foregoing) and all cash or security deposits, advance rentals, and all deposits or payments of a similar nature relating thereto, now or hereafter, including during any period of redemption, derived from the Property or any portion thereof and all proceeds from the cancellation, surrender, sale or other disposition of the Leases.

## EXHIBIT C

### Deposit Accounts

(TO BE ESTABLISHED IN ANY DIP APPROVED BANK SELECTED BY BORROWER)

[Exhibit to Debtor In Possession Loan Agreement]

## EXHIBIT D

### **Minimum Release Price Schedule**

[Exhibit to Debtor In Possession Loan Agreement]

## Landmark Meridian Unsold or Under Contract Inventory Valuation Analysis

| Unit # | | Unit Type | Available Square Feet per Unit | Projected Sales Price | Projected Sales Price PSF | Appraised Value | Appraised Value PSF | Existing Hypo Release Price | Hypo Release PSF |
|---|---|---|---|---|---|---|---|---|---|
| **Landmark Tower Available Residences** | | | | | | | | | |
| **Units Under Contract** | | | | | | | | | |
| | 503 | J | 925 | $289,900 | $313 | $324,900 | $351 | $262,156 | $283 |
| | 716 | H | 1,421 | $479,900 | $338 | $569,900 | $401 | $406,679 | $286 |
| | 1118 | C | 2,001 | $705,000 | $352 | $695,000 | $347 | $641,550 | $321 |
| | 1401 | B | 1,604 | $625,000 | $390 | $625,000 | $390 | $545,909 | $340 |
| **Total of units under contract** | | | 5,951 | $2,099,800 | $353 | $2,214,800 | $372 | $1,856,294 | $312 |
| | | | | | | | | | |
| **Available to be sold** | | | | | | | | | |
| | 401 | B | 1,601 | $579,900 | $362 | $579,900 | $362 | $513,259 | $320 |
| | 507 | D | 1,476 | $639,900 | $432 | $639,900 | $434 | $582,704 | $395 |
| | 514 | A | 1,904 | $779,900 | $410 | $779,900 | $410 | $633,269 | $333 |
| | 604 | H | 1,421 | $549,900 | $387 | $549,900 | $387 | $412,139 | $290 |
| | 711 | F | 1,296 | $559,900 | $432 | $559,900 | $432 | $464,919 | $359 |
| | 715 | I | 874 | $359,900 | $412 | $359,900 | $412 | $310,219 | $355 |
| | 803 | J | 925 | $359,900 | $389 | $359,900 | $389 | $303,849 | $328 |
| | 814 | A | 1,904 | $819,900 | $431 | $819,900 | $431 | $638,729 | $335 |
| | 816 | H | 1,421 | $579,900 | $408 | $579,900 | $408 | $467,717 | $329 |
| | 903 | J | 925 | $364,900 | $394 | $364,900 | $394 | $313,306 | $339 |
| | 905 | I | 874 | $354,900 | $406 | $354,900 | $406 | $295,659 | $338 |
| | 1001 | B | 1,604 | $673,900 | $420 | $673,900 | $420 | $627,645 | $391 |
| | 1011 | F | 1,296 | $589,900 | $455 | $589,900 | $455 | $507,125 | $391 |
| | 1016 | H | 1,421 | $629,900 | $443 | $629,900 | $443 | $543,106 | $382 |
| | 1018 | C | 2,001 | $840,900 | $420 | $840,900 | $420 | $782,991 | $391 |
| | 1103 | J | 925 | $389,900 | $421 | $389,900 | $422 | $321,152 | $347 |
| | 1116 | H10 | 2,153 | $999,900 | $464 | $999,900 | $464 | $726,089 | $337 |
| | 1204 | H11 | 2,001 | $989,900 | $495 | $989,900 | $495 | $834,379 | $415 |
| **Total of available units** | | | 26,022 | $11,063,200 | $425 | $11,063,200 | $425 | $9,278,256 | $357 |
| | | | | | | | | | |
| **Total of Tower 1 Collateral** | | | 31,973 | $13,163,000 | $412 | $13,278,000 | $415 | $11,134,550 | $348 |
| | | | | | | | | | |
| | | | | | | | | | |
| **Meridian Tower Available Residences** | | | | | | | | | |
| **Units Under Contract** | | | | | | | | | |
| | 505 | A | 1,550 | $629,556 | $406 | $627,900 | $405 | $571,389 | $369 |
| | 601 | D | 1,980 | $845,826 | $427 | $831,900 | $420 | $711,529 | $359 |
