UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re<br><br>7677 EAST BERRY AVENUE ASSOCIATES, L.P.,<br><br>EIN: 20-2138800<br><br>Debtor. | Case No. 09-28000<br>Chapter 11 |

ORDER AUTHORIZING POST-PETITION
FINANCING PURSUANT TO 11 U.S.C. § 364 AND
GRANTING PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE
EXPENSE STATUS PURSUANT TO 11 U.S.C. § 364

Before the Court is the Motion for Approval of Post-Petition Financing of 7677 East Berry Avenue Associates, L.P. (the "Debtor"), as debtor and debtor in possession in the above-captioned Chapter 11 reorganization case, dated August 30, 2009 (the "Motion"), and, by the Motion, the Debtor seeks an order (the "Order") pursuant to section 364(c) and (d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 202:

    1.    Authorizing the Debtor to execute, deliver and perform that certain Debtor in Possession Loan Agreement between the Debtor and Carmel Landmark LLC (the "Lender")[1], dated as of August 30, 2009 (the "Agreement," and together with the security agreements to the extent requested and other documents relating thereto, the "Loan Documents"), a copy of which is attached hereto and incorporated herein as Exhibit A; and

2.   Authorizing the Debtor to obtain post-petition secured financing (the "DIP Term Loan") pursuant to the Loan Documents up to the principal amount of $15,000,000, with liens and priority, subject to the Carve-Out (as defined below), over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, and senior priming liens pursuant to Bankruptcy Code § 364(c) and (d), to fund the continued operation of the Debtor's business as debtor in possession under the Bankruptcy Code;

It appearing that the relief requested in the Motion is necessary to provide the Debtor with sufficient capital to continue operations, to preserve the going concern value of its business, and to preserve the value of its property; and it further appearing that notice of the Motion is sufficient and complies with the requirements of Bankruptcy Rules 4001(c) and 9014 and Local Bankruptcy Rule 202; and for good cause shown;

NOW, THEREFORE, based upon the Motion, after due deliberation and sufficient cause appearing therefor, the Court finds as follows:

A.   On August 30, 2009 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued in the management and operation of its business as debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed in this case, and no official committee of unsecured creditors has been formed as of the date hereof.

B.   This Court has core jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The statutory predicates for

---

[1]   Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Loan Documents.

relief are Bankruptcy Code §§ 105, 361, 364, and 507, and Bankruptcy Rule 4001(c). Venue of this case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    C.    It is in the best interests of the Debtor's estate to enter into the Loan Documents.

    D.    The Debtor has a need to obtain financing to:

        1.    permit the orderly continuation of its business so it may maximize value for the benefit of the creditors and the estate; and

        2.    satisfy other working capital needs.

Specifically, the capital provided by the DIP Term Loan will allow the Debtor to continue to sell its condominium residences, lease its commercial retail space and complete its real estate development, thereby preserving and increasing the value of the Debtor's estate. Absent the available monies, the Debtor's projected revenues will be insufficient to conduct business operations, and the Debtor's estate would be immediately and irreparably harmed.

    E.    The Debtor is unable to obtain (i) adequate unsecured credit allowable under Bankruptcy Code § 503(b)(l) as an administrative expense, (ii) unsecured credit with the enhanced priority afforded by Bankruptcy Code § 364(c), (iii) secured credit pursuant to Bankruptcy Code § 364(c)(2), or (iv) secured credit with a junior lien pursuant to Bankruptcy Code § 364(c)(3). A loan in the amount provided by the DIP Term Loan is unavailable to the Debtor without the Debtor granting to the Lender pursuant to Bankruptcy Code § 364(c) and (d), with respect to all indebtedness and obligations of the Debtor under the Loan Documents, other than the Carve-Out:

        1.    A superpriority claim having priority, pursuant to Bankruptcy Code § 364(c)(1), over any and all administrative expenses of the kind specified in Bankruptcy Code §§ 503(b) or 507(b); and

  2. A valid and fully perfected first-priority priming security interest and lien pursuant to Bankruptcy Code § 364(d)(1) on all property of the Debtor's estate, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired except as provided to this Order and in the Loan Documents.

F. The Court finds that the Loan Documents have been negotiated in good faith and at arm's-length between the Debtor and the Lender, and any credit extended to the Debtor by the Lender pursuant to the Loan Documents, and this Order shall be deemed to have been extended by the Lender in good faith, as that term is used in Bankruptcy Code § 364(e).

