**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re<br><br>7677 EAST BERRY AVENUE<br>ASSOCIATES, L.P., ET AL.<br><br>Debtors. | Case Nos. 09-27906, 09-27907, 09-28000<br><br>Jointly Administered under<br>Case No. 09-28000-MER<br><br>Chapter 11 |

**MOTION FOR APPROVAL OF POST-PETITION FINANCING
FROM HYPO REAL ESTATE CAPITAL CORPORATION AND
FOR AUTHORITY TO USE CASH COLLATERAL**

7677 East Berry Avenue Associates, L.P. (the "Debtor") moves this Court for an order pursuant to sections 364(c) and (d) of Title 11 of the United States Code (the "Bankruptcy Code"), Fed. R. Bankr. Pro. 4001(c), and L.B.R. 202, authorizing the Debtor to use cash collateral and to obtain post-petition financing in the form of a construction loan commitment of up to $30,000,000 (the "Hypo Financing") to the Debtor from Hypo Real Estate Capital Corporation as Agent, and the lenders participating in the Hypo Financing (collectively, "Hypo"). In support of the Motion, the Debtor states as follows:

**Introduction**

1. As set forth in greater detail below, Hypo has agreed, subject to certain conditions, to fund the Debtor's post-petition operations and completion of its construction with a loan of up to $30,000,000 secured by substantially all of the Debtor's assets, pursuant to the term sheet executed by the parties on October 1, 2009 (the "Term Sheet," a copy of which is attached as Exhibit 1).[1] The proposed loan provides necessary and sufficient funding for the Debtor to operate in bankruptcy, make important expenditures, preserve its assets, and formulate and implement a reorganization plan or other transaction that maximizes value for the benefit of all stakeholders.

2. The Debtor previously proposed a debtor-in-possession loan from Carmel Landmark, LLC, in the amount of up to $15,000,000 (the "Carmel Loan"). Hypo and other parties objected to the Carmel Loan. The Debtor ultimately determined in its reasonable business judgment that the Hypo Financing provides the Debtor with its best opportunity to rehabilitate and complete construction without the unpredictability and costs associated with litigation. The Hypo Financing provides more favorable pricing and terms than the Carmel Loan and presents a better opportunity for obtaining consensus among the Debtor's stakeholders as to the Debtor's reorganization.

---

[1] The Debtor will file a copy of the definitive loan agreement and ancillary documents once they have been prepared and executed by the parties thereto. The Debtor also will file a proposed form of a final order approving cash collateral use and authorizing the Hypo Financing prior to the objection deadline. This form of proposed order is being filed by the Debtor as required by General Procedure Order 2001-8.

10732\30\1322863.6

**The Debtor's Operations and Need for Post-Petition Financing**

3. The Debtor is a Delaware limited partnership that develops and operates a luxury residential, retail, and entertainment development in Greenwood Village, Colorado (the "Project"). The Debtor has assets with a total value in excess of $100 million, including two residential condominium towers, The Landmark and The Meridian, and retail and entertainment space called The Village Shops, which contain approximately 185,000 square feet. Of the 276 total residences at the Project, 163 have been sold or are under contract and range in size from 800 to 2,500 square feet. The Debtor broke ground on the Project in 2004 and opened The Landmark in 2006 and The Meridian in 2007.

4. EDC Denver I, LLC (the "General Partner") is the general partner of the Debtor. Everest Holdings, LLC ("Everest") is the sole member of the General Partner. On August 28, 2009, Everest and the General Partner each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, Case Nos. 09-27906 and 09-27907, respectively. The Debtor filed its voluntary petition for relief under Chapter 11 on August 30, 2009. The three Chapter 11 cases are jointly administered under the Debtor's case number.

5. The Debtor's goal is to market and sell its unsold condominium residences and lease its remaining retail space at the best possible prices based on current market conditions, enabling it to pay off its debts and to achieve profitability. To accomplish this goal, however, the Debtor must be able to continue operating in Chapter 11 for some time and that, in turn, requires post-petition financing.

