October 1, 2009

7677 East Berry Avenue Associates, L.P.
5500 Greenwood Plaza Blvd., Suite 230
Greenwood Village, Colorado 80111
Attention: Zachary M. Davidson

Re: Debtor-in-Possession Loan for 7677 East Berry Avenues Associates, L.P. (the "Debtor")

Dear Mr. Davidson:

The purpose of this letter (the "Term Sheet") is to set forth the proposed terms and conditions to be considered by Hypo Real Estate Capital Corporation (the "Agent") in connection with Debtor's request to obtain post-petition financing in the form of a Debtor-in-Possession Loan secured by a first-priority lien on the Property (the "DIP Loan"). This Term Sheet is not a commitment to provide the DIP Loan, either express or implied, and does not impose any obligation on Agent or the Lenders (as defined below) to provide the DIP Loan. Capitalized terms used and not defined herein shall have the meaning ascribed to them in the prepetition Loan and Security Agreement between the parties dated April 30, 2007, as amended from time to time.

| | |
|---|---|
| **Borrower:** | 7677 East Berry Associates, L.P. |
| **Sponsors:** | Zachary M. Davidson and Everest Development Corporation |
| **Guarantor:** | Zachary M. Davidson to provide a customary recourse carve-out guaranty as set forth in the pre-petition mortgage loan. |
| **Lenders:** | Agent, The PrivateBank and Trust Company and Bank Midwest, N.A. |
| **DIP Loan Amount:** | $30,000,000 construction loan commitment, subject to Agent's approval of a DIP budget to be submitted by Borrower and a Loan to Value Ratio of no greater than Ninety-Four Percent (94%), as defined below. |
| **Use of Funds:** | DIP Loan proceeds will be used to fund the following costs: |

    (i) costs of Borrower's Chapter 11 bankruptcy administration approved by the Bankruptcy Court (the "Court");

    (ii) project costs necessary to complete construction of the Property, including the cost to complete the sell-out and settlement phase of the residential condominium units and the stabilized lease-up of the retail center but specifically excluding the build-out of retail parcel K and unit upgrade and custom upgrade work; and

    (iii) interest payments on the DIP Loan and the pre-petition mortgage loan to be funded from an allocated interest reserve included within

1574109 v5/NY

Page 1 of 8

Hypo Real Estate Capital Corporation
622 Third Avenue
New York, NY 10017
A member of Hypo Real Estate Group

**EXHIBIT 1**

|  |  |
|---|---|
|  | the DIP Loan commitment. |
| **DIP Loan Advances:** | Funds shall be requisitioned by Borrower through a monthly draw request in accordance with the approved DIP budget, similar in form and substance to the process set forth in the pre-petition mortgage loan. Borrower shall have the right, subject to Agent's consent, to reallocate savings in the hard cost line items set forth in the DIP budget once 100% of the work relating to such line item has been completed, as certified by Agent and Agent's construction consultant. Lenders shall review, approve and fund such advances within ten (10) business days following satisfaction by Borrower of the conditions precedent specified in the DIP Loan Agreement. |
| **Term/Maturity:** | The earlier of (a) eighteen (18) months from closing ("Initial Maturity"), unless extended as outlined below, (b) any substantial reorganization of Debtor approved by the Court, (c) conversion to Chapter 7 or appointment of a Chapter 11 trustee, (d) dismissal of Debtor's bankruptcy case, (e) a relief of automatic stay granted by the Court permitting any junior lienors to pursue or foreclose any of the collateral, or (f) acceleration of maturity due to an Event of Default.<br><br>The DIP Loan may be extended by Borrower for a period of one-year from the Initial Maturity ("Extended Maturity") subject to (a) sixty (60) day extension notice delivered to Agent, (b) no Event of Default, (c) a Loan to Value Ratio of no greater than Ninety Percent (90%), as defined below, (d) payment of the Extension Fee (as defined below), and (e) an Interest Rate Cap Agreement acceptable to Agent. |
| **Anticipated Closing Date:** | On or before October 16, 2009. |
| **Cash Collateral Use:** | Agent and Lenders will consent to further use of Cash Collateral up to the Closing Date, consistent with the Court's Interim Cash Collateral Order. On and after the Closing Date, as adequate protection for the use of the pre-petition lenders' cash collateral, Lenders shall receive post petition interest payments on the pre-petition mortgage loan as follows: LIBO Adjusted Rate plus LIBOR Margin of Two and One-Half Percent (2.50%), provided, however, with respect to the Phase I $7 Million Advance only, the LIBOR Margin means Six Percent (6.00%). Interest shall be payable monthly in arrears on a current pay basis. |
| **Up-Front Fee:** | An up-front fee of 1.00% of the DIP Loan Amount will be due and payable at Closing. |
| **Extension Fee:** | An extension fee of 2.00% of the then current DIP Loan Commitment will be due and payable upon extension of the DIP Loan. |
| **Exit Fee:** | None. |
| **Collateral/Security:** | Lenders shall be provided first priority priming liens and super-priority |

