## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: | |
| 7677 EAST BERRY AVENUE ASSOCIATES, L.P., | Case No. 09-28000-MER |
| EIN: 20-2138800 | Chapter 11 |
| Debtor. | |

FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364
AND 507 (1) APPROVING POSTPETITION FINANCING, (2) AUTHORIZING
USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING
<u>ADEQUATE PROTECTION, AND (5) MODIFYING AUTOMATIC STAY</u>

THIS MATTER having come before the Court upon the motion (the "<u>DIP Motion</u>") by

7677 East Berry Avenue Associates, L.P., a debtor and debtor in possession (the "<u>Debtor</u>") in the

above-captioned Chapter 11 case (this "<u>Case</u>"), pursuant to Sections 105, 361, 362, 363,

364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, 11 U.S.C.

§§ 101 *et seq.* (as amended, the "<u>Bankruptcy Code</u>"), Rules 2002, 4001 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), seeking entry of a final order (this

"<u>Final Order</u>") *inter alia*:

(i)       authorizing the Debtor to obtain secured, superpriority, postpetition financing (the

"<u>DIP Facility</u>") pursuant to the terms and conditions of that certain Debtor-in-Possession Loan

and Security Agreement (as amended, supplemented, restated, or otherwise modified from time

to time, the "<u>DIP Agreement</u>") by and between the Debtor and Hypo Real Estate Capital

Corporation, as Agent (the "<u>DIP Agent</u>") and the lenders party to the DIP Agreement from time

to time (collectively, the "DIP Lenders"), an executed copy of which has been filed with the Court docket no. 229;

(ii)     authorizing the Debtor on a final basis to perform under the DIP Agreement and other related loan and security documents to be executed concurrently therewith, including, without limitation, the Assignment of Contracts and the Assignment of Leases (as such terms are defined in the DIP Agreement) (together with the DIP Agreement, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)     granting all obligations to the DIP Agent and the DIP Lenders under the DIP Documents (collectively, and including without limitation all principal, interest, fees and expenses and other amounts payable under the DIP Documents, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Case and any Successor Cases (as defined herein), subject to the priorities set forth in paragraph 9 below;

(iv)     granting to the DIP Agent on behalf of the DIP Lenders an automatically perfected, priming, first-priority security interest in and lien on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code;

(v)     authorizing and directing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Documents as they become due, including, without limitation, continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees, administrative agent's fees, letter of credit fees and the fees and disbursements of the DIP Agent's attorneys, advisers, accountants, and other consultants, all to the extent provided by and in accordance with the terms of the DIP Documents;

(vi)     authorizing the Debtor's use of the Cash Collateral of the Prepetition Lenders (as defined below) and providing adequate protection to the Prepetition Lenders as provided for herein for any diminution in value of their interests in the Prepetition Collateral, including the Cash Collateral (each as defined herein); and

(vii)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order, and to authorize the DIP Agent to enforce the remedies provided for herein and in the DIP Documents.

The Court having considered the DIP Motion, the DIP Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearings held on September 3, 2009 and October 2, 2009 (the "Interim Hearings"), and the final hearing held on October 26, 2009 (the "Final Hearing"); and adequate notice of the Interim Hearings and the Final Hearing having been provided in accordance with Rules 4001(b), (c), and (d), and 9014 of the Bankruptcy Rules; and the Final Hearing having been held and concluded; and all objections to the entry of this Final Order approving the DIP Documents having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM AND FINAL HEARINGS BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     *Petition Date*.  On August 30, 2009 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado (the "Court") commencing this Case.

B.      *Debtor in Possession*.  The Debtor is continuing in the management and operation of its business and properties as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee Formation*.  On September 17, 2009, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in this Case pursuant to Section 1102 of the Bankruptcy Code (the "Statutory Committee").

E.      *Debtor's Stipulations*.  After consultation with its attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in Paragraph 33 herein, the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs E(i) through E(viii) below are referred to herein as the "Debtor's Stipulations"):

(i)      *Prepetition  Credit Facility*.  Prior to the commencement of the Case, pursuant to that certain Loan and Security Agreement, dated as of April 30, 2007 (as amended, supplemented, restated, or otherwise modified prior to the Petition Date, the "Prepetition Credit Agreement," and together with all related Loan Documents (as defined in the Prepetition Credit Agreement), the "Prepetition Credit Documents"), by and among the Debtor, Hypo Real Estate Capital Corporation, as Agent and lender (the "Prepetition Agent"), and certain other lenders party to the Prepetition Credit Agreement (together with the Prepetition Agent, the "Prepetition

Lenders"), the Prepetition Lenders provided the Debtor with, among other things, loans (the "Prepetition Credit Facility") in the aggregate principal amount of  up to $182,241,000;

       (ii)    *Prepetition Obligations*.  As of the Petition Date, (a) the outstanding principal amount of debt owed by the Debtor under the Prepetition Credit Documents. was $89,303,912.76, (b) the accrued and unpaid interest under the Prepetition Credit Documents was $452,825.67, (c) the accrued and unpaid fees under the Prepetition Credit Documents was $25,382.89, and (d) the accrued and unpaid attorneys' fees, costs, and other reimbursable expenses under the Prepetition Credit Documents. was $284,635.64, for a total due and owing as of the Petition Date in the amount of $90,039,756.96 (collectively, the "Prepetition Obligations").

       (iii)    *Hypo Prepetition Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtor granted security interests in and liens on the ("Hypo Prepetition Liens")  certain of the Debtor's assets, including the Debtor's owned real property, leases and rents and certain other assets (collectively, the "Prepetition Collateral") to the Prepetition Agent for the benefit of the Prepetition Lenders.

       (iv)    *Prepetition Guaranties and Indemnification Agreement.*  Prior to the Petition Date, Zachary M. Davidson ("Guarantor") executed and delivered to the Prepetition Agent, for the ratable benefit of the Prepetition Lenders, (a) that certain Guaranty of Recourse Obligations (the "Prepetition Recourse Guaranty"), dated as of April 30, 2007, (b) that certain Guaranty of Completion (the "Prepetition Completion Guaranty"), dated as of April 30, 2007, and (c) that certain Guaranty of Payment – Phase I $7 Million Advance (the "Prepetition Payment Guaranty"; together with the Recourse Guaranty and the Completion Guaranty, the "Prepetition Guarantees"), dated as of April 30, 2007.  Prior to the Petition Date, Guarantor

executed and delivered that certain Environmental Indemnity Agreement (the "Prepetition Indemnification Agreement"), dated as of April 30, 2007, in favor of the Prepetition Agent, for the ratable benefit of Prepetition Lenders.  The Prepetition Guaranties and the Prepetition Indemnification Agreement have not been altered and remain enforceable to the extent provided by law.