| | 707 | C | 2,144 | $933,076 | $435 | $879,900 | $410 | $800,709 | $373 |
| | 712 | H | 1,646 | $665,972 | $405 | $639,900 | $389 | $582,309 | $354 |
| | 807 | C | 2,144 | $969,675 | $452 | $926,900 | $432 | $810,719 | $378 |
| | 812 | G 8-12 | 1,646 | $669,786 | $407 | $658,900 | $400 | $609,669 | $370 |
| | 909 | B | 2,470 | $1,083,900 | $439 | $1,041,900 | $422 | $948,129 | $384 |
| | 913 | G | 1,575 | $711,854 | $452 | $698,900 | $444 | $617,890 | $392 |
| | 1006 | B | 2,470 | $1,212,052 | $491 | $1,017,900 | $412 | $760,760 | $384 |
| | 1103 | K | 1,766 | $812,360 | $460 | $800,000 | $453 | $728,000 | $412 |
| | 1107 | C | 2,144 | $956,795 | $446 | $862,900 | $402 | $785,239 | $366 |
| | 1405 | A 12 | 3,414 | $1,570,000 | $460 | $1,689,900 | $495 | $1,427,699 | $418 |
| | 1407 | C 12 | 3,436 | $1,612,126 | $469 | $1,516,900 | $442 | $1,438,710 | $419 |
| | 1412 | G 8-12 | 3,244 | $1,553,691 | $479 | $1,331,900 | $411 | $1,212,029 | $374 |
| | 1415 | D | 1,980 | $945,405 | $477 | $911,900 | $461 | $829,829 | $419 |
| PH | 1501 | D | 1,980 | $945,536 | $478 | $927,900 | $469 | $844,389 | $426 |
| PH | 1601 | D | 1,980 | $1,008,460 | $509 | $970,900 | $490 | $883,519 | $446 |
| PH | 1603 | K 14-15 | 3,180 | $1,726,528 | $543 | $1,486,900 | $468 | $1,353,079 | $425 |
| PH | 1604 | A 14-15 | 3,327 | $1,694,097 | $509 | $1,676,900 | $504 | $1,525,979 | $459 |
| PH | 1612 | G 14-15 | 3,171 | $1,997,958 | $630 | $1,637,900 | $517 | $1,490,489 | $470 |
| **Total of units under contract** | | | 47,247 | $22,544,653 | $477 | $21,140,100 | $447 | $18,932,004 | $401 |
| | | | | | | | | | |
| **Available to be sold** | | | | | | | | | |
| | 501 | D | 1,980 | $909,900 | $460 | $909,900 | $460 | $745,199 | $376 |
| | 502 | J-5 | 1,748 | $824,900 | $472 | $824,900 | $472 | $656,929 | $376 |
| | 503 | K | 1,766 | $795,900 | $451 | $795,900 | $451 | $644,189 | $365 |
| | 504 | L | 1,443 | $592,900 | $411 | $518,900 | $360 | $472,199 | $327 |
| | 509 | B | 2,470 | $1,057,900 | $428 | $999,900 | $405 | $897,260 | $363 |
| | 510 | A | 1,550 | $655,900 | $423 | $655,900 | $423 | $552,279 | $356 |
| | 511 | F | 1,286 | $524,900 | $408 | $555,900 | $432 | $433,979 | $337 |
| | 512 | H-Duplex | 3,408 | $1,769,900 | $519 | $1,769,900 | $519 | $1,240,512 | $364 |
| | 514 | E | 1,636 | $775,900 | $474 | $664,900 | $406 | $605,059 | $370 |
| | 515 | D | 1,980 | $998,900 | $504 | $831,900 | $420 | $757,029 | $382 |
| | 603 | K | 1,766 | $761,900 | $431 | $761,900 | $431 | $653,289 | $370 |
| | 604 | L | 1,443 | $588,900 | $408 | $588,900 | $408 | $476,749 | $330 |
| | 606 | B | 2,470 | $1,083,900 | $439 | $1,001,900 | $406 | $911,729 | $369 |
| | 607 | C | 2,144 | $987,900 | $461 | $869,900 | $406 | $791,609 | $369 |
| | 609 | E | 2,470 | $1,062,900 | $430 | $1,062,900 | $430 | $912,730 | $370 |
| | 610 | A | 1,550 | $660,900 | $426 | $660,900 | $426 | $534,079 | $345 |
| | 612 | H | 1,646 | $719,900 | $437 | $719,900 | $437 | $595,049 | $362 |
| | 614 | E | 1,636 | $812,900 | $497 | $812,900 | $497 | $599,690 | $367 |
| | 615 | D | 1,980 | $881,900 | $445 | $881,900 | $445 | $725,179 | $366 |
| | 701 | D | 1,980 | $889,900 | $449 | $854,900 | $432 | $725,179 | $366 |
| | 702 | H | 2,001 | $1,081,900 | $541 | $899,900 | $450 | $769,860 | $385 |
| | 703 | K | 1,766 | $816,900 | $463 | $750,000 | $425 | $682,500 | $386 |