G. The ability of the Debtor to obtain sufficient working capital and liquidity under the Loan Documents is vital to the Debtor's estate and creditors.  The liquidity to be provided under the Loan Documents will enable the Debtor to continue to operate its business in the ordinary course and preserve the value of the Debtor's business and property.  Good cause has, therefore, been shown for the relief sought in the Motion.

H. The interest of any pre-petition or other lienholder is adequately protected because there is substantial equity in the collateral securing the debt owed to any such lienholder and because funds advanced by the Lender will result in preservation and improvement of the value of the collateral securing such liens.

I. The terms and conditions of the DIP Term Loan, as described in the Loan Documents, are fair, reasonable and the best available under the circumstances.

J. The notice given by the Debtor of the Motion constitutes good and sufficient notice of the Motion in accordance with Bankruptcy Rules 4001(c) and 9014 and Bankruptcy Code § 102(1), as required by Bankruptcy Code § 364(c) and (d) in light of the nature of the

relief requested in the Motion, on the following parties: (a) the office of the United States Trustee for the District of Colorado (the "U.S. Trustee"); (b) those parties identified as the Debtor's twenty (20) largest unsecured creditors pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; (d) the Colorado Department of Revenue; (e) all parties that have a potentially secured claim against the Debtor's property that serves as collateral for the DIP Term Loan; (f) all parties having filed requests for notices in these cases; and (g) all creditors known to the Debtor.

Based upon the Motion and good cause appearing,

IT IS ORDERED that:

1. The Motion shall be, and hereby is, granted in all respects, and all objections, if any, have either been resolved or are overruled.

2. The Debtor is immediately authorized to borrow, pursuant to the Loan Documents, the DIP Term Loan for the purposes, and upon the terms and conditions, provided for by the Loan Documents and this Order.

3. Subject only to the Carve-Out and the exceptions expressly set forth in the Loan Documents and this Order, as security for all of the Debtor's obligations and indebtedness arising under the Loan Documents, the Lender hereby is granted (effective immediately and without the necessity of the execution by the Debtor of security agreements or otherwise):

    a. A superpriority claim having priority, pursuant to Bankruptcy Code § 364(c)(1) over any and all administrative expenses of the kind specified in Bankruptcy Code §§ 503(b) or 507(b); and

    b. A valid and perfected first priority priming senior security interest and lien pursuant to Bankruptcy Code § 364(d)(1) on all property of the Debtor's estate, of any kind or nature whatsoever, real or personal, now existing or

hereafter acquired or created (the "Collateral") senior and superior to all liens, claims and encumbrances except as provided in paragraph 6, below.

4. The general partner of the Debtor, EDC Denver I, LLC, acting through Zachary M. Davidson, (the "General Partner"), is hereby authorized to execute and deliver the Loan Documents, such execution and delivery to be conclusive of the authority to act in the name of the Debtor. The obligations of the Lender to extend loans under the Loan Documents are expressly subject to the conditions provided for in the Loan Documents.

5. Except for the Carve-Out (as defined below), no costs or expenses of administration of the Debtor's Chapter 11 case or any future proceeding or case which may result therefrom (including in any superseding chapter 7 case), including, without limitation, professional fees allowed and payable under Bankruptcy Code §§ 330 and 331 that have been or might be incurred in these cases, shall be charged against the assets encumbered pursuant to the Loan Documents, pursuant to Bankruptcy Code § 105, § 506(c), § 552(b) or otherwise, without the prior written consent of the Lender, and no such consent shall be implied from any action, inaction, or acquiescence by the Lender.

6. The liens, security interests and super-priority administrative expense claims of the Lender shall be subject to and subordinate only to (a) amounts payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Court (collectively, the "UST/Clerk Fees"), and (b) allowed, unpaid fees and expenses of attorneys, accountants, and other professionals retained in these cases by the Debtor or by any statutory committee of creditors appointed in these cases (the "Professionals") pursuant to Bankruptcy Code §§ 327, 328, and 1103; provided, however, the amount entitled to priority under this paragraph shall not exceed [$300,000.00] outstanding in the aggregate at any time (plus any retainers held by such

professionals at the time) (together with the UST/Clerk Fees, the "Carve-Out"); provided, further, however, that the Carve-Out shall not include, apply to, or be available for any fees or expenses incurred by any party, including the Debtor, in connection with (i) a request for authorization to obtain additional post-petition financing or other financial accommodations pursuant to Bankruptcy Code § 364(c) or (d) that does not repay in full in cash the DIP Term Loan or (ii) any act which has the effect of adversely modifying or compromising the rights and remedies of the Lender as set forth in the Loan Documents, or which results in the occurrence of an Event of Default under the Loan Documents.  The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtor, the Lender, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.  The Carve-Out shall be free and clear of all liens, claims and encumbrances granted hereunder and shall be subject only to the allowed claims of the Professionals for such fees and expenses as may be awarded by the Court under Bankruptcy Code §§ 328 or 330.