6. Absent the monies and cash collateral available under the Term Sheet, the Debtor's projected revenues will be insufficient to conduct ordinary business operations, complete its real estate development, and preserve the value of the Debtor's estate. The Debtor was able to obtain the Carmel Loan in the amount of up to $15,000,000. However, given the more favorable pricing and terms of the Hypo Financing, the Debtor determined that the Hypo Financing afforded the best outcome for its stakeholders.

**The Pre-Petition Secured Debt**

7. Hypo and the other participating lenders in the Debtor's prepetition credit facility have a first-priority secured debt (the "Hypo Pre-Petition Debt") with a currently outstanding principal amount of approximately $90,000,000, secured by a deed of trust and an assignment of rents on the Debtor's property.

8. Ascent Group, Inc., Beck Development, Blue Architects, Buchanan Yonushewski Group, LLC, Code Fire LLC, Colorado Comfort Products, Inc., Dal Tile Corporation, Gallegos Masonry, Inc. dba The Gallegos Corporation, Global Engineering Group, Goldsmith Gulch Sanitation District, Heggem-Lundquist Paint Co., Hydro Dynamic Services, Julia Koeppe Architects, Ken Caryl Glass, Inc., Legacy Mechanical, Milender White Construction, Project One Integrated Services, Rogers and Sons Inc., RK Mechanical Inc., Schindler Elevator Corporation, Sedita Manufacturing, Superior Plaster & Drywall, and Superior Roofing (the "Lien Creditors" and together with Hypo, the "Pre-Petition Secured Creditors") have asserted liens against the Debtor's property. The aggregate amount of the Lien Creditors' asserted claims

totals approximately $3,000,000 (together with the Hypo Pre-Petition Debt, the "Pre-Petition Secured Debt").

### Summary of Material Provisions

9. The terms of the Hypo Financing are the result of arms' length negotiations between the Debtor and Hypo. The following summarizes the terms of the Hypo Financing.

- Amount. Up to $30,000,000 construction loan commitment, subject to Hypo's approval of a DIP budget to be submitted by the Debtor and a loan to value ratio of no greater than 94%. (Term Sheet at 1).

- Use of funds. Proceeds from the Hypo Financing will be used for (i) costs of the Debtor's Chapter 11 bankruptcy administration approved by the Court, (ii) project costs necessary to complete construction of the Project, including the cost to complete the sell-out and settlement phase of the residential condominium units and the stabilized lease-up of the retail center, but specifically excluding the build-out of retail parcel K and unit upgrade and custom upgrade work; and (iii) interest payments on the Hypo Financing and the Hypo Pre-Petition Debt, in each case as set forth in a DIP Budget acceptable to Hypo. (Term Sheet at 1-2).

- Liens. First priority priming liens and super-priority administrative expense claims over any and all pre-existing liens and claims on substantially all of the Debtor's assets, excluding (i) the liens of FirsTier Bank on the assignment of the Sales Tax Rebate Agreement dated November 11, 2005 between the Debtor and the City of Greenwood Village and (ii) the Debtor's causes of action under Chapter 5 of the Bankruptcy Code and the proceeds thereof. (Term Sheet at 2-3).

- Priority. Super-priority status pursuant to Bankruptcy Code § 364(c)(1), having priority over all administrative expense claims, subject only to the Carve-Out (as defined below). (Term Sheet at 2-3).

- Interest. The Hypo Financing will accrue interest at the one-month LIBO Adjusted Rate plus LIBOR Margin of 7.50%. Interest shall be payable monthly in arrears on a current pay basis. (Term Sheet at 3).

- Interest Rate Cap Agreement: An interest rate cap agreement will be required at a one-month LIBOR strike rate not to exceed 2% and a notional monthly schedule acceptable to Hypo. The cap provider may be an affiliate of Hypo or a third-party with an A minus or better credit rating and otherwise acceptable to Hypo. (Term Sheet at 3).

- Fees. An up-front fee of $300,000 (1.00% of the amount of the Hypo Financing) will be due and payable at closing. (Term Sheet at 2).