| | |
|---|---|
| | claims over any and all pre-existing liens and claims on substantially all of the Debtor's assets, excluding (i) the liens of FirsTier Bank on the assignment of the Sales Tax Rebate Agreement dated November 11, 2005 between Borrower and the City of Greenwood Village (the "TIF Collateral") and (ii) Borrower's causes of action under Chapter 5 of the Bankruptcy Code and the proceeds thereof. |
| **Consensual Priming and Use of Existing Lenders' Cash Collateral** | Pursuant to the terms of this Term Sheet, Agent and Lenders consent to the priming of their existing liens securing the pre-petition mortgage loan and the use of Cash Collateral, subject to a DIP budget and legal documentation acceptable to Agent. |
| **Interest Rate on DIP Loan:** | One-month LIBO Adjusted Rate plus LIBOR Margin of Seven and One-Half Percent (7.50%). Interest shall be payable monthly in arrears on a current pay basis. |
| **Interest Rate Cap Agreement:** | An Interest Rate Cap Agreement will be required at a one-month LIBOR strike rate not to exceed 2% and a notional monthly schedule acceptable to Agent. Cap provider may be an affiliate of Agent or a third-party with an A minus or better credit rating and otherwise acceptable to Agent. |
| **Non-Usage Fee:** | None. |
| **Application of Cash Collateral Proceeds:** | Proceeds from the net operating income of the retail center, awarded insurance ("E&O") claims, interest earned on Borrower deposits (excluding condominium sales deposits) and other proceeds of Borrower, but specifically excluding the quarterly collections of retail sales taxes pursuant to the TIF Collateral (the "Cash Collateral"), shall be applied towards project costs as a source of funds in the monthly draw requests, as further detailed below under "Lockbox Accounts." |
| **Lockbox Accounts:** | The following lockbox accounts shall be implemented. These accounts will be subject to deposit account control agreements with one or more depository banks included in the list of approved depository banks maintained by the Office of the United States Trustee for the Southern District of New York.<br><br>(i) Sales proceeds from the settlement of residential condominium units ("Unit Required Release Payments," as defined in the pre-petition loan agreement) and sales proceeds from the settlement of any of the retail components of the Property (which shall constitute "Retail Component Required Release Payments," as defined below) shall be deposited into a "Sales Proceeds Account." Forfeited sales deposits from defaulted buyer sales contracts shall also be deposited into the Sales Proceeds Account. Proceeds in the account shall be applied pursuant to the "Repayment Waterfall from Required Release Payments" as detailed below. |

1574109 v5/ NY3

(ii) Rents from retail tenant leases shall be deposited into a "Retail Lockbox Account" with the following waterfall: first to a "Tax Account" for taxes related to the retail component of the Property, second to an "Insurance Account" for insurance related to the retail component of the Property, third to an "Operating Expense Account" for operating expenses related to the retail component of the Property based upon an operating expense budget to be provided by Borrower and approved by Agent, and fourth to an "Excess Retail Funds Account." Funds in the Excess Retail Funds Account shall be applied to pay project costs in conjunction with monthly draw requests in accordance with the approved DIP budget. Any funds not needed as a funding source for any given monthly draw request will remain in the account for application towards project costs in the next monthly draw request.

(iii) Quarterly collections of retail sales tax rebates pursuant to the Sales Tax Rebate Agreement dated November 22, 2005 between Borrower and the City of Greenwood Village shall be deposited into a "TIF Collateral Lockbox Account" and shall be applied to monthly interest payable under the $7,000,000 loan to FirsTier Bank (the "TIF Loan"). Any excess proceeds will remain in the account to be applied towards the next monthly interest payment due under the TIF Loan until the indebtedness under the TIF Loan is fully repaid. Any proceeds remaining in the account thereafter will be the property of the then current holder of the TIF Collateral. If such holder is the Borrower, then such proceeds shall be applied to pay project costs in conjunction with monthly draw requests in accordance with the approved DIP budget.

Any net proceeds payable to Borrower that are derived from the sale of the TIF Collateral or a bond issuance thereof shall be deposited into the TIF Collateral Lockbox Account. Proceeds shall be applied pursuant to the repayment priority in "Repayment Waterfall from Required Release Payments" as detailed below.