> (v)     *Validity, Perfection and Priority of Hypo Prepetition Liens and Prepetition Obligations*.  Subject to the provisions of Paragraph 32 of this Order, the Debtor and the Prepetition Agent acknowledge and agree that:  (a) as of the Petition Date, the Hypo Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Hypo Prepetition Liens had priority over any and all other liens on the Prepetition Collateral, subject only to (i) certain liens otherwise permitted by the Prepetition Credit Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Hypo Prepetition Liens as of the Petition Date, and excluding the Mechanic's Liens, the "Permitted Prior Liens"); and (ii) the Mechanics Liens (as defined below), solely to the extent such liens were valid, properly perfected, non-avoidable and senior in priority to the Hypo Prepetition Liens as of the Petition Date or perfected as permitted pursuant to Section 546(b) of the Bankruptcy Code; [1] (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or

---

[1] For purposes of this Final Order, Permitted Prior Liens and the Mechanic's Liens shall include all liens that are valid, senior, enforceable, nonavoidable, prior and perfected under applicable law.  Nothing herein shall constitute a finding or ruling by this Court that any asserted prepetition Liens are valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtor, the Prepetition Agent, the Prepetition Lenders, the DIP Agent, the DIP Lenders, and the Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Lien and/or Mechanic's Liens.

nature to any of the Hypo Prepetition Liens or Prepetition Obligations exist, and no portion of the Hypo Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtor and its estate have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Agent or Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Credit Facility, the Prepetition Credit Documents, or the transactions contemplated thereby; (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Obligations exceeded the amount of those obligations, and accordingly the Prepetition Obligations are allowed, secured claims within the meaning of Section 506 of the Bankruptcy Code; and (g) any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Agent or the Prepetition Lenders prior to the Petition Date were on account of amounts in respect of which the Prepetition Agent and the Prepetition Lenders were oversecured, were payments out of the Prepetition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(vi)   *Cash Collateral*.  The Debtor represents and acknowledges that all of Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Agent and the Prepetition Lenders.

(vii)    *Default by the Debtor*.  The Debtor acknowledges and stipulates that the Debtor has defaulted and remains in default of its debts and obligations under the Prepetition Credit Documents.

F.    *Asserted Mechanic's Liens*.  Ascent Group, Inc., Beck Development LLC d/b/a Beck Residential LLC ("Beck"), Blue Architects, Buchanan Yonushewski Group, LLC, Code Fire LLC, Colorado Comfort Products, Inc., Dal Tile Corporation, Environmental Landworks Company, Inc. ("Environmental"), Gallegos Masonry, Inc. dba The Gallegos Corporation, Global Engineering Group, Heggem-Lundquist Paint Co., Hydro Dynamic Services, Julia Koeppe Architects, Ken Caryl Glass, Inc., Legacy Mechanical, Milender White Construction Co. ("Milender White"), Project One Integrated Services, Rogers and Sons Inc., RK Mechanical Inc., Schindler Elevator Corporation, Sedita Manufacturing, Superior Plaster & Drywall, and Superior Roofing (the "Mechanic's Lien Creditors") have asserted or given notice of the right to assert liens (the "Mechanic's Liens") against certain of the Debtor's property.  The aggregate amount of the Mechanic's Lien Creditors' asserted claims (the "Mechanic's Lien Claims") totals approximately $3,000,000.  The Debtor disputes the validity and/or amount of certain of the Mechanic's Lien Claims.  Goldsmith Gulch Sanitation District asserts a lien against the Debtor's property under the terms of an agreement with the Debtor and pursuant to C.R.S. § 32-1-1001(1)(j)(I) with priority over all prepetition liens.  For definition only and not to affect its substantive rights, Goldsmith Gulch Sanitation District is hereby included in the definition of Mechanic's Lien Creditors holding a Mechanic's Lien Claim.

G.    *Findings Regarding the Postpetition Financing*.

(i)    *Request for Postpetition Financing.*  The Debtor seeks authority on a final basis to (a) perform under the DIP Facility on the terms described herein and in the DIP

Documents, and (b) use Cash Collateral on the terms described herein to administer its Case and fund its operations pursuant to this Final Order.

(ii)     *Priming of the Hypo Prepetition Liens and Mechanic's Liens*.  The priming of the Hypo Prepetition Liens on the Prepetition Collateral and the Mechanic's Liens pursuant to Section 364(d) of the Bankruptcy Code, as further described below, will enable the Debtor to obtain the DIP Facility and to continue to operate its business for the benefit of its estate and creditors.  The Prepetition Agent has, on its own behalf and in its capacity as a Prepetition Lender, consented to such priming liens.  The Prepetition Agent, the Prepetition Lenders and the Mechanic's Lien Creditors are entitled to receive adequate protection, as and to the extent set forth in this Final Order, pursuant to Sections 361, 363 and 364 of the Bankruptcy Code, for any diminution in the value of each of their respective interests in their respective prepetition collateral (including, in the case of the Prepetition Agent and the Prepetition Lenders, Cash Collateral) resulting from the Debtor's use, sale or lease of such collateral, the imposition of the automatic stay, the priming of the Hypo Prepetition Liens and the Mechanic's Liens, respectively, and the subordination thereof to the DIP Lien and the Carve Out (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

(iii)     *Need for Postpetition Financing and Use of Cash Collateral*.  Since the Petition Date, the Debtor's need to use Cash Collateral and to obtain credit pursuant to the DIP Facility has been and continues to be immediate and critical in order to enable the Debtor to continue operations and to administer and preserve the value of its estate.  The ability of the Debtor to finance its operations, maintain business relationships with its vendors, suppliers and customers and otherwise finance its operations has required and continues to require the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence

of either of which would immediately and irreparably harm the Debtor, its estate, its creditors and equity holders, and the possibility for a successful reorganization.  The Debtor has not had and does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)     *No Credit Available on More Favorable Terms*.  Given its current financial condition, financing arrangements, and capital structure, the Debtor has been unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility.  The Debtor has been unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense.  The Debtor has also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien.  Financing on a postpetition basis is not available without granting one or more lenders (1) perfected security interests in and liens on (each as provided herein) all of the Debtor's existing and after-acquired assets (with the priorities and exceptions set forth in paragraph 8 hereof), (2) superpriority claims, and (3) the other protections set forth in this Final Order.

(v)     *Carmel Loan*.  The Debtor previously proposed a debtor-in-possession loan from Carmel Landmark, LLC ("Carmel"), in the amount of up to $15,000,000 (the "Carmel Loan"), pursuant to that certain Debtor-In-Possession Loan Agreement (as amended and modified from time to time, the "Carmel Loan Agreement"), dated as of August 29, 2009, between the Debtor and Carmel.  The Carmel Loan Agreement provides, among other things,

that Carmel is entitled to a break-up fee (the "Break-Up Fee") of $300,000 in the event that the Court approves any other postpetition financing for the Debtor in this Case.  The Debtor has determined in its reasonable business judgment that the DIP Facility (i) provides the Debtor with its best opportunity to rehabilitate and complete construction without the unpredictability and costs associated with litigation, (ii) provides the Debtor with more favorable pricing and terms than the Carmel Loan, and (iii) presents a better opportunity for obtaining consensus among the Debtor's stakeholders as to the Debtor's reorganization.