**Landmark Meridian Unsold or Under Contract Inventory Valuation Analysis**

| | Unit # | Unit Type | Available Square Feet per Unit | Projected Sales Price | Projected Sales Price PSF | Appraised Value | Appraised Value PSF | Existing Hypo Release Price | Hypo Release PSF |
|---|---|---|---|---|---|---|---|---|---|
| | 704 | L | 1,443 | $597,900 | $414 | $489,900 | $340 | $481,299 | $334 |
| | 706 | B | 2,470 | $1,074,900 | $435 | $1,074,900 | $435 | $921,830 | $373 |
| | 709 | B | 2,470 | $1,074,900 | $435 | $1,074,900 | $435 | $921,830 | $373 |
| | 710 | A | 1,550 | $686,900 | $443 | $625,900 | $404 | $569,569 | $367 |
| | 714 | E | 1,636 | $744,900 | $455 | $744,900 | $455 | $608,790 | $372 |
| | 802 | J | 2,001 | $914,900 | $457 | $914,900 | $457 | $784,420 | $392 |
| | 803 | K | 1,766 | $818,900 | $464 | $756,900 | $429 | $688,779 | $390 |
| | 804 | L | 1,443 | $600,900 | $416 | $555,900 | $385 | $505,869 | $351 |
| | 805 | A | 1,550 | $718,900 | $464 | $648,900 | $419 | $590,499 | $381 |
| | 806 | B | 2,470 | $1,087,900 | $440 | $1,087,900 | $440 | $932,750 | $378 |
| | 809 | H | 2,470 | $1,087,900 | $440 | $1,087,900 | $440 | $932,750 | $378 |
| | 811 | F | 1,286 | $483,900 | $376 | $529,900 | $412 | $448,539 | $349 |
| | 813 | G | 1,575 | $699,900 | $444 | $699,900 | $444 | $592,319 | $376 |
| | 814 | E | 1,636 | $754,900 | $461 | $754,900 | $461 | $615,710 | $379 |
| | 815 | D | 1,980 | $964,900 | $487 | $832,900 | $421 | $749,840 | $379 |
| | 902 | J | 2,001 | $934,900 | $467 | $929,900 | $465 | $797,160 | $398 |
| | 903 | K | 1,766 | $841,900 | $477 | $836,900 | $474 | $704,249 | $399 |
| | 904 | L | 1,443 | $633,900 | $439 | $560,900 | $389 | $510,419 | $354 |
| | 905 | A | 1,550 | $728,900 | $470 | $645,900 | $417 | $599,599 | $387 |
| | 906 | B | 2,470 | $1,153,900 | $467 | $1,148,900 | $465 | $948,129 | $384 |
| | 907 | C | 2,144 | $983,900 | $459 | $904,900 | $422 | $823,459 | $384 |
| | 910 | A | 1,550 | $737,900 | $476 | $610,900 | $394 | $555,919 | $359 |
| | 911 | F | 1,286 | $497,900 | $387 | $497,900 | $387 | $453,089 | $352 |
| | 914 | E | 1,636 | $771,900 | $472 | $766,900 | $469 | $627,900 | $384 |
| | 1001 | D | 1,980 | $959,900 | $485 | $841,900 | $425 | $760,760 | $384 |