7. So long as no Event of Default shall have occurred and be continuing under the Loan Documents, (i) the Debtor shall be permitted to pay current administrative expenses up to the budgeted amount allowed and payable under the Bankruptcy Code, including sections 330 and 331, and of the kind specified in Bankruptcy Code § 503(b) incurred in the ordinary course of its business, subject to the terms of the Loan Documents, and (ii) such payments shall not be applied to reduce the Carve-Out.  Any payment or reimbursement made to any Professional in accordance with the Bankruptcy Code or otherwise on or after the occurrence of an Event of Default in respect of any allowed fees and expenses shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

8. The security interests and liens granted to the Lender hereunder: (a) shall not be subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code § 364(d) or otherwise other than the Carve-Out; and (b) are deemed valid, perfected and enforceable liens at all times from and after the date of entry of this Order, without regard to whether such liens and security interests are perfected under applicable non-bankruptcy law.

9. During the term of the DIP Term Loan, no additional credit pursuant to Bankruptcy Code § 364(c) or (d) shall be permitted, except that a new loan shall be permitted, subject to approval by this Court, (i) that offers equal terms as or better terms than the DIP Term Loan and (ii) that provides repayment in full in cash of the DIP Term Loan. The Debtor hereby irrevocably waives any rights to, and will not at any time during its Chapter 11 case or any subsequent or converted case: (i) file a motion seeking authority to grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to Bankruptcy Code § 364(c) and (d) or otherwise, except in connection with additional post-petition financing or other financial accommodations pursuant to Bankruptcy Code § 364(c) or (d) that will repay in full in cash the DIP Term Loan; (ii) propose or support a plan of reorganization that does not provide for the payment in cash in full satisfaction of the DIP Term Loan on the effective date of such plan; (iii) challenge the application of any payments by the Lender authorized by this Order pursuant to Bankruptcy Code § 506(b) or otherwise; or (iv) seek relief under the Bankruptcy Code, including without limitation, under Bankruptcy Code § 105, to the extent any such relief would restrict or impair the rights and remedies of the Lender as provided in this Order and the Loan Documents; provided, however, that the Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the Lender.

10. Interest on the sums advanced and owed under the DIP Term Loan shall accrue at the rate provided in the Loan Documents with interest to be paid as provided in the Loan Documents. All obligations under the DIP Term Loan shall become due and payable, without notice or demand, on the Maturity Date, or on earlier termination or acceleration as provided in the Loan Documents.

11. In making the decision to make the DIP Term Loan, administering the DIP Term Loan, and extending other financial accommodations to the Debtor under the Loan Documents or to collect the indebtedness and obligations of the Debtor, the Lender (a) shall not owe any fiduciary duty to the Debtor, its creditors, partners or estates; and (b) shall not be considered to be exercising control over any operations of the Debtor or acting in any way as a responsible person, an owner or an operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901, et seq., as either may be amended from time to time, or any similar federal or state statute). Nothing in this Order, the Loan Documents, or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the Lender of any liability for any claims arising from the pre-petition or post-petition activities of the Debtor or any of its affiliates in the operation of its businesses or in connection with its restructuring efforts.

12. The Debtor and its general partner, EDC Denver I, LLC are authorized to do and perform all acts; to make, execute and deliver all instruments and documents; and to consummate the transactions described in the Loan Documents. Further, the Debtor is authorized to make all payments and transfers of property of the Debtor's bankruptcy estate (as defined under

Bankruptcy Code § 541) to the Lender as provided, permitted, and/or required under the Loan Documents, which payments and transfers shall not be avoidable or recoverable from the Lender under sections 547, 548, 550, 553 or any other provision of the Bankruptcy Code or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law, or otherwise.  The Lender shall apply the proceeds of the Collateral or any other amounts or payments received to the Debtor's indebtedness under the Loan Documents in accordance with the terms and conditions of the Loan Documents.  Without limiting the generality of the foregoing, the Debtor is authorized and directed, without further order of this Court, to pay the Lender for all reasonable past, present and future costs and expenses, including, without limitation, all professional fees and legal expenses, paid, or incurred by the Lender in connection with the financing transactions as provided in this Order and the Loan Documents.  Such payments shall be made within ten (10) days of Debtor's receipt of any invoice from Lender. None of such costs, fees, charges, and expenses of the Lender shall be subject to Court approval, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