- Term/Maturity. The earlier of (a) eighteen months from closing unless extended as outlined below (the "Initial Maturity"), (b) any substantial reorganization of the Debtor

10732\30\1322863.6                                     3

approved by the Court, (c) conversion to Chapter 7 or appointment of a Chapter 11 trustee, (d) dismissal of the Debtor's bankruptcy case, (e) a relief of automatic stay granted by the Court permitting any junior lienors to pursue or foreclose any of the collateral, or (f) acceleration of maturity due to an event of default. The loan may be extended by the Debtor for a period of one year from the Initial Maturity subject to (i) a sixty day extension notice delivered to Hypo, (ii) no event of default, (iii) a loan to value ratio of no greater than ninety percent (90%), (iv) payment of the extension fee (2.00% of the then current Hypo Financing loan commitment), and (v) an interest rate cap agreement acceptable to Hypo. (Term Sheet at 2).

- ▪ Events of Default. Ordinary and customary events of default for a DIP loan of this type, as well as defaults tied to maintenance of the loan to value ratio, mandatory amortization, and the construction completion dates. (Term Sheet at 7).

- ▪ Cash Collateral Use. Hypo will consent to the use of cash collateral. After the closing date, as adequate protection for the use of cash collateral, Hypo and the other participating lenders in the Debtor's prepetition credit facility shall receive (i) post-petition interest payments on the Hypo Pre-Petition Debt as follows: LIBO Adjusted Rate plus LIBOR margin of 2.50%, provided, however, that with respect to the Phase I $7 million advance only, the LIBOR Margin means 6.00%, with interest payable monthly in arrears on a current pay basis, (ii) replacement liens on substantially all of the Debtor's assets and (iii) superpriority administrative expense claims. (Term Sheet at 2).

- ▪ Lockbox Accounts. Lockbox accounts subject to deposit account control agreements will be established for the deposit of certain proceeds, to be used for certain purposes dictated by Hypo, including the prepayment of outstanding interest and principal of the Hypo Financing and the prepayment of outstanding interest and principal of the Pre-Petition Secured Debt. (Term Sheet at 3-5).

- ▪ The Debtor's Stipulations. The proposed final order approving the Hypo Financing and cash collateral use will contain a stipulation by the Debtor as to the validity, perfection, enforceability and amount of the Hypo Prepetition Debt, subject only to timely challenge by the Official Committee of Unsecured Creditors of Debtor.

**The Hypo Financing Meets the Requirements of § 364(c) and (d)**

10. The Debtor proposes to grant a § 364(c) superpriority claim to secure the Hypo Financing. This is a standard post-petition financing protection and necessary to secure the loan. Pursuant to § 364(c)(2), the Debtor also proposes a lien in the unencumbered assets of the estate. Such a lien is necessary to secure the Hypo Financing, and reasonable in this case.

11. Further, the Debtor seeks to grant a lien on its assets that is senior to the liens of the Pre-Petition Secured Creditors. Bankruptcy Code § 364(d) provides authority for a debtor to obtain post-petition credit secured by a senior or priming lien:

> (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

      (A) the trustee is unable to obtain such credit otherwise; and

      (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

     (2) In any hearing on this subsection, the trustee has the burden of proof on the issue of adequate protection.

    12. The Debtor has been unable to obtain other credit under Bankruptcy Code § 364(b) or (c). Bankruptcy Code § 364(d)(1)(A) does not impose upon a debtor-in-possession the onerous duty to seek credit from every possible lender before concluding that such credit is unavailable. Bray v. Shenandoah Fed. Sav. and Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (7th Cir. 1986); see In re Stanley Hotel, Inc., 15 B.R. 660, 663 (D. Colo. 1981) (two lenders refused to grant unsecured loans). Instead, a debtor need only make a good faith effort to obtain less burdensome credit. In re Snowshoe Co., 789 F.2d at 1088.

    13. The Debtor's decision to obtain the Hypo Financing represents an exercise of its sound business judgment in the continued operation of its business, the completion of construction of the Project and the process of consummating a reorganization plan. Like most business decisions, the Debtor's decision to enter into a post-petition credit agreement involves tradeoffs, but the proposed loan is the mechanism that is most likely to allow the Debtor to operate efficiently in bankruptcy, increase the value of its assets, and reorganize. See In re Simasko Prod. Co., 47 B.R. 444, 449 (Bankr. D. Colo. 1985) (debtor used its sound business judgment in obtaining secured financing pursuant to § 364(d)).