(iv) The 1% listing broker commissions earned and collected upon the closing of the residential condominium units (the "Released Commission") shall be deposited into a "Sales Commission Holdback Reserve Account" and shall be applied to pay monthly interest on the pre-petition mortgage loan pursuant to the terms of the Release Agreement dated October 1, 2008 between Agent and Taylor Max, LLC dba Classic New Home Sales and Re/Max Classic.

(v) All other proceeds of Borrower, including any E&O claims, shall be deposited into a "General Lockbox Account." Proceeds shall be applied pursuant to the repayment priority in "Repayment Waterfall from Required Release Payments" as detailed below.

1574109 v5/ NY4

Case:09-28000-MER   Doc#:174-1   Filed:10/07/09   Entered:10/07/09 19:23:22   Page5 of 8

**Repayment Waterfall from Required Release Payments:** Required Release Payments shall be applied in the following order at the time of each prepayment application, which shall be on the first and fifteenth day of each month (subject to business day convention):

(i) to prepay any outstanding interest and principal balance of the DIP Loan until fully repaid and all availability under the commitment has been terminated.

(ii) to prepay any outstanding interest and principal balance of the pre-petition mortgage loan on a pari-passu basis with pre-petition mechanic's liens whose (a) claim amounts have been settled or agreed to by Borrower and the mechanics lienor or (b) claim amounts have not been settled but are being reserved for until settlement thereof, in which case such funds shall be deposited with a third party escrow agent pursuant to an escrow agreement acceptable to Agent.

To the extent that there are any excess Required Release Payment proceeds at the time of each prepayment application, such excess proceeds will be applied towards any outstanding interest and principal of the pre-petition mortgage loan on a pari-passu basis with pre-petition mechanic's liens.

**Prepayment Provisions:** Loan may be prepaid without any prepayment fee.

**Mandatory Amortization:** Borrower will be required to achieve the following cumulative Unit Required Release Payments as defined in the pre-petition loan agreement (i.e. from residential condominium unit settlements):

(i) Twenty million dollars ($20,000,000.00) within twelve (12) months from Closing Date.
(ii) Forty million dollars ($40,000,000.00) within eighteen (18) months from Closing Date (i.e. cumulative prepayment from the Closing Date).
(iii) Sixty-five million dollars ($65,000,000.00) within twenty-four (24) months from Closing Date (i.e. cumulative prepayment from the Closing Date).

In the event Borrower shall sell the retail component exclusive of Pad Site K prior to the date which is twenty-four (24) months following the Closing Date for an amount exceeding the minimum release price set forth below ($32,000,000), Borrower shall have the right to apply fifty percent (50%) of such excess amount towards satisfaction of the threshold set forth in clause (iii) above only, such that not more than $2,500,000 shall be credited against such threshold.

Further, in the event Borrower shall fail to meet any of the above three thresholds, Borrower shall be entitled to repay the loan in an amount equal to the difference between said threshold and the amount previously

| | |
|---|---|
| | repaid, provided that the source of such repayment shall not, in any event be proceeds of the Property (other than proceeds of unit sales as set forth above), including but not limited to, the sale of Pad Site K and rents from the retail portion of the Property (other than the sale of the retail portion as set forth in the immediately preceding paragraph). |
| **Required Listing of Retail Center for Sale** | Borrower shall engage a qualified third-party listing broker to sell the retail center within the earlier of (i) eighteen (18) months from the Closing Date, or (ii) the achievement of a 90% occupancy level of the retail center (with 90% of occupied space open for business and paying rent in the retail center). |
| **Minimum Release Price:** | The minimum release prices for the residential condominium units shall be equal to or greater than the Unit Required Minimum Release Price pursuant to the existing pre-petition loan agreement. The minimum release prices for the retail components shall be equal to or greater than (i) $32,000,000 for the retail components exclusive of Pad Site K and (ii) $1,200,000 for the Pad Site K (the "Retail Component Required Release Payments"), in each case per the September 25, 2009 NVC Appraisal, notwithstanding any other definition specified in the prepetition loan agreement. |
| **Loan to Value Ratio:** | Closing of the DIP Loan and Borrower's right to extend the Initial Maturity will be subject to Loan to Value Ratios as set forth herein. The denominator of each Loan to Value Ratio will be measured by a current appraisal of the "as completed" Property including the net sell-out value of the unclosed residential condominium units and the "as-stabilized" value of the retail center including the retail space in the residential towers. The numerator of the Loan to Value Ratio will be the sum of the DIP Loan commitment amount, the outstanding claim amount of the pre-petition mortgage loan including principal, interest and related third party fees, and the outstanding claim amount of the pre-petition mechanic's lienholders. |
| **Construction Completion Dates:** | The Final Completion Date will be extended to 3/31/2010 for the Landmark Retail, Parking Spaces and The Landmark, as defined in the pre-petition loan agreement, subject to a like extension by the City of Greenwood Building Department, including an extension of the 8/31/2009 permanent certificate of occupancy date for The Landmark and The Landmark Retail. |
| | Borrower shall be required to obtain a permanent certificate of occupancy for the base building improvements at the Meridian no later than 3/31/2010. |
| **Restriction on Use of Collateral** | Borrower shall be required to market the Property as a "for sale" condominium and shall not be permitted to rent any of the residential units at the Property |