(vi)    *Use of Proceeds of the DIP Facilities*.  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Lenders and the Debtor agree that proceeds of the DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Documents and in accordance with the agreed upon budget annexed to the DIP Agreement (as the same may be modified from time to time consistent with the terms of the DIP Documents, and subject to such variances as permitted in the DIP Agreement, the "Budget"), solely for (i) paying the costs of the Debtor's Case as approved by the Court; (ii) project costs necessary to complete construction of the Improvements (as defined in the DIP Credit Agreement), including the cost to complete the sell-out and settlement phase of the residential condominium units and the stabilized lease-up of the retail center, but specifically excluding the build-out of retail parcel K and unit upgrade and custom upgrade work for condominium units (except to the limited extent permitted under the DIP Agreement); (iii) interest payments on the DIP Facility and the Prepetition Loan Agreement, in the amounts specified herein and in the DIP Credit Agreement, and (iv) payment of the Break-Up Fee.

H.    *Adequate Protection*.

(a)     *Prepetition Agent and Prepetition Lenders.*  The Prepetition Agent and the Prepetition Lenders are entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) during the Case.  Pursuant to Sections 361, 363 and 507(b), as adequate protection the Prepetition Agent and the Prepetition Lenders will receive (i) replacement liens, (ii) superpriority administrative claims, (iii) payments of post-petition interest, and (iv) other adequate protection as more fully set forth in paragraph 13 herein, in each case subject to the Carve-Out (as defined below) and subordinated to the DIP Liens, and the DIP Superpriority Claims.

(ii)     *Mechanic's Lien Creditors*.  The Mechanic's Lien Creditors are entitled to receive adequate protection to the extent of any Diminution in Value of their respective collateral during the Case.  The Mechanic's Lien Creditors are adequately protected by (i) their respective equity cushions, which will be preserved or increase as the Debtor uses the proceeds of the DIP Facility to complete construction of the Property (as defined in the DIP Agreement), (ii) replacement liens for the full amount of their respective allowed secured claims in each and every unsold condominium unit in the Landmark and Meridian Towers, which liens shall be senior in priority to the Hypo Prepetition Liens or any replacement liens granted in respect thereof, and which shall be shared by all Mechanic's Lien Creditors *pari passu* based upon their respective allowed claims but in each case subject to the Carve-Out and (subject to paragraph 24 hereof) subordinated to the DIP Liens and the DIP Superpriority Claims*;* and (iii)  the payments to be made to the Mechanic's Lien Creditors from the proceeds of Unit Required Release Payments (as defined in the DIP Credit Agreement) as set forth more fully in Paragraph 13 herein.

I.     <u>*Sections 506(c) and 552(b)*</u>.

(i)      *The DIP Lenders.*  In light of the DIP Agent's and the DIP Lenders' consent to the current payment of administrative expenses of the Debtor's estate in accordance with the Budget and the DIP Agent and the DIP Lenders' agreement to subordinate the DIP Lien (as defined below) and the DIP Superpriority Claim (as defined below) to the Carve Out and the Permitted Prior Liens, the DIP Agent and the DIP Lenders are entitled to a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

(ii)      *The Prepetition Lenders*.  In light of the subordination of the Prepetition Obligations and the Hypo Prepetition Liens to the Carve Out, the DIP Liens and the DIP Obligations, and the subordination of the superpriority administrative expense claims of the Prepetition Agent and Prepetition Lenders to the DIP Superpriority Claim, and the Prepetition Agent and Prepetition Lenders' consent to the use of Cash Collateral, the Prepetition Agent and the Prepetition Lenders are entitled to a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

J.      *Good Faith of the DIP Lenders.*

(i)      *Willingness to Provide Financing*.  The DIP Agent and the DIP Lenders have indicated a willingness to provide the DIP Facility subject to:  (a) the entry of this Final Order; (b) approval by the Court of the terms and conditions of the DIP Facility and the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Agent and the DIP Lenders have extended and are extending credit to the Debtor pursuant to the DIP Documents in good faith, and that DIP Agent's and DIP Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted

pursuant to this Final Order and the DIP Documents will have the protections provided in

Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal,

modification, vacatur, amendment, reargument or reconsideration of this Final Order or any

other order, provided that any such order was not stayed by court order after due notice had been

given to the DIP Agent or DIP Lenders at the time the advances were made or the liens, claims

or priorities were authorized and/or created.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The

terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be

paid thereunder, are fair, reasonable, and the best available to the Debtor under the

circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its

fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP

Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among

the Debtor and the DIP Lenders.  Use of Cash Collateral and all extensions of credit under the

DIP Facility, whether made prior or subsequent to entry of this Final Order, shall be deemed to

have been so allowed, advanced, made, used or extended in good faith, and for valid business

purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the DIP

Lenders are therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy

Code and this Final Order.  The Debtor's determination that the DIP Facility is a superior

alternative to the Carmel Financing and decision to utilize the DIP Facility rather than the

Carmel Facility was a sound exercise of the Debtor's reasonable business judgment, was in good

faith, and was for valid business purposes within the meaning of Section 364(e) of the

Bankruptcy Code.

K.      *Notice*.  Notice of the Interim Hearings and the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtor, whether by first class mail, facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) counsel for the Statutory Committee; (iii) the Internal Revenue Service; (iv) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (v) the Mechanic's Lien Creditors, and (vi) counsel to the Prepetition Agent for itself and for the Prepetition Lenders.  The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Final Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      DIP Motion Approved.  The DIP Motion is granted on a final basis, subject to the terms and conditions set forth in this Final Order.

2.      Objections Overruled.  All objections to the DIP Motion to the extent not withdrawn or resolved are hereby overruled.

**DIP Facilities Authorization**

3.      Authorization of the DIP Financing and DIP Documents.  The DIP Documents are hereby approved on a final basis.  The Debtor is expressly and immediately authorized, empowered and directed on a final basis to incur and to perform the DIP Obligations in accordance with, and subject to the terms of this Final Order and the DIP Documents.  The Debtor is hereby authorized and directed to pay, in accordance with this Final Order, the

principal, interest, fees, expenses and other amounts described in, and payable under, the DIP

Documents as such become due and without need to obtain further Court approval, including,

without limitation, closing fees, continuing commitment fees, servicing fees, audit fees,

structuring fees, administrative agent's fees, letter of credit fees and the fees and disbursements

of the DIP Agent's attorneys, advisers, accountants, and other consultants, all to the extent

provided in the DIP Documents, without any further order of the Court.  All collections and

proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance

recoveries, condemnations or otherwise, will be deposited and applied as required by this Final

Order and the DIP Documents.  The DIP Documents evidence the valid and binding obligations

of the Debtor, which obligations shall be enforceable against the Debtor and its estate in

accordance with the terms of the DIP Documents.

      4.    <u>Authorization to Borrow</u>.  Until the Maturity Date (as defined below), and subject

to the terms, conditions, and limitations on availability and reserves set forth in the DIP

Documents, the DIP Facility, and this Final Order, the Debtor is authorized on a final basis to

request extensions of credit up to an aggregate principal amount of $30 million.

      5.    <u>DIP Obligations</u>.  The DIP Documents and this Final Order shall constitute and

evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Obligations

shall be enforceable against the Debtor, its estate and any successors thereto, including without

limitation, any trustee or other estate representative appointed in the Case, or any case under

Chapter 7 of the Bankruptcy Code upon the conversion of the Case (collectively, "<u>Successor</u>

<u>Cases</u>").  Upon entry of this Final Order, the DIP Obligations will include all loans and any other

indebtedness or obligations, contingent or absolute, which may now or from time to time be

owing by the Debtor to the DIP Lenders under the DIP Documents, including, without limitation,

all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the respective DIP Documents.