| | 1002 | J | 2,001 | $951,900 | $476 | $946,900 | $473 | $760,760 | $380 |
| | 1003 | K | 1,766 | $850,900 | $482 | $726,900 | $412 | $760,760 | $384 |
| | 1004 | L | 1,443 | $622,900 | $432 | $566,900 | $393 | $515,879 | $384 |
| | 1010 | A | 1,550 | $769,900 | $497 | $667,900 | $431 | $587,769 | $379 |
| | 1011 | F | 1,286 | $493,900 | $384 | $483,900 | $376 | $440,349 | $342 |
| | 1012 | H | 1,646 | $799,900 | $486 | $728,900 | $443 | $663,299 | $403 |
| | 1013 | G | 1,646 | $746,900 | $454 | $709,900 | $431 | $627,900 | $399 |
| | 1014 | E | 1,636 | $782,900 | $479 | $777,900 | $475 | $638,820 | $390 |
| | 1015 | D | 1,980 | $922,900 | $466 | $917,900 | $464 | $785,330 | $397 |
| | 1101 | D | 1,980 | $914,900 | $462 | $909,900 | $460 | $780,689 | $394 |
| | 1102 | J | 2,001 | $967,900 | $484 | $962,900 | $481 | $824,460 | $412 |
| | 1104 | L | 1,443 | $599,900 | $416 | $599,900 | $416 | $500,409 | $347 |
| | 1105 | A | 1,550 | $735,900 | $475 | $653,990 | $422 | $595,049 | $384 |
| | 1106 | B | 2,470 | $1,295,900 | $525 | $1,035,900 | $419 | $942,669 | $382 |
| | 1109 | B | 2,470 | $1,164,900 | $472 | $1,035,900 | $419 | $942,669 | $382 |
| | 1110 | A | 1,550 | $724,900 | $468 | $630,900 | $407 | $574,119 | $370 |
| | 1111 | F | 1,286 | $499,900 | $389 | $489,900 | $381 | $445,809 | $347 |
| | 1114 | E | 1,636 | $793,900 | $485 | $788,900 | $482 | $647,920 | $396 |
| | 1115 | D | 1,980 | $931,900 | $471 | $861,900 | $435 | $784,329 | $396 |
| | 1201 | D | 1,980 | $930,900 | $470 | $925,900 | $468 | $800,254 | $404 |
| | 1203 | K | 1,766 | $867,900 | $491 | $862,900 | $489 | $731,140 | $414 |
| | 1204 | L | 1,443 | $619,900 | $430 | $619,900 | $430 | $515,879 | $358 |
| | 1205 | A | 1,550 | $739,900 | $477 | $734,900 | $474 | $595,049 | $384 |
| | 1207 | C | 2,144 | $1,004,900 | $469 | $999,900 | $466 | $803,322 | $375 |
| | 1209 | B | 2,470 | $1,244,900 | $504 | $1,104,900 | $447 | $942,669 | $382 |
| | 1210 | A | 1,550 | $714,900 | $461 | $709,900 | $458 | $574,119 | $370 |
| | 1211 | F | 1,286 | $499,900 | $389 | $559,900 | $435 | $445,809 | $347 |
| | 1214 | E | 1,636 | $803,900 | $491 | $789,900 | $483 | $667,030 | $408 |