13. The automatic stay provisions of Bankruptcy Code § 362 are vacated and modified to the extent necessary to permit the Lender to exercise, (i) immediately upon the occurrence of an Event of Default, all rights and remedies under the Loan Documents other than those rights and remedies against the Collateral, and (ii) upon the occurrence and during the continuation of an Event of Default, and the giving of five business days' notice to the Debtor (with a copy to counsel for any Committee and the United States Trustee), all rights and remedies against the Collateral provided for in the Loan Documents and this Order; provided, however, no notice shall be required for the Lender to (a) terminate the making of loans under the Loan Documents, (b)

freeze monies or balances in the Debtor's accounts, (c) set off monies or balances of the Debtor in accounts maintained or controlled by the Lender, (d) accelerate the Obligations, and (e) charge the 18% Interest Rate.  In any hearing regarding the Lender's exercise of rights or remedies under this paragraph, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor hereby waives any right to seek relief, including, without limitation, under Bankruptcy Code § 105, to the extent such relief would in any way impair or restrict the rights and remedies of the Lender set forth in this Order or the Loan Documents.  In no event shall the Lender be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the Collateral or the Obligations.  The Lender's delay or failure to exercise rights and remedies under the Loan Documents or this Order shall not constitute a waiver of Lender's rights, unless the waiver is made pursuant to a written instrument executed in accordance with the terms of the Agreement.

14.     Upon the occurrence and during the continuation of an Event of Default under the Loan Documents or of this Order, the Lender shall have no further obligation to provide financing under the Loan Documents or Agreement as approved by this Order, and the authorization to use Cash Collateral under the terms of this Order shall automatically terminate; provided, however, that if the Debtor's right to use Cash Collateral has been terminated pursuant to the provisions of this Order, such right may be extended only upon (i) consent of the Lender, (ii) the Obligations having been otherwise paid in full in cash, or (iii) further Order of this Court entered upon and after appropriate notice and opportunity for a hearing being provided to the Lender.  The Lender shall have no obligation to agree to such an extension under the circumstances and may elect or not elect to agree to such an extension as it determines in its sole and absolute discretion.

15. The Loan Documents and the provisions of this Order shall be binding upon the Lender and the Debtor and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estates of the Debtor whether in this case or any subsequent Chapter 7 case) and shall inure to the benefit of the Lender and the Debtor and (except with respect to any trustee hereinafter appointed or elected for the estate of the Debtor) their respective successors and assigns.

16. As provided in Bankruptcy Code § 364(e), if any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtor to the Lender prior to written notice to the Lender of the effective date of such reversal, stay, modification or vacation, or (b) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the Loan Documents. Notwithstanding any such reversal, stay, modification or vacation, any indebtedness, obligation or liability incurred by the Debtor to the Lender prior to written notice to the Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the Loan Documents and the provisions of this Order, and the Lender shall be entitled to all the rights, remedies, privileges and benefits, granted herein and pursuant to the Loan Documents with respect to all such indebtedness, obligation or liability.

17. The liens, security interests, and priorities granted to the Lender pursuant to this Order and the Loan Documents with respect to all property of the Debtor's estate shall be perfected by operation of law immediately upon entry of this Order by the Court.

18. The Lender shall not be required to file or record financing statements, notices of lien or similar instruments in any jurisdiction or to take any other action to validate and perfect

any of the security interests and liens granted to it pursuant to this Order (including, without limitation, the execution of any control, lockbox, deposit account, or similar documents or agreements). If the Lender, in its sole discretion, chooses to obtain consents from any licensor or similarly situated party-in-interest, to file financing statements, Deeds of Trust, assignments of rent, notices of lien or similar instruments, to record financing statements, mortgages or deeds of trust, or to otherwise confirm perfection of such security interests and liens, (i) the Lender is authorized and empowered to file or record financing statements, mortgages, deeds of trust or similar instruments which secure the Obligations; (ii) all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Order; and (iii) no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

19. The Lender may file a copy of this Order as a mortgage, financing statement or similar perfection document with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property; and federal, state and local government agencies, authorities and instrumentalities that have jurisdiction over the Collateral are hereby directed to accept for filing a certified copy of this Order or an acknowledgment of this Order.

20. All fees and costs and/or expenses payable by the Debtor in connection with the recording, filing and insuring of financing statements and mortgages to confirm the security interests granted or authorized by this Order or the Loan Documents are hereby approved and shall be promptly paid in full by the Debtor without the necessity of the Debtor or the Lender filing any further application with the Court for approval or payment of such fees, costs and/or expenses.