    14. The Debtor's attempts to obtain credit pursuant to Bankruptcy Code § 364(c) or otherwise proved futile. The Debtor was unable to find unsecured credit sufficient to fund its operations. Hypo has agreed to fund the Debtor only if it is given the added protections and benefits provided by Bankruptcy Code § 364(d).

**The Secured Creditors Are Adequately Protected**

    15. The Secured Creditors are adequately protected because of an equity cushion that will be preserved as the Debtor uses the additional capital provided by Hypo. The loan will fund capital expenditures, interim operations, and related expenditures needed to improve the value of the Project which constitutes the collateral securing the Pre-Petition Secured Debt.

    16. Section 364(d) provides that a pre-petition secured creditor's lien may be subordinated to a post-petition lender so long as the creditor "receives the value for which the creditor bargained prebankruptcy." MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1397 (10th Cir. 1987). "Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value and is made on a case-by-case basis." In re Gunnison Ctr. Apts., LP, 320 B.R. 391, 396 (Bankr. D. Colo. 2005).

    17. The Tenth Circuit has provided clear and powerful direction to bankruptcy courts applying the adequate protection standard, especially in the early stages of a case:

> Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the **purpose of enhancing the prospects of reorganization**. This quest is the ultimate goal of Chapter 11. Hence, **the Debtors' efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end.** Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.
>
> The first effort of the court must be to insure the value of the collateral will be preserved. Yet, prior to confirmation of a plan of reorganization, the test of that protection is not by the same measurements applied to the treatment of a secured creditor in a proposed plan. **In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard.** In doing so, however, care must be exercised to insure that the vested property rights of the secured creditor and the values and risks bargained for by that creditor prior to bankruptcy are not detrimentally affected.

In re O'Connor, 808 F.2d at 1397-98 (emphasis added) (citations omitted). The flexible adequate protection standard is no different in the context of § 364(d) financing. See The Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 555-56 (3d Cir. 1994) (citing In re O'Connor).

18. This flexible standard is manifested in the fact that courts have held that, so long as the valuation is not based upon an unreasonably risky venture, a pre-petition lender is adequately protected if it is expected that the value of its position will remain constant or increase as a result of the § 364(d) financing. See, e.g., Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.), 193 B.R. 713, 716-18 (Bankr. D. Del. 1996); In re 495 Central Park Ave. Corp., 136 B.R. 626, 631-32 (Bankr. S.D.N.Y. 1992); In re Sky Valley, Inc., 100 B.R. 107, 115-16 (Bankr. N.D. Ga. 1988). Here, the proposed lending is necessary to protect and preserve the value of the collateral.

### Carve-Outs

19. Hypo has agreed that its liens, security interests and super-priority administrative expense claims will be subject to and subordinate only to (a) amounts payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Court (collectively, the "UST/Clerk Fees"), and (b) allowed, unpaid fees and expenses of attorneys, accountants, and other professionals retained in these cases by the Debtor or by any statutory committee of creditors appointed in this case (the "Professionals") pursuant to Bankruptcy Code §§ 327, 328, and 1103; provided, however, that the amount entitled to such priority will not exceed the line items set forth in the Budget (plus any retainers held by such professionals at the time) (together with the UST/Clerk Fees, the "Carve-Out").

**WHEREFORE**, the Debtor requests that the Court enter an Order approving the proposed lending and use of cash collateral as outlined in this Motion and granting such other relief as is just and proper.

Dated this 7th day of October, 2009.