| | |
|---|---|
| **Completion of Remaining Construction Work** | Borrower shall be permitted to "self perform" any material construction work remaining at the Property, including the cost to complete the Meridian tower residential condominium units in accordance with the approved plans and specifications; provided, however, that Borrower shall be required, at Borrower's sole cost and expense, to engage a third-party construction manager as approved by Agent to monitor such work.<br><br>As set forth above, no portion of the proceeds of the DIP Loan shall be available for upgrade work (whether standard or custom). |
| **Financial Reporting:** | Monthly, quarterly and annual financial reporting will be required on Borrower, Guarantor and the Property similar to such reporting required pursuant to the pre-petition mortgage loan agreement. Such reporting is to specifically include operating statements, rent rolls, budgets, accounts receivable and accounts payable billing and aging reports, for the residential condominium association and the retail center. |
| **Events of Default:** | Ordinary and customary events of default for a DIP Loan of this type, as well as defaults tied to maintenance of the Loan to Value Ratio, Mandatory Amortization and the Construction Completion Dates. |
| **Expenses:** | All of Agent's and Lenders' reasonable out-of-pocket expenses, including attorneys' fees and disbursements and the fees and disbursements of other third party consultants and advisors shall be paid by Borrower (and/or Sponsor). |
| **Due Diligence and Closing Conditions:** | As a condition to closing the DIP Loan, all due diligence items shall be acceptable to Agent, including without limitation Agent's review and approval of the DIP budget to be submitted by Borrower. As part of its due diligence, Agent and its accountants, attorneys and agents shall have the right to examine and audit the books and records of Borrower. |
| **Security Instruments and Other Loan Documents:** | The DIP Loan documentation shall be prepared by Agent's counsel and shall be satisfactory to Agent in all respects. |
| **Confidentiality:** | Each of Borrower, Sponsor and Guarantor understands that this Term Sheet is confidential and is being delivered with the understanding that neither Borrower, Sponsor or Guarantor will disclose the terms or provisions of this Term Sheet to any third party person, except to Borrower's, Sponsor's, Guarantor's and Lenders' employees, principals, officers, directors, agents, advisors and representatives who need to know the information for purposes of the DIP Loan or as may be required by law. |

This Term Sheet shall be governed by and construed in accordance with the law of the State of New York. Each of the parties agrees that any legal proceeding relating to this Term Sheet shall be maintained in a state or United States court of competent jurisdiction sitting in the City and State of New York and each hereby consents and submit themselves to the jurisdiction of the state and United States courts of

1574109 v5/ NY7

New York for the purposes of adjudication of such legal proceedings. The parties hereby waive the right to a trial by jury in respect of any litigation arising out of this Term Sheet.

This Term Sheet is intended to facilitate discussion regarding the possibility of financing the remaining project costs from the proposed DIP Loan, and neither this Term Sheet nor any discussions or course of conduct between the parties shall constitute an agreement, offer or legally binding commitment by Agent or the Lenders to provide the DIP Loan. This Term Sheet does not purport to summarize or contain all the conditions, covenants, representations, warranties and other provisions which would be contained in the definitive amendment documents and the Lenders shall have no legal obligation to Borrower or Guarantors unless and until definitive amendment documents are executed and delivered by the parties. The parties acknowledge that a commitment to lend shall be subject to obtaining the credit approval required in accordance with the Lenders' credit approval policies from time to time in effect. Upon the execution and delivery of this Term Sheet, Borrower and Guarantor shall become obligated to pay all costs and expenses incurred by the Lenders in connection with the DIP Loan.

### HYPO REAL ESTATE CAPITAL CORPORATION

By: /S/　　　　　　　　　　By: _____
　　Name:　　　　　　　　　　　　Name:
　　Title:　　　　　　　　　　　　Title:

ACKNOWLEDGED AND AGREED THIS _____ day of _____, 200_

**BORROWER:**

**7677 EAST BERRY AVENUE ASSOCIATES, L.P.**
**A Delaware limited partnership**

　　By: EDC Denver I, LLC
　　A Delaware limited liability company
　　Its General Partner

By: /S/
　　Name: Zachary M. Davidson
　　Title: Manager

**GUARANTOR:**

By: /S/
　　Name:
　　Title:

1574109 v5/ NY8