6. <u>Authorization of Payment of Break-Up Fee</u>.  The Debtor is hereby authorized and directed to pay to Carmel, from the proceeds of the DIP Facility, the Break-Up Fee.

7. <u>Postpetition Liens and Collateral</u>.

(a) Effective immediately upon the entry of this Final Order, pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code (subject to paragraph 24 hereof):  (i) the DIP Agent is granted, on behalf of the DIP Lenders, a continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected, postpetition first priority, priming security interest in and lien on (collectively, the "<u>DIP Liens</u>") any and all presently owned and hereafter acquired assets and real and personal property of the Debtor, including, without limitation, the following (the "<u>DIP Collateral</u>"):

(i) all real property owned by the Debtor, and all improvements thereon;

(ii) all Accounts[2] (including all receivables);

(iii) all Chattel Paper (whether tangible or intangible);

(iv) all Documents (including, if applicable, electronic documents);

(v) all General Intangibles (including, without limitation, any payment intangibles, Software, and Intellectual Property);

(vi) all Goods (including, without limitation Inventory, Equipment and Fixtures);

---

[2]All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Documents.  All terms not specifically defined in the DIP Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code (the "<u>UCC</u>") as adopted by the State of New York.

(vii)     all Instruments;

(viii)    all Investment Property,

(ix)      all Deposit Accounts, Accounts (as defined in the DIP Agreement) and Accounts (as defined in the UCC) and, to the extent not included in the foregoing any other account of the Debtor with the DIP Agent or the Prepetition Agent, and all deposits in any of the foregoing;

(x)       all money, cash or cash equivalents;

(xi)      all credit balances, deposits and other property now or hereafter held of received by or in transit to DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender or their respective affiliates or at any other depository or other institution from or for the account of any Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xii)     all Supporting Obligations and Letter-of-Credit Rights (whether or not any such Letter of Credit is in writing) of the Debtor;

(xiii)    all commercial tort claims;

(xiv)     all leasehold interests of the Debtor;

(xv)      the proceeds of any avoidance actions brought pursuant to Section 549 of the Bankruptcy Code to recover any Post-Petition transfer of DIP Collateral;

(xvi)     the Debtor's rights under Section 506(c) of the Bankruptcy Code and the proceeds thereof;

(xvii)    to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties of any kind or nature of, recovered by, or on behalf of, the Debtor and its estate;

(xviii)  to the extent not otherwise described above, all personal property of the Debtor of any type;

(xix)    to the extent not otherwise included, all Proceeds, tort claims, insurance claims, contract rights, rights to the payment of money, and other rights to payment not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing; and

(xx)     all books, records, and information relating to any of the foregoing and/or to the operation of any Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained.

(b)     Notwithstanding the foregoing, the DIP Collateral shall not include:  (i) any of the Debtor's claims or causes of action under Chapter 5 of the Bankruptcy Code, or the proceeds thereof, (collectively, the "Excluded Avoidance Recoveries") other than those described in subparagraph (a)(xv) above; and (ii) until such time as all the principal and all other amounts due under the FirsTier Financing (as defined in the DIP Agreement) have been indefeasibly paid in full, (a) the Sales Tax Rebate Agreement (the "Sales Tax Rebate Agreement") dated November 22, 2005 between The City of Greenwood Village, Colorado, a Colorado home rule municipal corporation (the "City of Greenwood Village") and the Debtor or (b) all of the Debtor's right, title and interest in the Enhanced Sales Tax Revenue (as defined in the Sales Tax Rebate Agreement) due to the Debtor from the City of Greenwood Village pursuant to the terms of the Sales Tax Rebate Agreement (together with the Excluded Avoidance Recoveries, the "Excluded Collateral").

8.      <u>DIP Lien Priority</u>.  The DIP Liens securing the DIP Obligations shall be subordinate only to the Carve Out, subject to the Permitted Prior Liens,  and shall otherwise be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral, including, without limitation, any Mechanics Lien (subject to paragraph 24 hereof).  Other than as set forth in this Final Order or as further ordered by the Court, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Case.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of any of the Case or any Successor Case to a case under Chapter 7 of the Bankruptcy Code, and/or upon the dismissal of the Case or any Successor Case.  The DIP Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

9.      <u>DIP Superpriority Claims</u>.  Upon entry of the this Final Order, the DIP Agent is granted, on behalf of the DIP Lenders, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Case (the "<u>DIP Superpriority Claim</u>") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the Carve Out and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 503(b) and 507(b), as provided under Section 364(c)(1) of the Bankruptcy Code.

10.     <u>No Obligation to Extend Credit</u>.  The DIP Lenders shall not have any obligation to make any loan or advance unless all of the conditions precedent to the making of such

extension of credit under the applicable DIP Documents and this Final Order have been satisfied in full or waived by the DIP Agent, in its sole discretion.

11.     Use of DIP Facilities Proceeds.  From and after the entry of this Final Order, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Documents, and only in strict compliance with the Budget, except as expressly provided in the DIP Agreement.

12.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order and the DIP Documents, and in accordance with the Budget (subject only to the Budget Variance), the Debtor is authorized to use Cash Collateral until the Commitment Termination Date (as defined below); provided, however, that during the Remedies Notice Period (as defined below) the Debtor may only use Cash Collateral in accordance with the terms and provisions of the Budget and solely to meet payroll and pay expenses critical to the preservation of the Debtor and its estate as agreed by the DIP Agent in its sole discretion. Nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Facility, and the DIP Documents, and in accordance with the Budget.

13.     Adequate Protection.

(a)     *Mechanic's Lien Creditors*.  As adequate protection for any Diminution in Value of the collateral of the respective Mechanic's Lien Creditors, the imposition of the automatic stay and the subordination of Mechanic's Liens to the DIP Liens, the Mechanic's Lien Creditors shall be entitled to receive (x) replacement liens in each and every unsold condominium unit in the Landmark and Meridian Towers for the full amount of their respective

allowed secured claims, which liens shall be senior in priority to the Hypo Prepetition Liens or any replacement liens granted in respect thereof, and which shall be shared by all Mechanic's Lien Creditors *pari passu* (except as provided below for the lien of Goldsmith Gulch Sanitation District), based upon their respective allowed claims but in each case subject to the Carve-Out and (subject to paragraph 24 hereof) subordinated to the DIP Liens and the DIP Superpriority Claims (the "Lienor Replacement Liens"); and (y) payment of certain excess amounts on deposit in the Net Sales Proceeds Account and General Holding Account (as those terms are defined in the DIP Agreement as to the extent provided for in the DIP Agreement (the "Excess Required Release Payments").  For the avoidance of doubt, (x) Mechanic's Lien Creditors shall not be required to apportion the Lienor Replacement Liens to any individual unit(s) in the Landmark or Meridian Towers; (y) the Lienor Replacement Liens shall secure the full allowed secured claims of the Mechanic's Liens Creditors regardless of whether such liens encumber property not owned by the Debtor as well as property owned by the Debtor; and (z) excess amounts released from the Net Sales Proceeds Account and General Holding Account as provided in the DIP Agreement on account of Mechanic's Lien Creditors for claims that have been settled or agreed and/or claims which have not been settled or agreed (including funds deposited into escrow) shall be released free and clear of all liens.  Notwithstanding the foregoing, as against other Mechanic's Liens and Lienor Replacement Liens, the prepetition and replacement liens of Goldsmith Gulch Sanitation District shall retain their priority, if any, provided by statute.  The Mechanic's Lien Creditors are adequately protected by (i) their respective equity cushions in the Debtor's assets, (ii) the potential enhancement of such assets due to the availability of the DIP Facility, (iii) the Lienor Replacement Liens, and (iv) their right to share in the Excess Required Release Payments.