| | 1215 | D | 1,980 | $1,046,900 | $529 | $891,900 | $450 | $807,079 | $408 |
| PH | 1401 | D | 1,980 | $987,900 | $499 | $900,900 | $455 | $819,819 | $414 |
| PH | 1402 | J | 2,001 | $1,019,900 | $510 | $1,019,900 | $510 | $864,500 | $432 |
| PH | 1403 | K | 1,766 | $907,900 | $514 | $806,900 | $457 | $734,279 | $416 |
| PH | 1404 | L | 1,443 | $629,900 | $437 | $629,900 | $437 | $519,519 | $360 |
| PH | 1409 | A14 | 3,414 | $1,689,900 | $495 | $1,689,900 | $495 | $1,401,400 | $410 |
| PH | 1411 | F | 1,286 | $509,900 | $397 | $494,900 | $385 | $454,909 | $354 |
| PH | 1414 | E | 1,636 | $839,900 | $513 | $839,900 | $513 | $686,140 | $419 |
| PH | 1502 | J | 2,001 | $1,118,900 | $559 | $997,900 | $499 | $908,180 | $454 |
| PH | 1503 | K15 | 3,180 | $1,639,900 | $516 | $1,497,900 | $471 | $1,383,089 | $429 |
| PH | 1504 | A15 | 3,327 | $1,719,900 | $517 | $1,719,900 | $517 | $1,466,829 | $441 |
| PH | 1505 | C15 | 3,377 | $1,749,900 | $518 | $1,749,900 | $518 | $1,420,419 | $421 |
| PH | 1507 | A15 | 3,327 | $1,719,900 | $517 | $1,719,900 | $517 | $1,441,349 | $433 |
| PH | 1510 | F | 1,286 | $519,900 | $404 | $579,900 | $451 | $454,909 | $354 |
| PH | 1512 | G15 | 3,171 | $1,847,900 | $583 | $1,593,900 | $503 | $1,441,349 | $455 |
| PH | 1514 | E | 1,636 | $869,900 | $532 | $869,900 | $532 | $699,699 | $428 |
| PH | 1515 | D | 1,980 | $964,900 | $487 | $964,900 | $487 | $846,300 | $427 |
| PH | 1602 | J | 2,001 | $1,099,900 | $549 | $1,049,900 | $524 | $954,590 | $477 |
| PH | 1605 | C16 | 3,377 | $1,813,900 | $537 | $1,612,900 | $478 | $1,467,739 | $435 |
| PH | 1607 | A16 | 3,327 | $1,801,900 | $542 | $1,601,900 | $481 | $1,457,729 | $438 |
| PH | 1610 | F | 1,286 | $524,900 | $408 | $504,900 | $393 | $459,459 | $357 |
| PH | 1614 | E | 1,636 | $889,900 | $544 | $783,900 | $479 | $718,900 | $439 |
| **Total of available units** | | | **187,254** | **$88,726,400** | **$474** | **$84,345,500** | **$450** | **$72,794,196** | **$389** |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Total - Tower 2 Collateral** | | | 234,591 | $111,271,053 | $475 | $105,485,600 | $450 | $91,726,200 | $391 |
| **Total - T1 & T2 Collateral** | | | 266,474 | $124,434,053 | $467 | $118,763,600 | $446 | $102,860,750 | $386 |