21. The Lender's failure to seek relief or otherwise exercise its rights and remedies under the Loan or this Order shall not constitute a waiver of the Lender's rights hereunder, thereunder, or otherwise.

22. Upon the payment in full of the Loan and termination of the rights and obligations arising under the Loan Documents (which payment and termination shall be on terms and conditions acceptable to the Lender), the Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Loan Documents (including, without limitation, any obligation or responsibility to pay or otherwise fund the Carve-Out).

23. The terms and provisions of this Order shall be effective upon entry of this Order. All actions taken pursuant to this Order and the terms of this Order shall survive the entry of, and shall govern with respect to any conflict with, any order that may be entered confirming a plan of reorganization of the Debtor or converting the Chapter 11 case of the Debtor to a Chapter 7 case. No such order will alter or impair the rights of the Lender under this Order without the prior written consent of the Lender. The terms and provisions of this Order as well as the liens and security interests and all rights of the Lender and all obligations of the Debtor created or arising pursuant to the Loan Documents and this Order shall continue in this Chapter 11 case and any superseding proceedings under the Bankruptcy Code, and such liens and security interests shall maintain their priority as provided by this Order until the DIP Term Loan is satisfied by payment in full and is thereby discharged.

24. Unless and until all obligations of the Debtor created or arising pursuant to the Loan Documents and this Order shall have been paid in full in cash on terms and conditions acceptable to the Lender, the Debtor shall not seek, and it shall constitute an Event of Default if

the Debtor seeks, or if there is entered, an order dismissing its Chapter 11 case. If an order dismissing the Chapter 11 case under Bankruptcy Code § 1112 or otherwise is at any time entered, such order shall provide (in accordance with Bankruptcy Code §§ 105 and 349) that the superpriority claims, liens and security interests, replacement security interests, and other protections granted to the Lender pursuant to the Loan Documents and this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all of the Debtor's obligations in respect thereof shall have been paid and satisfied in full (and that such superpriority claims, liens, and other protections, shall, notwithstanding such dismissal, remain binding on all parties in interest).

25.     To the extent any of the terms and conditions of the Loan Documents are in conflict with the terms of this Order, the provisions of this Order shall control.

26.     Upon entry of this Order, the Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtor which in any way relates to the Collateral. Notwithstanding the foregoing, the Debtor shall provide any and all notices or documentation required by insurers to evidence the naming of Lender as additional insured and loss payee.

27.     All obligations under the Loan Documents shall constitute valid and binding obligations of the Debtor enforceable against it, and its successors and assigns, in accordance with their terms and the terms of this Order. Except with respect to the Lender, its delegates, successors and assigns, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

28.     The Debtor, with the express written consent of the Lender, may enter into any amendments, consents, waivers or modifications to the Loan Documents without the need for

further notice and hearing or any order of this Court, provided that such amendments, consents, waivers or modifications do not materially and adversely affect the rights of any creditor or other party in interest unless any such affected creditor or party in interest consents to such modification or amendment. The authorization to borrow pursuant to this Order applies to any loan on terms no less favorable to the estates, regardless of the identity of the lender provided that Lender is paid its Break-up Fee and reimbursed for all its expenses provided by the Loan Documents.

29. The liens, lien priority, administrative priorities and other rights and remedies with respect to the Debtor granted to the Lender pursuant to the Agreement, the Bankruptcy Court orders, and the other Loan Documents (specifically including, but not limited to, the existence, perfection and priority of the liens and security interests provided herein and therein, and the administrative priority provided herein and therein) shall not be modified, altered or impaired in any manner by any other financing or extension of credit or incurrence of indebtedness by Debtor (pursuant to Bankruptcy Code § 364 or otherwise), by any dismissal or conversion of the Debtor's Chapter 11 case, or by the confirmation of a plan of reorganization of the Debtor's Chapter 11 case which does not (i) contain a provision for termination of the Agreement and payment in full in cash of all Obligations of the Debtor hereunder and under the other Loan Documents on or before the effective date of such plan or plans upon entry thereof and (ii) provide for the continuation of the liens and security interests granted to the Lender and the priorities thereof until the earlier of (A) such plan effective date, and (B) the date the Obligations are paid in full in cash and the Agreement is terminated, or by any other act or omission whatsoever.

30. This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Order.

31. This Order shall take effect immediately upon execution, notwithstanding the possible application of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Order on the Court's docket in this Chapter 11 case.

Dated: _____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