        **BROWNSTEIN HYATT FARBER SCHRECK, LLP**

        s/ Daniel J. Garfield
        Michael J. Pankow, #21212
        Daniel J. Garfield, #26054
        410 17th Street, Suite 2200
        Denver, Colorado 80202
        Telephone: (303) 223-1100
        Facsimile: (303) 223-1111
        mpankow@bhfs.com
        dgarfield@bhfs.com

        *Proposed Attorneys for the Debtor*

**CERTIFICATE OF MAILING**

I hereby certify that on this 7th day of October, 2009, a true and correct copy of the **MOTION FOR APPROVAL OF HYPO FINANCING** was sent via U.S. mail, postage prepaid, and properly addressed to the following:

| | |
|---|---|
| Office of the U.S. Trustee<br>999 18th Street, Suite 1551<br>Denver, CO 80202 | ACE WSG<br>c/o Patricia Stanley<br>P. O. Box 25152<br>Lehigh Valley, PA 18002-5152 |
| Bohannan Houston, Inc.<br>Howard Stone<br>Meridian One<br>9785 Maroon Circle, Suite 140<br>Englewood, CO 80112-5928 | Closet and Storage Concepts<br>c/o Isaiah Rozek<br>117 S. Sunset Street, Suite A<br>Longmont, CO 80501 |
| Jeffrey L. Cohen<br>1114 Avenue of the Americas<br>New York, NY 10036-7703 | David Hicks and Lampert Brokerage<br>Kelly Greene<br>7800 E. Orchard Road, Suite 150<br>Greenwood Village, CO 80111-2567 |
| Environmental Landworks Co<br>William Chavalier<br>P. O. Box 323<br>Golden, CO 80402 | Global Development and Eng. Group<br>c/o Josh Cruze<br>2258 Larimer Street, Unit B<br>Denver, CO 80205-2023 |
| Greene Advertising<br>c/o Mindy Greene<br>43 Covington Court<br>Cherry Hills Village, CO 80113 | Jay Finesilver<br>Wende City South Development LLC<br>5345 Landmark Place<br>Greenwood Village, CO 80111 |
| Images Flooring<br>c/o Devin Williams<br>1820 S. Evans Avenue<br>Englewood, CO 80110-1019 | John G. Lubitz<br>370 – 17th Street, Suite 4400<br>Denver, CO 80202 |
| Marty Johnson<br>211 Crystal Valley Road<br>Manitou Springs, CO 80829 | James E. Nesland<br>14252 East Caley Avenue<br>Aurora, CO 80016 |
| Michael Gold<br>Newberry Brothers Greenhouse<br>201 Garfield Street<br>Denver, CO 80206 | Occasions by Sandy<br>c/o David Tennenbaum<br>1789 W. Warren Avenue<br>Englewood, CO 80110-1047 |
| Pizza Republica<br>Geoff McFarlane and Mark Lynn<br>5375 Landmark Place, Suite 113<br>Greenwood Village, CO 80111-1949 | Edward T. Ramey<br>633 – 17th Street, Suite 2200<br>Denver, CO 80202 |
| George Rosenberg<br>5334 S. Prince Street<br>Littleton, CO 80166 | Jeffrey A. Smith<br>380 Interlocken Crescent, Suite 900<br>Broomfield, CO 80021-8023 |