(b)   *The Prepetition Lenders*.  As adequate protection for the Diminution in Value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtor's use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination of the Hypo Prepetition Lien to the DIP Liens and the Carve Out, the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, is hereby granted the following adequate protection measures:

(i)   *Replacement Liens.*  Pursuant to Sections 361 and 363 of the Bankruptcy Code, the Prepetition Agent is hereby granted, for the benefit of the Prepetition Lenders, valid, binding, enforceable and perfected replacement liens upon and security interests in all of the DIP Collateral (the "Prepetition Replacement Lien").  The Prepetition Replacement Lien shall (i) be junior and subordinate only to the DIP Liens, the Mechanic's Liens (and Lienor Replacement Liens) and the Carve Out, (ii) be subject to the Prior Permitted Liens, and (iii) not attach to the Excluded Collateral.

(ii)   *Superpriority Administrative Expense Claims.*  The Prepetition Agent and the Prepetition Lenders are each granted an allowed superpriority administrative expense claim in the Case and any Successor Cases (the "Prepetition Superpriority Claims"), as and to the extent provided by Section 507(b) of the Bankruptcy Code.  The Prepetition Superpriority Claim shall be junior to the Carve Out and DIP Superpriority Claim, and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b), and 507(b) of the Bankruptcy Code.

(iii)   *Postpetition Interest Payments.*  The Debtor shall timely pay to the Prepetition Agent, on behalf of the Prepetition Lenders, all interest accrued under the Prepetition Credit Agreement on and after the Petition Date.  Such payments first shall be made from the

DIP Lenders' pari passu share of Excess Required Release Payments and from disbursements from the Sales Commission Holdback reserve Account (as defined in the DIP Agreement), in each case as provided for in the DIP Agreement, and, to the extent such payments are insufficient, such interest payments shall be made from the proceeds of the DIP Facility.[3]

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

    14.    <u>Amendments</u>.

    (a)    *Amendment of the DIP Documents Generally*.  The DIP Documents may only be amended with the express written consent of the DIP Agent.  The Debtor is authorized to enter into such non-material modifications and amendments to the DIP Documents as may be agreed upon in writing by the Debtor and the DIP Agent, except any modification of the amount, interest rate or maturity of the DIP Obligations, which shall be subject to Court approval.  Notice of all such modifications shall be filed with the Court and, other than those modifications and amendments that are ministerial or technical and do not adversely affect the Debtor, must be served upon counsel to the Statutory Committee, Beck, Milender White, Environmental and the U.S. Trustee.

    15.    <u>Budget Maintenance</u>.

    (a)    The Budget may be amended or modified in writing from time to time only with the written consent of the DIP Agent, which may be granted or withheld in its sole and absolute discretion.  The Debtor shall deliver Budget variance reports to the DIP Agent as and when required under the DIP Agreement.

---

[3]    Notwithstanding any provision in the Prepetition Credit Agreement, the Debtor and the Prepetition Agent have agreed that the Debtor shall pay post petition interest payments on the pre-petition mortgage loan as follows: LIBO Adjusted Rate plus 2.50%, provided, however, with respect to the Phase I $7 Million Advance only, LIBO Adjusted Rate plus 6.00%.

(b)      If the Debtor submits a request to borrow funds to the DIP Agent at a time when a Shortfall (as defined in the DIP Agreement) exists, and the amount of such Shortfall, together with any previously funded Shortfalls, is equal to 15% or more of the aggregate total of all costs in the Budget, then the Debtor shall provide notice of the proposed request to the Statutory Committee, Beck, Milender White and Environmental.  If the Debtors and the DIP Agent  do not receive a written objection to the funding within five days thereafter, the Debtor may borrow the funds subject to the terms of the DIP Agreement and this Final Order.  If a written objection is received, the parties shall consult in good faith, but the Debtor may not borrow funds pursuant to the request without (i) agreement of the objecting party or (ii) order of this Court.

16.      Modification of Automatic Stay.  The automatic stay imposed under Bankruptcy Code Section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Debtor to grant the DIP Liens, Prepetition Replacement Liens, DIP Superpriority Claims, and Prepetition Superpriority Claims; and (b) authorize the Debtor to pay, and the DIP Lenders and the Prepetition Lenders to retain and apply, payments made in accordance with the terms of this Final Order.

17.      Perfection of DIP Liens and Prepetition Replacement Liens.

(a)      *Automatic Perfection of Liens.*  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens, the Lienor Replacement Liens and the Prepetition Replacement Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, establishing control of any collateral, entering into

any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Lienor Replacement Liens and the Prepetition Replacement Liens, or to entitle the DIP Agent, the DIP Lenders, the Mechanic's Lien Creditors, the Prepetition Agent and the Prepetition Lenders to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent, Mechanic's Lien Creditors and the Prepetition Agent each are authorized to file, as each in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, the Lienor Replacement Liens or the Prepetition Replacement Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens, the Lienor Replacement Liens or the Prepetition Replacement Liens.  The Debtor is authorized and directed to execute and deliver promptly upon demand to the DIP Agent, Mechanic's Lien Creditors and the Prepetition Agent all such financing statements, mortgages, control agreements, notices and other documents as such party may reasonably request.  The DIP Agent, Mechanic's Lien Creditors and the Prepetition Agent, in their discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument, and each such office is hereby ordered to accept such filing of this Final Order in lieu of any such instruments.

       18.    <u>Proceeds of Subsequent Financing</u>.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently

appointed in the Case or any Successor Cases, shall obtain credit or incur debt pursuant to

Bankruptcy Code Sections 364(b), 364(c) or 364(d) at any time prior to the repayment in full of

all DIP Obligations, and the termination of the DIP Lenders' obligation to extend credit under

the DIP Facility, in violation of the DIP Documents, including subsequent to the confirmation of

any plan with respect to any or all of the Debtor and the Debtor's estate, then all the cash

proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to

be applied to the DIP Obligations to the extent such financing is secured by the DIP Collateral or

any portion thereof.

      19.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full in cash of

all DIP Obligations, and the termination of the DIP Lenders' obligation to extend credit under

the DIP Facility, the Debtor shall:  (a) insure the DIP Collateral as required under the DIP

Documents; and (b) maintain the accounts and cash management system provided for in the DIP

Documents.