Plus:   Appraised Value of the Retail Center based on CBRE 1/20/09 Appraisal (As-Is Where Is as of 1/20/09 Rent Roll) ---> $36,950,000   $240

**Landmark Meridian Unsold or Under Contract Inventory Valuation Analysis**

| Unit # | Unit Type | Available Square Feet per Unit | Projected Sales Price | Projected Sales Price PSF | Appraised Value | Appraised Value PSF | Existing Hypo Release Price | Hypo Release PSF |
|---|---|---|---|---|---|---|---|---|

(This CBRE bank ordered appraisal is currently being updated to reflect a number of new leases)

| | |
|---|---|
| Total Release Prices Including As-is Where Is Value for Retail Center ---> | $139,810,750 | N/A |
| Less:  Existing Hypo Loan Balance ---> | ($93,771,517) | N/A |
| Less:  Existing Hypo Loan Balance ---> | ($15,000,000) | N/A |
| Less:  Interest & Financing Costs on Hypo & Carmel Loans ---> | ($10,000,000) | N/A |
| Remaining Proceeds After Repayment of Hypo Based on Proposed Minimum Release Prices ---> | $21,039,233 | N/A |

**EXHIBIT E**

**Form of Promissory Note**

(TO BE PROVIDED)

[Exhibit to Debtor In Possession Loan Agreement]

## PROMISSORY NOTE

$15,000,000.00

Denver, Colorado
September ___, 2009

**FOR VALUE RECEIVED 7677 EAST BERRY AVENUE ASSOCIATES, L.P.**, a Delaware limited partnership, as maker, having its principal place of business at 7677 East Berry Avenue, Greenwood Village, Colorado 80111 ("**Borrower**"), hereby unconditionally promises to pay to the order of CARMEL LANDMARK, LLC, a Colorado limited liability company, having an address at 1000 Sansome Street, Suite 180, San Francisco, California 94111 ("**Lender**"), or at such other place as the holder hereof may from time to time designate in writing, the principal sum of up to FIFTEEN MILLION DOLLARS ($15,000,000.00), in lawful money of the United States of America with interest thereon to be computed from the date of this Note at the applicable Interest Rate, and to be paid in accordance with the terms of this Note and that certain Debtor-in-Possession Loan Agreement, dated as of _____, by and among Borrower and Carmel Landmark, LLC, as Lender (as the same may be amended, restated, replaced, extended, supplemented or otherwise modified from time to time, the "**Loan Agreement**"). All capitalized terms not defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

### ARTICLE 1
### PAYMENT TERMS

Borrower agrees to pay the principal sum of this Note and interest on the unpaid principal sum of this Note from time to time outstanding at the rates and at the times specified in the Loan Agreement and the outstanding balance of the principal sum of this Note and all accrued and unpaid interest thereon shall be due and payable on the Maturity Date.

### ARTICLE 2
### DEFAULT AND ACCELERATION

The principal sum of this Note shall, without notice, become immediately due and payable if not paid on the Maturity Date and, at the option of Lender (or as otherwise provided in the Loan Agreement), upon the occurrence of any other Event of Default.

### ARTICLE 3
### LOAN DOCUMENTS

This Note is secured by the Deed of Trust and Security Agreement (the "**Deed of Trust**") and the other Loan Documents.  All of the terms, covenants and conditions contained in the Loan Agreement, the Deed of Trust and the other Loan Documents are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein. In the event of a conflict or inconsistency between the terms of this Note and the Loan Agreement, the terms and provisions of the Loan Agreement shall govern.

## ARTICLE 4
## SAVINGS CLAUSE

Notwithstanding anything contained herein or in any other Loan Document to the contrary, at no time shall Borrower be required to pay interest on the principal balance of the Loans at a rate which could subject Lenders to either civil or criminal liability as a result of being in excess of the Maximum Lawful Rate of Interest. If by the terms of this Note or the other Loan Documents, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of the Maximum Lawful Rate of Interest, then the applicable Interest Rate shall be deemed to be immediately reduced to the Maximum Lawful Rate of Interest and all previous payments in excess of the Maximum Lawful Rate of Interest shall be deemed to have been payments in reduction of principal and not on account of interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the sums due hereunder, shall, to the extent permitted by Requirements of Law, be amortized, prorated, allocated, and spread throughout the fall stated term of the Loan until payment in full so that the rate or amount of interest on account of the principal amount of this Note does not exceed the Maximum Lawful Rate of Interest from time to time in effect and applicable to the amounts outstanding hereunder for so long as such amounts are outstanding.

## ARTICLE 5
## NO ORAL CHANGE

This Note may not be modified, amended, restated, waived, extended, consolidated, supplemented, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, restatement, waiver, extension, consolidation, supplement, change, discharge or termination is sought.