10732\30\1322863.6

8

| | |
|---|---|
| Solace Confections Ltd<br>Penny and Robert Currie<br>P. O. Box 371347<br>Denver, CO  80237-5347 | Taylor Max, LLC<br>Rike Palese<br>9200 E. Panorama Circle, Suite 140<br>Englewood, Co  80112-3482 |
| Trouble Beauty<br>c/o Lisa Jackson<br>5425 Landmark Place, Suite 310<br>Greenwood Village, CO  80111 | Uncorked, LLC<br>Thomas G. Anderson<br>7600 Landmark Way, Unit 107<br>Greenwood Village, CO  80111 |
| Michael D. Warner<br>Jeffrey A. Resler<br>301 Commerce Street, Suite 1700<br>Fort Worth, TX  76102-4126 | Risa Lynn Wolf-Smith<br>Jack L. Smith<br>Holland & Hart<br>555 – 17th Street, Suite 3200<br>Denver, CO  80202-3921 |
| 7677 East Berry Avenue Associates<br>585 S. FM 1138<br>Nevada, TX  75173 | 7677 East Berry Avenue Associates<br>5500 Greenwood Plaza Blvd., Ste 230<br>Greenwood Village, CO 80111 |
| Thomas C. Bell<br>Davis Graham & Stubbs<br>1550 Seventeenth Street, Suite 500<br>Denver, CO 80202 | J. David Arkell<br>1700 Lincoln St.<br>Suite 3200<br>Denver, CO 80203-4532 |
| Joyce M. Bergmann, Esq.<br>Frascona, Joiner, Goodman and Greenstein<br>4750 Table Mesa Drive<br>Boulder, CO 80305 | Wm. David Byassee<br>1099 18th St.<br>Ste. 2150<br>Denver, CO 80202 |
| Peter A. Cal<br>633 17th St.<br>Ste. 3000<br>Denver, CO 80202-3665 | Thomas C. Seawell<br>1125 17th St.<br>Ste. 2100<br>Denver, CO 80202 |
| Steve Yacht<br>Mandil Associates Inc.<br>846 Elati Street<br>Denver, CO 80204 | Lee M. Kutner<br>303 E. 17th Ave.<br>Ste. 500<br>Denver, CO 80203 |
| C. Michael Sunoo<br>Leslie B. Greer<br>3555 S. Sherman Street, Suite 8<br>Englewood, CO  80113 | Gilbert R. Egle<br>Ellen Beverley McNamara<br>Preeo Silverman Green & Egle<br>1401 Seventeenth Street, Suite 800<br>Denver, CO  80202 |
| Loura K. Sanchez<br>Brianna L. Schaefer<br>5610 Ward Road, Suite 300<br>Arvada, CO  80002 | Ascent Group, Inc.<br>4940 Pearl East Circle, Ste 202<br>Boulder, CO  80301 |
| Beck Residential, LLC<br>100 Technology Dr., Suite 315<br>Broomfield, CO  80021 | Blue Architects, P.C.<br>2256 Larimer St.<br>Denver, CO  80205 |

10732\30\1322863.6                                         9

| | |
|---|---|
| Buchanan Yonushewski Group, LLC<br>500 East 8th Avenue<br>Denver, CO 80203 | Code Fire LLC<br>4896 Van Gordon St<br>Wheat Ridge, CO 80033 |
| Colorado Comfort Products, Inc.<br>255 Wyandot<br>Denver, CO 80223 | Dal Tile Corporation<br>7834 C. F. Hawn Freeway<br>Dallas, TX 75217 |
| Gallegos Masonry, Inc. dba The Gallegos Corporation<br>P. O. Box 821<br>Vail, CO 81658 | Global Engineering Group<br>2258 Larimer Street, Suite B<br>Denver, CO 80212 |
| Goldsmith Gulch Sanitation District<br>Goldsmith Gulch Sanitation District<br>8390 E. Crescent Pkwy, Unit 500<br>Greenwood Village, CO 80111-2814 | Heggem-Lundquist Paint Co.<br>1391 South Cherokee Street<br>Denver, CO 80223 |
| Hydro-Dynamic Services, LLC<br>555 Greenwood Plaza Blvd.<br>Greenwood Village, CO 80111 | Julia Koeppe Architects<br>1500 S. Pearl Street, Ste 200<br>Denver, CO 80210 |
| Ken Caryl Glass, Inc.<br>12450 Mead Way<br>Littleton, CO 80125 | Legacy Mechanical, Inc.<br>5161 Ward Road, Unit 2<br>Wheat Ridge, CO 80033 |
| Milender White Construction Co.<br>13050 W. 43rd Drive<br>Golden, CO 80403 | Project One Integrated Services, LLC<br>9785 Maroon Circle Suite 380<br>Englewood, CO 80112 |
| Rogers & Sons, Inc.<br>4775 Fox Street<br>Denver, CO 80216 | RK Mechanical Inc.<br>9300 E. Smith Road<br>Denver, CO 80207 |
| Schindler Elevator Corporation<br>20 Whipanny Road<br>Morristown, NJ 07960 | Sedita Manufacturing<br>6333 East 56th Avenue<br>Commerce City, CO 80022 |
| Superior Plaster & Drywall<br>8181 W. Brandon Dr.<br>Littleton, CO 80125 | Superior Roofing<br>14700 E. 39th Avenue<br>Denver, CO 80011 |

s/ Vicki O'Brien

10732\30\1322863.6                                          10