      20.    <u>Disposition of DIP Collateral; Rights of DIP Agents and DIP Lenders</u>.  Unless

otherwise ordered by the Court or as expressly provided for in the DIP Documents, the Debtor

shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral

without the prior written consent of the DIP Agent or as expressly permitted under the DIP

Documents; <u>provided</u>, <u>however</u>, that (a) if the DIP Agent consents to such sale, transfer, lease, or

disposition of DIP Collateral, or if such sale, transfer, lease or disposition is expressly permitted

under the DIP Documents, until the DIP Obligations shall have been paid in full in cash, then the

DIP Liens on such DIP Collateral shall be automatically released and terminated, with such DIP

Liens attaching to the proceeds of such sale, transfer, lease or disposition with the same priorities

as set forth in paragraphs 8 and 13 herein, and the Debtor, at its sole cost and expense, upon two

(2) business days prior written notice of such sale, shall deliver or file such documents, instruments and UCC termination statements to terminate such liens and security interests (and in furtherance of the foregoing, the DIP Agent is hereby authorized to file such documents, instruments and UCC terminations upon the expiration of such two (2) business day period). Provided that all of the applicable conditions in the DIP Agreement have been satisfied and no Event of Default then exists, to the extent the Debtor shall sell any of the residential Units, the Main Retail Component and/or the Restaurant Pad Site (in each case as defined in the DIP Agreement) as permitted under and in the manner proscribed in the DIP Agreement, such assets shall be delivered to the purchasers thereof free and clear of all Liens (as defined in the DIP Agreement) existing as of the Petition Date (other than Liens and Encumbrances permitted under the applicable Bona Fide Contract (as those terms are defined in the DIP Agreement).

21.     Term and Maturity.

(a)     *Term.*  The DIP Facility and the commitments thereunder shall become effective as of the date this Final Order becomes a "Final Order" as defined in the DIP Agreement, and shall continue until the earlier of (a) eighteen months from the closing of the DIP Financing (the "Initial Maturity Date"), unless extended as set forth below, (b) a plan of reorganization is confirmed by the Court, (c) the Case is converted to a case under Chapter 7 of the Bankruptcy Code or a Chapter 11 trustee is appointed in the Case, (d) the Case is dismissed, (e) the Court grants relief from the automatic stay so as to permit any party other than the DIP Agent to foreclose on the DIP Collateral prior to the indefeasible payment in full of the DIP Obligations and the termination of all lending commitments of the DIP Lenders under the DIP Agreement, or (f) the occurrence of an Event of Default (as defined below) (the "Maturity Date").  The Maturity Date may be extended by the Debtor on sixty day's notice to DIP Agent

prior to the Initial Maturity Date provided all of the conditions in the DIP Agreement have been

satisfied, including without limitation the requirements that no Event of Default shall have

occurred, the Debtor shall have a then-present Loan to Value Ratio (as defined in the DIP

Agreement) of no greater than 90.0%, the Debtor shall have paid the 2.0% Extension Fee

provided for in the DIP Agreement, and the Debtor shall have entered into and remain a party to

an Interest Rate Cap Agreement (as defined in the DIP Agreement) acceptable to the DIP Agent.

(b)     *Maturity*.  On the Maturity Date (as defined in the DIP Agreement), (i) all

DIP Obligations shall be immediately due and payable, and all commitments to extend credit

under the DIP Facility will terminate, and (ii) all authority to use Cash Collateral derived from

the proceeds of DIP Collateral shall cease, provided, however, that during the Remedies Notice

Period (as defined herein), the Debtor may use Cash Collateral solely as set forth in paragraph 12

herein.

22.     Events of Default.  The occurrence of an "Event of Default" under the DIP

Agreement shall constitute an "Event of Default" under this Final Order, unless waived in

writing by the DIP Lender.

23.     Rights and Remedies Upon Event of Default.  Immediately upon the occurrence

and during the continuation of an Event of Default, the DIP Agent may declare (i) all DIP

Obligations owing under the DIP Documents to be immediately due and payable, (ii) the

termination, reduction or restriction of any further commitment to extend credit to the Debtor to

the extent any such commitment remains, (iii) termination of the DIP Agreement and any other

DIP Document as to any future liability or obligation of the DIP Agent or the DIP Lenders, but

without affecting any of the DIP Liens, the DIP Superpriority Claims or the DIP Obligations;

and/or (iv) a termination, reduction or restriction on the ability of the Debtor to use any Cash

Collateral derived from the DIP Collateral, except as provided in paragraph 12 hereof (any such declaration, shall be referred to herein as a "Termination Declaration").  The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtor, counsel to the Prepetition Agent, counsel to the Statutory Committee, Beck, Milender White, Environmental and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Declaration Date, except as provided in paragraph 12 herein.  Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that five (5) business days after the Termination Declaration Date (the "Remedies Notice Period"), the DIP Agent shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Documents and this Final Order and shall be permitted to satisfy the DIP Obligations, DIP Superpriority Claim and the DIP Liens, subject to the Carve Out and paragraph 24 hereof.  During the Remedies Notice Period, the Debtor or the Statutory Committee shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing.  Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing (or enters an order extending the Remedies Notice Period based upon a showing of reasonable likelihood that an Event of Default has not occurred or is continuing), the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Agent shall be permitted to exercise all remedies set forth herein, in the DIP Agreement, in the other DIP Documents, and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and

without restriction or restraint by any stay under Sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Agent and the DIP Lenders with respect thereto pursuant to the DIP Agreement, DIP Documents, or this Final Order.

24.     Liquidation Waterfall.  Notwithstanding any provision to the contrary herein, in the DIP Documents or the Prepetition Credit Documents, in the event that an Event of Default has occurred and the DIP Collateral is foreclosed or otherwise conveyed or liquidated, then the proceeds thereof, including without limitation, proceeds from subsequent sales or other transfers of the collateral subject to the Lienor Replacement Liens in the event such collateral is disposed of, in whole or in part, through a credit bid or other non-cash transaction, shall be applied as follows (the "Liquidation Waterfall"): first, in respect of the Carve-Out; second, on a pari passu basis, to (a) pay in full all undisputed Mechanic's Lien Claims (including interest to the extent allowed by law), (b) to escrow the full asserted amount of all disputed Mechanic's Lien Claims (with interest through six months after date of sale subject to reservations of rights), and (c) to the indefeasible payment in full of all DIP Obligations, third, to the indefeasible payment in full of all Prepetition Obligations, and fourth, to the Debtor.  In the event one or more disputed Mechanic's Lien Claims are resolved such that there are excess escrowed funds at the time all Mechanic's Lien Claims have been resolved, such funds shall be applied in the order specified in the Liquidation Waterfall, which, for the avoidance of doubt, shall not require any additional distribution on account of the Mechanic's Lien Claims.  The Liquidation Waterfall is equally applicable and in full force and effect whether the assets are conveyed or liquidated under 11 U.S.C. § 363 or pursuant to nonbankruptcy law.  To be clear, the DIP Lender will not cause a foreclosure sale or otherwise cause the conveyance or liquidation on terms that will defeat this

Liquidation Waterfall, including by restricting the funds available for distribution to the

Mechanic's Lien Claims.  Notwithstanding anything in this Final Order or the DIP Agreement to

the contrary, in the event that an Event of Default has occurred, there shall be no sale of property

encumbered by the statutory lien of Goldsmith Gulch Sanitation District (whether such sale is by

foreclosure, receivership, deed in lieu, or sale pursuant to section 363 of the Bankruptcy Code)

unless either (a) such sale is subject to such lien, or (b) the statutory lien of the District is paid in

cash.  The obligations under this paragraph shall survive termination of the DIP Agreement and

conversion or dismissal of this Bankruptcy Case.