## ARTICLE 6
## WAIVERS

Borrower and all others who may become liable for the payment of all or any part of the Obligations do hereby severally waive presentment and demand for payment, notice of dishonor, notice of intention to accelerate, notice of acceleration, protest and notice of protest and non-payment and all other notices of any kind. No release of any security for the Obligations or extension of time for payment of this Note or any installment hereof, and no alteration, modification, amendment, restatement, waiver, extension, consolidation, supplement or change of any provision of this Note, the Loan Agreement or the other Loan Documents made by agreement between Lender or any other Person shall release, alter, modify, amend, restate, waive, extend, consolidate, supplement, change, discharge, terminate or affect the liability of Borrower or any other Person who may become liable for the payment of all or any part of the Obligations under this Note, the Loan Agreement or the other Loan Documents. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Loan Agreement or the other Loan Documents. If Borrower is a partnership or limited liability company, the agreements herein contained shall remain in force and be applicable, notwithstanding any changes in the Persons comprising the partnership or limited liability

2

company, and the term "**Borrower**," as used herein, shall include any alternate or successor partnership or limited liability company, but any predecessor partnership or limited liability company and their partners or members or managers shall not thereby be released from any liability unless expressly agreed to otherwise. If Borrower is a corporation, the agreements contained herein shall remain in full force and be applicable notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term "**Borrower**" as used herein, shall include any alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder. Nothing in the foregoing two sentences shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, limited liability company or corporation, as applicable, which may be set forth in the Loan Agreement, the Deed of Trust or any other Loan Document.

## ARTICLE 7
## TRANSFER

Upon the transfer or endorsement of this Note, Borrower hereby waiving notice of any such transfer or endorsement, Lender may deliver its right, title and interest in all collateral mortgaged, granted, pledged or assigned pursuant to the Loan Documents, or any part thereof, to the transferee who shall thereupon become vested with all the rights herein or under applicable law given to Lender with respect thereto, and Lender shall thereafter forever be relieved and fully discharged from any liability or responsibility arising thereafter in the matter; but Lender shall retain all rights hereby given to it with respect to any liabilities and the collateral not so transferred.

## ARTICLE 8
## GOVERNING LAW

THIS NOTE IS GOVERNED BY THE LAWS OF THE STATE OF COLORADO (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS).

## ARTICLE 9
## NOTICES

All notices or other written communications hereunder shall be delivered in accordance with **Section 9.2** of the Loan Agreement.

3

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the day and year first above written.

BORROWER:

7677 EAST BERRY AVENUE ASSOCIATES, L.P.,
a Delaware limited partnership

By:    EDC Denver I, LLC,
       a Delaware limited liability company,
       its General Partner

       By: _____
           Name: Zachary M. Davidson
           Title:  Manager

4

**EXHIBIT F**

**Real Property Legal Description**

**LEGAL DESCRIPTION**

PARCEL A:
LOTS 6 AND 7, THE LANDMARK FILING NO. 1 AMENDED PLAT, COUNTY OF
ARAPAHOE, STATE OF COLORADO.


PARCEL B:
CONDOMINIUM UNITS 3, 4 AND 5,
LANDMARK LOT 2 RETAIL CONDOMINIUM, ACCORDING TO THE CONDOMINIUM
MAP RECORDED APRIL 29, 2008 UNDER RECEPTION NO. B8049373, AND AS
DEFINED AND DESCRIBED IN THE CONDOMINIUM DECLARATION OF LANDMARK
LOT 2 RETAIL CONDOMINIUM RECORDED APRIL 29, 2008 UNDER RECEPTION NO.
B8049374, COUNTY OF ARAPAHOE, STATE OF COLORADO.