     25.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or</u>

<u>Stay of this Final Order</u>.  The DIP Agent and the DIP Lenders have acted in good faith in

connection with this Final Order and their reliance on this Final Order was and is in good faith.

Based on the findings set forth in this Final Order and the record made during the Interim

Hearings and Final Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in

the event any or all of the provisions of this Final Order are hereafter modified, amended or

vacated by a subsequent order of this Court or any other court, the DIP Agent and the DIP

Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any

such modification, amendment or vacatur shall not affect the validity and enforceability of any

advances previously made or made hereunder, or lien, claim or priority authorized or created

previously or hereby, provided that the Final Order was not stayed by court order after due notice

had been given to the DIP Agent or the DIP Lenders at the time the advances were made or the

liens, claims or priorities were authorized and/or created.  Any liens or claims granted to the DIP

Agent or the DIP Lenders hereunder arising prior to the effective date of any such modification,

amendment or vacatur of this Final Order shall be governed in all respects by the original

provisions of this Final Order, including entitlement to all rights, remedies, privileges and

benefits granted herein, provided that this Final Order was not stayed by court order after due

notice had been given to the DIP Agent or the DIP Lenders at the time the advances were made

or the liens, claims or priorities were authorized and/or created.

26.     <u>DIP and Other Expenses</u>.  The Debtor is  authorized and directed to pay all

reasonable out-of-pocket expenses of (a) the Prepetition Agent and the Prepetition Lenders as

provided in the Prepetition Credit Documents and (b) the DIP Agent and the DIP Lenders as

provided in the DIP Documents, whether or not the transactions contemplated by the DIP

Documents are consummated, including, without limitation, legal, accounting, collateral

examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other

consultants, and indemnification and reimbursement of fees and expenses, and including, for the

avoidance of doubt, all professional fees and expenses incurred by the DIP Agent in negotiating

and drafting the DIP Documents.  Payment of all such fees and expenses shall not be subject to

allowance by the Court.  Professionals for the Prepetition Agent, the Prepetition Lenders, the

DIP Agent and the DIP Lenders shall not be required to comply with the U.S. Trustee fee

guidelines.  Notwithstanding the foregoing, the DIP Agent shall deliver monthly summaries of

the fees and expenses of its legal and other professionals to the Debtor, the Statutory Committee

and the U.S. Trustee, and any dispute as to the reasonableness of such fees and expenses, if not

consensually resolved, shall be resolved by the Court; provided, however, that the Debtor and/or

the DIP Agent may apply the proceeds of the DIP Facility to the payment of such fees and

expenses on or after the date of delivery of the applicable monthly summary.

27.     <u>Indemnification</u>.  The Debtor shall indemnify and hold harmless each of the DIP

Agent and the DIP Lenders and their respective shareholders, directors, agents, officers,

subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Documents, the DIP Facility or the transactions contemplated thereby and by this Final Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Documents and as further described therein and herein, except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction.  The indemnity includes indemnification for the DIP Agent's exercise of discretionary rights granted under the DIP Facility.  In all such litigation, or the preparation therefor, the DIP Agent shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly pay the reasonable fees and expenses of such counsel.

28.     Proofs of Claim.  Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative claims) in any of the Case or Successor Cases shall not apply to any of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders, each of which is hereby deemed to have timely filed a valid proof of claim on account of the DIP Obligations and the Prepetition Obligations, as applicable.

29.     Rights of Access and Information.  Without limiting the rights of access and information afforded the DIP Agent under the DIP Documents, the Debtor shall be, and hereby is, required to afford representatives, agents and/or employees of the DIP Agent, reasonable

access to the Debtor's premises and its books and records in accordance with the DIP

Documents, and shall reasonably cooperate, consult with, and provide to such persons all such

information as may be reasonably requested.  In addition, the Debtor hereby authorizes its

independent certified public accountants, financial advisors, investment bankers and consultants

to cooperate, consult with, and provide to the DIP Agent all such information as may be

reasonably requested with respect to the business, results of operations and financial condition of

the Debtor.

       30.     <u>Carve Out</u>.

       (a)     *Carve Out*.  As used in this Final Order, the term "<u>Carve Out</u>" means a

carve out from the DIP Liens, Hypo Prepetition Liens and the Mechanic's Liens for the payment

of (i) the statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii)

subject to the terms and conditions of this Final Order, the allowed and unpaid professional fees

and disbursements incurred by the Debtor and the Statutory Committee for any professionals (the

"<u>Case Professionals</u>") retained by either of them pursuant to one or more orders of this Court

under Sections 327 or 1103(a) of the Bankruptcy Code, in each case in amounts not to exceed the

line items set forth in the Budget on a cumulative basis (for periods prior to the Termination

Declaration Date); *provided,* however, that upon the occurrence of the Termination Declaration

Date the Carve Out shall be capped at $25,000 plus unpaid professional fees and disbursements

accrued prior to the Termination Declaration Date to the extent such fees and disbursements do

not exceed amounts set forth in the Budget; and no DIP Collateral (including Cash Collateral),

Hypo Prepetition Collateral or assets subject to any Mechanic's Lien, or the proceeds any of the

foregoing in excess of such amount shall be applied to pay any such costs or expenses with the

exception of the Carve-Out.

(b)     *No Direct Obligation to Pay Professional Fees*.  None of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Case or any Successor Cases.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.  Nothing in this Final Order or otherwise shall be construed to increase the Carve Out if the actual fees of Case Professionals exceed the amounts provided for in the Budget.

31.     <u>Limitations on the DIP Facilities, the DIP Collateral, the Cash Collateral and the Case Professionals Carve Out</u>.  None of (i) the proceeds of the DIP Facility and/or the DIP Collateral, (ii) the Cash Collateral and/or (iii) the Carve Out may be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the Prepetition Agent, the Prepetition Lenders, the DIP Agent or the DIP Lenders or their respective rights and remedies under the DIP Documents, the Prepetition Credit Documents or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or the Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the Prepetition

Obligations, the Hypo Prepetition Liens or the Prepetition Superpriority Claim (iii) for monetary, injunctive or other affirmative relief against any of DIP Agent, DIP Lenders, the Prepetition Agent or the Prepetition Lenders, or their respective collateral, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent of any rights and remedies under this Final Order, the DIP Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent upon any of the DIP Collateral; (b) to make any distribution under a Plan of Reorganization in any Chapter 11 Case except as expressly provided in this Final Order or the DIP Documents; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the DIP Agent; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor without the prior written consent of the DIP Agent, (e) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP Agent (f) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (g) incurring Indebtedness (as defined in the DIP Agreement) other than as permitted under the DIP Agreement or as consented to by the DIP Agent; (h) objecting to or challenging in any way the claims, liens, or interests (including interests in the Prepetition Collateral or DIP Collateral) held by or on behalf any of the Prepetition Agent, the Prepetition Lenders, the DIP Agent or the DIP Lenders; (i) asserting, commencing, or prosecuting any litigation, adversary proceeding, or cause of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Agent, the Prepetition Lenders, the DIP Agent or the DIP Lenders; (j) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection,

priority, or enforceability of any of the Prepetition Obligations, the Hypo Prepetition Liens, the

DIP Obligations or the DIP Liens; or (k) preventing, hindering or otherwise delaying the exercise

by the DIP Agent or the Prepetition Agent of any rights and remedies granted under this Final

Order, the DIP Documents or the Prepetition Credit Documents.  Notwithstanding the foregoing,

the Carve Out may be used by the Statutory Committee or any other person or entity granted

standing by the Court to investigate (as opposed to prosecute a Challenge (as defined below))

regarding the Prepetition Obligations and/or the Prepetition Liens, _provided_ that no more than

$20,000 in the aggregate may be spent from the aforementioned sources on such investigation.