PARCEL C:
ALL OF THE LANDMARK TOWERS CONDOMINIUMS,

ACCORDING TO THE CONDOMINIUM MAP THEREOF, RECORDED ON MAY 5, 2008
UNDER RECEPTION NO. B8051568, AS SUPPLEMENTED BY THAT CERTAIN
CONDOMINIUM MAP OF LANDMARK TOWERS CONDOMINIUM SUPPLEMENT NO.
1, RECORDED DECEMBER 26, 2008 UNDER RECEPTION NO. B8139382, ALL IN THE
RECORDS OF THE OFFICE OF THE CLERK AND RECORDER OF THE COUNTY OF
ARAPAHOE, COLORADO, AND AS DEFINED AND DESCRIBED IN THE LANDMARK
TOWERS CONDOMINIUM DECLARATION RECORDED ON MAY 5, 2008 UNDER
RECEPTION NO. B8051569, AND ALL AMENDMENTS AND/OR SUPPLEMENTS
THEREOF, IN SAID RECORDS, AND SUBJECT TO THE AMENDED AND RESTATED
DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS OF THE
LANDMARK VILLAGE CENTER MASTER COMMUNITY RECORDED MARCH 26, 2008
UNDER RECEPTION NO. B8035117, AND ALL AMENDMENTS AND/OR
SUPPLEMENTS THEREOF, IN THE RECORDS OF THE OFFICE OF THE CLERK AND
RECORDER OF THE COUNTY OF ARAPAHOE, COLORADO,

EXCEPT THE FOLLOWING UNITS:
403 THROUGH 409, 411 THROUGH 416 AND 418,
501, 504 THROUGH 506, 508 THROUGH 513, 515 THROUGH 516 AND 518,
601, 603, 605 THROUGH 616 AND 618,
701, 703 THROUGH 710, 712 THROUGH 714 AND 718,
801, 804, 806 THROUGH 807, 809, 811, 813, 815 AND 818,

[Exhibit to Debtor In Possession Loan Agreement]

901, 904, 906, 909, 911, 913 THROUGH 914, 916 AND 918,
1003 THROUGH 1004, 1006 THROUGH 1007, 1009, 1012 AND 1014 THROUGH 1015,
1101, 1104, 1106 THROUGH 1107, 1109, 1111 AND 1113 THROUGH 1114,
1201, 1203, 1206 THROUGH 1207, 1209, 1211, 1213 THROUGH 1214, 1216 AND 1218, 1403
THROUGH 1404, 1407, 1409, 1411, 1413 THROUGH 1414, 1416 AND 1418,
506-2 THROUGH 507-2 AND 513-2,
602-2, 605-2, 611-2 AND 613-2,
705-2, 711-2, 713-2 AND 715-2,
801-2 AND 810-2,
901-2, 912-2 AND 915-2,
1005-2, 1007-2 AND 1009-2,
1112-2,
1202-2, 1206-2 AND 1212-2,
1615-2,

AND EXCEPTING THE EXCLUSIVE RIGHT TO USE PARKING SPACES,
212, 213, 232, 234, 442 AND 443,

AND EXCEPTING THE EXCLUSIVE RIGHT TO USE STORAGE SPACES
219, 229 AND 415.

COUNTY OF ARAPAHOE, STATE OF COLORADO.

[Exhibit to Debtor In Possession Loan Agreement]

## EXHIBIT G

### Residential Unit Sales Target

| | |
|---|---|
| October 2009 | 0 |
| November 2009 | 0 |
| December 2009 | 0 |
| January 2010 | 0 |
| February 2010 | 0 |
| March 2010 | 0 |
| April 2010 | 1 |
| May 2010 | 2 |
| June 2010 | 3 |
| July 2010 | 4 |
| August 2010 | 5 |
| September 2010 | 6 |
| October 2010 | 7 |
| November 2010 | 8 |
| December 2010 | 9 |
| January 2011 | 10 |
| February 2011 | 11 |
| March 2011 | 12 |
| April 2011 | 13 |
| May 2011 | 14 |
| June 2011 | 15 |
| July 2011 | 16 |
| August 2011 | 17 |
| September 2011 | 18 |
| October 2011 | 19 |
| November 2011 | 20 |
| December 2011 | 21 |
| January 2012 | 22 |

[Exhibit to Debtor In Possession Loan Agreement]

**EXHIBIT H**

**Form of Borrowing Certificate**

(TO BE PROVIDED)

[Exhibit to Debtor In Possession Loan Agreement]

**SCHEDULE 3.8**

<u>**Litigation**</u>

(TO BE PROVIDED)

[Exhibit to Debtor In Possession Loan Agreement]

**SCHEDULE 3.11**

**Significant Contracts**

(TO BE PROVIDED)

[Exhibit to Debtor In Possession Loan Agreement]