      32.     _Payment of Compensation_.  Nothing herein shall be construed as a consent to the

allowance of any professional fees or expenses of any Case Professionals or shall affect the right

of the DIP Agent and/or the Prepetition Agent to object to the allowance and payment of such

fees and expenses.

      33.     _Reservation of Certain Third Party Rights and Bar of Challenges and Claims_.

Nothing in this Final Order or the DIP Documents shall prejudice the rights of the Statutory

Committee to challenge the findings herein or Debtor's Stipulations in relation to:  (a) the

validity, extent, priority, or perfection of the Hypo Prepetition Lien; (b) the validity, allowability,

priority, or amount of the Prepetition Obligations; or (c) the secured status of the Prepetition

Obligations.  The Statutory Committee or any other party in interest, must commence, as

appropriate, a contested matter or adversary proceeding raising such challenge, including,

without limitation, any claim against the Prepetition Agent or any Prepetition Lender in the

nature of a setoff, counterclaim or defense to the applicable Prepetition Obligations or

Prepetition Liens (each, a "Challenge") within the earlier of:  (i) with respect to the Statutory

Committee, forty-five (45) calendar days from October 26, 2009, and (ii) with respect to other

parties in interest with requisite standing other than the Debtor or the Statutory Committee, forty-five (45) calendar days following the date of entry of this Final Order (the "Challenge Period"). The applicable Challenge Period may only be extended with the written consent of the Prepetition Agent or by order of the Court.  Upon the expiration of the Challenge Period (the "Challenge Period Termination Date") without the filing of a Challenge or by the filing by the Statutory Committee of an unequivocal and irrevocable notice of waiver and termination of the Challenge Period:  (A) any and all such Challenges and objections by any party (including, without limitation, the Statutory Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred and (B) all of the Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to Prepetition Agent's and each Prepetition Lenders' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in this Case and any Successor Cases.

34.   Deadlines In Respect of Claims of Certain Parties.  In order to expedite resolution and liquidation of the claims of Beck; Milender White, and Environmental, the following deadlines shall apply:  Each such claimant shall file a proof of claim with supporting documentation and lien statements on or before November 30, 2009.  Objections to the validity, priority, enforceability, avoidability, perfection or extent of the claims of Beck, Milender White, and Environmental by any party in interest, including the Debtor or Statutory Committee shall be filed and served on or before January 25, 2010.  All parties, including the Debtor and Statutory Committee, shall cooperate to schedule, discovery and a hearing to resolve any objection as

promptly as possible in order to allow funds to be distributed to Mechanic's Lien Creditors as promptly as possible.  Absent timely objection, the claims shall be allowed as set forth in the applicable proof of claim.

35.     No Third Party Rights.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

36.     Section 506(c) Claims.  No costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against any of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders or any of their respective claims or the DIP Collateral or Hypo Prepetition Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent or the Prepetition Agent, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by either such agents.

37.     No Marshaling/Applications of Proceeds.  None of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

38.     Section 552(b).  The Prepetition Agent and the Prepetition Lenders shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of this case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent or the Prepetition Lenders.

39.     Discharge Waiver.  The Debtor expressly stipulates, and the Court finds and adjudicates that, the DIP Obligations and the Prepetition Obligations shall not be discharged by

the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations and the Prepetition Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  The Debtor shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or sale, as applicable, of all DIP Obligations and all Prepetition Obligations.

      40.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the DIP Agent's or the Prepetition Agent's right to seek any other or supplemental relief in respect of the Debtor; (b) any of the rights of any of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Case or Successor Cases, conversion of any of the Case to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans.  Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Debtor, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders are preserved.

      41.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders to seek relief or otherwise exercise their respective rights and remedies under this Final Order, the DIP Documents, the Prepetition

Credit Documents or applicable law, as the case may be, shall not constitute a waiver of any such rights hereunder, thereunder.

42.   <u>Binding Effect of Final Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, all other creditors of the Debtor, the Statutory Committee any other committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Case, any Successor Cases, or upon dismissal of the Case or any Successor Case.

43.   <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations and the Prepetition Obligations have been paid in full in cash, and all commitments to extend credit under the DIP Facility and the Prepetition Facility have been terminated, the Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly without the prior written consent of DIP Agent: (a) any modification, stay, vacatur or amendment to this Final Order; (b) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the Case or Successor Cases, equal or superior to the DIP Superpriority Claims or the Prepetition Superpriority Claims, other than the Carve Out; (c) any order allowing use of Cash Collateral other than this Final Order; or (d) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens or the Hypo Prepetition Liens.  The Debtor irrevocably waives any right to seek any amendment, modification or extension of this Final

Order without the prior written consent, as provided in the foregoing, of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent.

44.     <u>Prepetition Guaranties and Prepetition Indemnification Agreement</u>.  Nothing in this Final Order or the DIP Documents shall be deemed to impair the effectiveness or enforceability of the Prepetition Guaranties or the Prepetition Indemnification Agreement, and each of the Prepetition Guaranties and Prepetition Indemnification Agreement shall remain in full force and effect, enforceable according to their respective terms to the extent provided by law.

45.     <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents, the Interim Orders or this Final Order, the provisions of this Final Order shall govern and control.

46.     <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Case or any Successor Case.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent, the DIP Lenders, Mechanic's Lien Creditors, the Prepetition Agent and the Prepetition Lenders pursuant to this Final Order and/or the DIP Documents and the Prepetition Credit Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall maintain their priority and other protections as provided by this Final Order until all DIP Obligations, allowed secured claims of Mechanic's Lien Creditors and Prepetition Obligations have been paid

in full and all commitments to extend credit under the DIP Facility are terminated.  The terms and provisions concerning the indemnification of the DIP Agent and the DIP Lenders shall continue in the Case, in any Successor Cases, following dismissal of the Case or any Successor Cases, following termination of the DIP Facility and/or the repayment of the DIP Obligations.

47.     <u>Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding any stay or anything to the contrary proscribed by applicable law.  To the extent applicable, the provisions of Bankruptcy Rule 4001(a)(3) are hereby waived.

48.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Final Order and to enforce this Final Order according to its terms.

SO ORDERED by the Court this 29th day of October, 2009.


BY THE COURT:


Michael E. Romero
U.S. Bankruptcy Judge